**IN THE UNITED STATES DISTRICT**
**FOR DISTRICT OF KANSAS**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2011 FEB 22   PM 2: 29

RONLY M. O'BRIEN
CLERK

DEPUTY
BY KANSAS CITY, KS

11-CV-2105   SAC/DJW

**PLAINTIFF,**
**IN RE WILSON,**

**VS.**

**DEFENDANT,**
**UNITED STATES (U.S. DEPARTMENT**
**OF DEFENSE)**

## MOTION:

On this date February 22, 2011, the Plaintiff so duly authorizes a commencement of the rules of summons under FRCP(Federal Rules of Civil Procedure) Rule 4 (i)(A)(1), to announce a services of process upon the Defendant, the U.S. Government for a dispensation of final judgment on all findings of fact and truth to represent the case of In Re Wilson. Hereinafter, the Plaintiff may stipulate unto the local District Court of Kansas, Eighth District, the U.S. Government is to serve as Defendant to this In Re matter for a closure on the notices of power in venue of federal jurisdiction, and the discourse of all statements of facts are in evidence of a dispute over the final judgment of a heralded instrument of "public estate" owed to the Plaintiff by the governmental affairs of assigned

compensational rights in a Armed Services career. Henceforth, the Plaintiff so demands for summons to be held, in part, to the record of official notices in this In Re matter before the local District Court of Kansas, Eighth District, by right of execution to the service of process under an observance of FRCP(Federal Rules of Civil Procedure),Rule 4(I)(A), the service on the United States and its agencies, corporations, officers, or employees; a declaration for all allegations of complaint in sworn testimony of In Re pleadings to be offered a construent right of "notice" in power of federal summons to the offices of the U.S. Department of Defense.

The Plaintiff so duly requeathes all rights to announcements of pleads, in accordance with FRCP(Federal Rules of Civil Procedure), Rule 8(a), and the commencement of local Rules under Title 28 U.S.C. Section 636(a), Jurisdiction, Powers, and Temporary Assignment. The Plaintiff may state an Armed Services case is now presented before the local District Court of Kansas, Eighth District, based on the flagrant violations of compensational rights owed to the petitioner for the enactments of Title 5 U.S.C. Section 5995, the Federal Pay Salary Act, or the Pay-Back Administration. Henceforth, the Plaintiff so duly notes in concurrence with all summons to the Defendant, U.S. Government, a participatory right to afford penalties and seizures against the Defendant were finalized for the enactment of In Re Wilson, a dispensation of claims to be recognized as a question of all "in rem jurisdiction" to be noticed in reciprocity of the local District Court of Eastern Kansas, before all cadences of rights to entry original pleadings for awards under FRCP(Federal Rules of Civil Procedure), Rule 4(j), and 4(m),Time Limit for Service.

The Plaintiff 's In Re case was formulated upon a recognition of 36 years of declaration in military service with the U.S. Armed Forces/U.S. Army, to announce an original jurisdiction in this claim by entrance of

petitioner to an official commission status with the U.S. Department of Army; under Title 10 U.S.C. Section 533, Service Credit Upon Original Appointment As A Commissioner Officer, the legal stipulations of commission status to the Regular Army were made a requeathed status upon all other official standards of the commencement to declarations in military service, for the U.S. Armed Forces/U.S. Army under the Cluster of Stars; a promoted rank more than the Fifth Star of Army Generalship. In subsequent terms of official status, the Plaintiff may now proceed to call upon all summons for the selection of the Local District Court of Kansas, Eighth District, to be the authorized venue of open hearings for the case of In Re Wilson. Hereinafter, the Plaintiff may take leave for the motions to represent one's self as a "Pro Hac Vice".

The Plaintiff so maintains an averment for a Rule 8(a) Pleading on the cause of a dispensation of final judgment to all compensational rights owed to the petitioner in purview of assigned transactions and occurrences of the entitlement for a waiver of attorney rights in dispensation requirements of this claim under Title 5 U.S.C. Section 3106, Employment of Attorneys; restrictions. Henceforth, the Plaintiff is owed an excessive penalty to describe windfall gains of official federal salary, under the entitlements schedule of Title 5 U.S.C Section 5108, GS-level Members of V or more , and the Federal Policy of "Pay-Master" to be enforceable upon amendments of Executive Order and the record of Title 5 U.S.C. Section 1105 (j). The Plaintiff's selection for the amounts of controversy are also significantly made a concurrent terms of "in rem jurisdiction" for all receipts of official summons of Rule 4(I), and Rule 4(h), Serving a Corporation, Partnership; or Association; to make enforceable the petitioner's bondsman and the assurety to public contracts, under Title 10 U.S.C. Section 1983, A Commencement of Civil Actions For Deprivation of Rights; Title 10 U.S.C. Section 2304 (B) (1), the Javits-Wagner-O'Day Act of Title 41 U.S.C Section 49; and Section 16 of

P.L. 95-563.

The Plaintiff may so record an indebtedness unto the Defendant, U.S. Government, by a liason in jurisdiction of the Secretary of Defense, under Title 10 U.S.C. Section 2452, in subsection C(4),and C(5), the initialized testimony of all inter-departmental responsibilities owed a Secretarial jurisdiction upon the sworn members of "Adjudant Staff" for a declaration of appointed work schedules in the U.S. Armed Services. On the date of May 8,1978, the Plaintiff may attest to the exact performance of the final vote of ratification for Appointment to U.S. Generalship did bestow upon person a vested right in all claims, to made an address of formal stipulations to the case In Re Wilson. The Plaintiff was affirmed to all bonds and the assuretyships of formal inquiry to the entitlements of Title 5 U.S.C. Section 5995, The Federal Pay Salary Act and Title 5 U.S.C. Section 5595, The Federal Employee's Salary Act. Henceforth, the Plaintiff will contend for a full-record of discovery orders in recognition of Appointments to Public Office of U.S. Government, by the decrees of Title 10 U.S.C. Section 3034, Vice-Chief of Staff; an appointment so duly nominated by the former 39th President Jimmy Carter, on the basis of established procurement of a Congressional hearing and Review; the conference on all rectified pronouncements of legendary mandate for Article I, Section 6, Clause 6, the "Debate and Speech Clause" of the U.S. Constitution.

The Plaintiff, on this date of February, 22, 2011, so enters a brief to affirm the basis of contentions for an adjudication of the complaint to be announced to the official record in court docket file, by a receipts of adjourned title for In Re Wilson. Herein, the Plaintiff may evaluate all clinical evidence of prior restriction to entitlement periods for federal officers of the U.S. Department of Defense, and the complaint will allege an exceptional right of owed duty to the legal reproof of Public Officer were violated, in concurrence of acts made to be flagrant unto notices of

a negligence standard. Henceforth, the Plaintiff also may mediate over all counsels to the UCMJ 10 U.S.C Section 827,the Courts-Martial under (JAG), the Justice Advocate Governor. Hereinafter, the Plaintiff resides over a judgment of clarified views in which an espousal of "default" and "indebtedness" to the estate and trust of petitioner are with a claimant value tendered unto all excised terms of "reciprocity" in federal courts; and the determinable evaluations of valid sources of the FRE(Federal Rules of Evidence) to address a waiver of circumstantial evidence for an appraisal of relevancy to all concurrent judgments of the Habeas Corpus Act of Title 28 U.S.C. Section 2241, the codified result of jurisdictional limits made obtainable to the pursuant rules of the official U.S. Magistrate Judges of civilian courts.

The Plaintiff may extend to all jurisdictional powers of the Local District Court of Kansas, Eighth District, the final dispensation of heralded terms for a legal maturation of petitioner's rights to be acknowledged as a U.S. Army General of official capacity to announce all contentions formal rules in guidelines to the provincial scale of duty owed unto the power of exception in Title 10 U.S.C. Section 14508(e), Exception from Retirement Lists for State Adjudant generals and other adjudant generals(P.L. 105-85, Div. A., Title V, Section 521(b), Nov. 18, 1997, 111 Stat. 1734), an offer for the promoted scales of career service without defaults in a break-of-service, suspension, or replevins of social rewards, unless they are sworn unto official rights of a bondsman, in reproof of directives for an exception of "Official Leave" from a "Head of Agency", under the Title 5 U.S.C. Section 6339, Additional Leave Transfer Programs. The Plaintiff may so clinically state that all confirmed appointment powers and the ascertainable rules of promotional status were aligned to the "domestic security" of the Nation, prior to the end of 1979, for the decree of an unofficial break-in-service to have regulated against an anticipatory proposal for all mediated recognitions to the

"executive privilege" of the Plaintiff's right. Henceforth, the Plaintiff is a standing member of the Executive Branch, for the duration of judicial issues to be expounded upon by the formal jurisdictions of former public office known as a Director's jurisdiction, under the appointment to the office of the Director of Defense Intelligence Agency; an esteemed parlay of certified duties within a legendary protocol of a conception in origin to beset the general rules of (P.L. 105-277, Div, C, Title 1, Section 151(b), Oct. 21, 1998, 112 Stat. 2681-611, and amended P.L 108-271, Section 8(b), July 7, 2004, 118 Stat. 814).

The Plaintiff may now assert that a back-pay requirement is negotiable to the "in rem jurisdiction" of FRCP(Federal Rules of Civil Procedure), Rule 4(n)(1),Asserting Jurisdiction Over Property or Assets, for all entitlements to offered to delivered to the official decrees of bondsmanship for a general requirement of subsequent reproof for the requirements of duty in the legislative powers of the "Equal Pay Act", to be met or exceeded with acknowledged forfeitures, seizures, and penalties owed for an indebtedness of Defendant, U.S. Government. Hitherto, the Plaintiff is owed a lump-sum payment schedule of declaratory judgment unto Title 5 U.S.C. Section 5551, Lump-sum payments, with a nature of payment to be described with Title 5 U.S.C. Section 5318, Adjudant Rates of Pay; the advisory committee known as Ethics Reform Act of 1989, Section 703 (a)(2) (B) of P.L. 101-1949, and the noteworthiness for an executive privilege in owed rights of Title 5 U.S.C. Section 5303, Annual Adjustments to pay schedules, and Title 5 U.S.C. Section 5301, Policy. Herein, the enactments of the U.S. President are in veracity to an accent of decisive reforms of the original terms, to be acknowledged for all remittitur, from which an obligation to consider an evaluation of CPI. (Consumer Price Index), the Producer Index, the Employment Cost Index, and the Implicit Price Deflator for Personal Consumption Expenditures, should be interpolated in account of a final

dispensation of annual rewards of Executive Order No. 12148. In providing for the Federal Pay Administration, a clinical schedule of duties to honor of petitioner's exhumed leadership in the jurisdictions of the U.S.DOD (Department of Defense), prior to December 15, 1979. Henceforth, the Plaintiff may now request a "replevin action" of controlled receipts of property allotments is execution of a bondsman, to the controlling sources of FEPCA (Federal Employee Comparability Act of 1990) under the concerns of Title 5 US.C. to make implicit a duty of offered information for the "President's Pay Agent" in completion of all inter-working standards of Title 5 US.C. Section 5304, Dual Compensation.

The Plaintiff may reside within a procedural request to FRCP(Federal Rules of Civil Procedure), Rule 44, Proving An Official Record, an auspice of leadership requirements to envelop and become the surmise of all obligatory rights of the Vice-Chief of Staff, The Adjudant offices of the Department of U.S. Army, and the verification schedules to such an effect of burden in "show of cause", to impetus concurrent jurisdictions of district courts unto Article III of the U.S. Constitution under Title 28 U.S.C. Section 1251, Original Jurisdiction; Section1733, Government and Books; Section 1736, Journals and Congressional Records; Section 1741, Consuls in Trials; and the domain of authorized notaries to encumber all capacities of official mandate for receipts to owed property. Henceforth, the Plaintiff may be confirmed with all judicial decisions of Title 28 U.S.S. Section 1737, Notaries of Bond, and Title 28 U.S.C. Section 1744, The Full-Faith and Credit to all States.

The Plaintiff may now set forth all accommodated credentials of these judiciary rules in the concise matter of an affirmative role to an administration of the executor portion of this claim for an In Re case on formal judgment of the Fifth Amendment rights in owed property; an assignment of "in rem jurisdiction", according to Rule 4(n)(1), and the

effect of quorom unto all receipts of "lump-sum payments" that are officially verified by the nature of accounts under Title 5 U.S.C. Section 5504, Nature of Payments. Herein, the assignor values of the Equal Pay Act of Title 5 U.S.C. Section 6658, and the "Back-Pay" allotments of salary owed in total of 34 years of federal service.

The Plaintiff also has decision to request a full schedule of administrative hearings for a non-jury trial under the Seventh Amendment, and the apparent conditions of the appurtenant rules of burden on the trier-of-fact, to aide in all judicial management of equitable standards in which the petitioner so moves as a claimant under FRCP(Federal Rules of Civil Procedure), Rule 4(I)(A), Serving the United States and its Agencies, Corporations, Officers, or Employees; to announce a court ordered summons of complaint , the order to make drawer upon Defendant, the U.S. Government, an exact receipt of "reciprocity" amongst venues of federal courts throughout all districts of the United States of America, by a demand in assigned duty of Rule 4(m) Time Limit For Service, and the upholding of charter for the local Rules of District Court of Kansas, Eighth District, under Title 28 U.S.C. Section 628(c).

On this date of February 22, 2011, the Plaintiff is within a complaint procedure of FRCP(Federal Rules of Civil Procedure), Rule 8(a), Affirmative Pleads, to give leave of all ordered motions an answer of this averment, to be heard in charter and determined successively, for the awards of full-disclosure for a Title 5 U.S.C. Section 3106, Employment of Attorneys; Restrictions, , according to (P.L. 89-554, Sept. 6, 1966, 80 Stat. 465) the exception of authorized law for petition to conduct all litigation within rights of Title 5 U.S.C., Government Employees And Organizations, to the ends of a formal judgment against the U.S. Government, as "Pay Agent", is determined at fault of invalid non-disclosures of income status in the nature of U.S. Treasury accounts,

according to the demands of Title 28 U.S.C. Section 516, the arrangement of original pleads to engage a formal procedure of litigation for administrative services cases under the definitions of Revised Statutes Section 189 and 365 of Title 5 U.S.C. Section 49, and Title 5U.S.C. Section 314, to make a definition of purpose for a control of federal agencies drawn as Defendant parties to the case of In Re Wilson.

The Plaintiff so maintains on this sworn date of February, 22, 2011, to admit the judicial procedures of Title 28 U.S.C. Section 636(a) to afford all vestiture in original pleads for a dispensation on "public rights" in compensation of Title 5 U.S.C. from which an announcement of the claimant sub-division of notices to enlist a judicial venue of Rule 4i(A), would also name the Executive Department", as the U.S. D.O.D. (Department of Defense), the controlling element of federal question, to be observed in a responsive pleading for all assignments of complaints, and venue, under the derisive rule of the National Security Act Amendments of 1949 (63 Stat. 578). Wherein, the National Security Act Amendments of 1949 are to establish the U.S. Department of Defense as an "Executive Department", including the jurisdictions of the Department of U.S. Army, according to R.S. Section 189 of Title 4 of the Revised Statutes; the Act of July 26, 1947, chapter 343,Secton 201 (d), as added August 1, 1949, chapter 412, section 4, 63 Stat. 579 of the former Title U.S.C. Section 171-1. Therefore, the assembled membership of Plaintiff to the "Executive Department" of U.S. Defense Intelligence Agency in Directorship, may be advised upon the Defendant, U.S. Government, by now giving an authorized service of process on their agents under Rule 4i(A), and the commitment to acknowledge the U.S. Department of Defense or the agencies of Executive Department that may now be known as the Defendant.

The Plaintiff so determines that on a afforded time of December 8, 1983 until an unspecified report of absence from official duties of

Adjudant offices were filed and completed, before the concurrent
jurisdictions for a Missouri State Headquarters of Army National Guard,
under Title 32 U.S.C. Appendix, Section 1101.2, Appointment, in
subsection (6), Report of appointment, the said petitioner was under an
authorized work schedule of active-status. Hereinafter, the Plaintiff may
assert that a forcible hold on all credentials of presumed relationship to
the owed property of a Fifth Amendment right in "executive privilege"
were illegally confiscated, for the behest of all derived legal terms that
give rise to this cause of action before the local District Court of Kansas,
Eighth District. Henceforth, the Plaintiff so moves to initialize a formal
judgment on In Re Wilson, by an arrangement of procedural due process
under federal statutes of judicial decisions for Title 28 U.S.C. Section
1343, Civil Rights and Elective Franchise, in subsection (a)(4), as it may
be stated in "color of title" for a qualification of pronouncements for civil
deprivations afforded to Title 42 U.S.C. Section 1983, and the following
definitions of subdivision 4:"to recover damages or to secure equitable or
other relief under any Act of Congress providing for the protection of civil
rights, including right to vote."

The Plaintiff now concerns a designated period of commencement
to the service of process, in pursuant terms to local Rule 3.1
Commencement of Actions; Process, Service and Filing of Pleadings,
Motions and Orders. Upon requisition of this dutiful order and the
commencement period of disposition for a timeliness in a recognition of
notices of power, the critical assignment of committal responses to the
enforcement of the "100-mile bulge" under FRCP(Federal Rules of Civil
Procedure), Rule 4(l)(1),Proving Service, and the
appropriate candor in set course of restraining orders to the assessment
of default judgments, if respondent pleads are not entirely provided
within concurrence to Rule 4(l)(2), and Rule 4(n)(1), Rule 4(n)(2),
respectively. Hereinafter, the Plaintiff has made a vestiture of within the

venue of the local District Court of Kansas, Eighth District, for the acknowledgement and dispensation of a sworn testimony in trust of Officials of this venue under Title 28 U.S.C. Section 636,Jurisdiction,Power, and Temporary Assignments, in subsection 4(c) (2), as follows: "If a Magistrate Judge is designated to exercise civil jurisdiction under paragraph(1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties consent."(Oct. 21, 1976, P.L. 94-577, Section 1, 90 Stat. 2729; Oct. 28, 1977, P.L. 95-144, Nov. 2, 2002, P.L. 107-273, Div. B, Title III, Section 3002(b), 116 Stat. 1805; Sept. 9, 2005, P.L. 109-63, Section 2(d) 119 Stat. 1995).

Hereinafter, the Plaintiff so ay attach a full-brief to assert factual statements and all legal arguments to the duration of accompanied standards of civil procedures under the examination of local Rule 7.6, Briefs and Memoranda. Therein, the Plaintiff may control a service of process upon thr offices of the Comptroller General, Edward L. Williams, in wages of all entitlements, conferences, data, and selectivity of archived public documents ro denote the ends of federal jurisdiction. The case of In Re Wilson is now commenced, according to the local Rule 4.1, Service of Process In Accordance With State Practice, and the codified requirements of FRCP(Federal Rules of Civil Procedure), Rule 4i (A), Rule 4(m), Rule (k)(2), Rule 4(l), Rule (n)(1), and Rule 4(n)(2), respectively.

Hereinafter, the Plaintiff so duly motions for an attached order to

this request for a commencement of original pleadings, to enforce a "no public access" standard of court observations, and the regents of mass media, under the local Rule 5.4.12, Public Access.(Adopted 3/17/04). The Plaintiff so motions for a recognition of all provided standards, in update of "notices" of power, the controlling status of Rule 4i(A), Rule 4(K(2), Rule 4(m), Territorial Limits of Effective Service, Rule 4(l)(1), Asserting Jurisdiction over property with a Federal law, and the subsections of FRCP, Rule 4(h), Notice, in commitments to observe a long-arm statute and the conferences with reciprocity of the local District Court of Kansas, Eighth District, unto all jurisdictional limitations set forth for the "replevin" of "quartered properties" made to be announced in tangible and intangible assets, or entities of wealth in designation to a model of "corporate dissolutions", or a liquidation method. Henceforth, the Plaintiff so enters an observation of the verifiable sources within necessity to apply an enforcement of tendered summons, in a cast of prevailing systemization unto all court orders, from which the advisement to the Federal Long-Arm Statute of FRCP (Federal Rules of Civil Procedure), Rule 4(k)(2) are so dutifully enlisted to proof of service.

The Plaintiff may authorize a service of process on capital schedule of private companies and law firms in which the petitioner is announced to be the residing President Officer, and the sole-proprietorship owner of controlling interest to values of corporate stocks. Therein, the assessment of a drawer in ranges of the general rule of long-arm statutes are now consistent with a demand to reign a proof of service upon the local companies of location the Washington, D.C., or the District of Columbia, under the domain of FRCP(Federal Rules of Civil Procedure), Rule 4(h)(1)(B), Service A Corporation, Partnership, or Association.

The Plaintiff so asserts that a designated officer should give an entry to fulfill receipts of a proof service, under the summons of Rule 4(h)(1)(B), at the Wilson Law Firm, P.C., a general corporation of

petitioner's original founding principle in all articles of by-laws; the
service of process should be delivered unto the address of 499109 N.E.
Washington, D.C. 20304. Henceforth, the Plaintiff so motions for an order
of service of process to be delivered unto the Wilson Personal Holding
Company, P.C., wherein, the petitioner is the President and sole-
proprietor, according to the original founding principle of articles of
incorporation, and the domicile in the State of Vermont. The Plaintiff so
determines that an exact placement of a service of process should be
rendered on the designated responsible party of reception to a corporate
office, by the delivery to the following address, as it may be stipulated to
be known at the location of 481109 N.E. Washington, D.C., 20304.

the service of process under an observance of FRCP(Federal Rules of Civil Procedure),Rule 4(i)(A), the service on the United States and its agencies, corporations, officers, or employees; a declaration for all allegations of complaint in sworn testimony of In Re pleadings to be offered a construed right of "notice" in power of federal summons to the offices of the U.S. Department of Defense.

The Plaintiff so duly bestows all rights to announcements of pleads, in accordance with FRCP(Federal Rules of Civil Procedure), Rule 8(a), and the commencement of local Rules under Title 28 U.S.C. Section 636(a), Jurisdiction, Powers, and Temporary Assignment. The Plaintiff may state an Armed Services case is now presented before the local District Court of Kansas, Eighth District, based on the flagrant violations of compensational rights owed to the petitioner for the enactments of Title 5 U.S.C. Section 5995, the Federal Pay Salary Act, or the Pay-Back Administration. Henceforth, the Plaintiff so duly notes in concurrence with all summons to the Defendant, U.S. Government, a participatory right to afford penalties and seizures against the Defendant were finalized for the enactment of In Re Wilson, a dispensation of claims to be recognized as a question of all "in rem jurisdiction" to be noticed in reciprocity of the local District Court of Eastern Kansas, before all cadences of rights to entry original pleadings for awards under FRCP(Federal Rules of Civil Procedure), Rule 4(j), and 4(m),Time Limit for Service. Hereinafter, the address to a formal instruction of a Rules of Summons may be submitted to the appropriate authorities of the local District Court of Kansas, Eighth District, on the following status of named Defendants: Secretary of Defense, Robert M. Gates, Department of Defense, 1400 Defense Pentagon, Washington, D.C. 20301; The Offices of Defense Intelligence Agency, 200 Macdill Blvd., Bolling Air Force Base, Washington, D.C. 20340; Comptroller General's Office, 441 G. Street, N.W., Washington, D.C. 20548; General Services Administration, 1800 F. St., N.W., Washington, D.C., 20405; Former 39th President Jimmy Carter, Carter Library and Museum, 441 Freedom Pkwy, Atlanta, GA 30307; and Former 40th President Ronald Reagan, Presidential Foundation and Library, 40 Presidential Dr. Simi Valley, CA 93065.

The Plaintiff 's In Re case was formulated upon a recognition of 36 years of declaration in military service with the U.S. Armed Forces/U.S. Army, to announce an

original jurisdiction in this claim by entrance of petitioner to an official commission status with the U.S. Department of Army; under Title 10 U.S.C. Section 533, Service Credit Upon Original Appointment As A Commissioner Officer, the legal stipulations of commission status to the Regular Army were made a requeathed status upon all other official standards of the commencement to declarations in military service, for the U.S. Armed Forces/U.S. Army under the Cluster of Stars; a promoted rank more than the Fifth Star of Army Generalship. In subsequent terms of official status, the Plaintiff may now proceed to call upon all summons for the selection of the Local District Court of Kansas, Eighth District, to be the authorized venue of open hearings for the case of In Re Wilson. Hereinafter, the Plaintiff may take leave for the motions to represent one's self as a "Pro Hac Vice".

The Plaintiff so maintains an averment for a Rule 8(a) Pleading on the cause of a dispensation of final judgment to all compensational rights owed to the petitioner in purview of assigned transactions and occurrences of the entitlement for a waiver of attorney rights in dispensation requirements of this claim under Title 5 U.S.C. Section 3106, Employment of Attorneys; restrictions. Henceforth, the Plaintiff is owed an excessive penalty to describe windfall gains of official federal salary, under the entitlements schedule of Title 5 U.S.C Section 5108, GS-level Members of V or more , and the Federal Policy of "Pay-Master" to be enforceable upon amendments of Executive Order and the record of Title 5 U.S.C. Section 1105 (j). The Plaintiff's selection for the amounts of controversy are also significantly made a concurrent terms of "in rem jurisdiction" for all receipts of official summons of Rule 4(I), and Rule 4(h), Serving a Corporation, Partnership; or Association; to make enforceable the petitioner's bondsman and the assurance to public contracts, under Title 10 U.S.C. Section 1983, A Commencement of Civil Actions For Deprivation of Rights; Title 10 U.S.C. Section 2304 (B) (1), the Javits-Wagner-O'Day Act of Title 41 U.S.C Section 49; and Section 16 of P.L. 95-563.

The Plaintiff may so record an indebtedness unto the Defendant, U.S. Government, by a liason in jurisdiction of the Secretary of Defense, under Title 10 U.S.C. Section 2452, in subsection C(4),and C(5), the initialized testimony of all inter-

departmental responsibilities owed a Secretarial jurisdiction upon the sworn members of "Adjutant Staff" for a declaration of appointed work schedules in the U.S. Armed Services. On the date of May 8,1978, the Plaintiff may attest to the exact performance of the final vote of ratification for Appointment to U.S. Generalship did bestow upon person a vested right in all claims, to made an address of formal stipulations to the case In Re Wilson. The Plaintiff was affirmed to all assurance and the bonds of formal inquiry to the entitlements of Title 5 U.S.C. Section 5995, The Federal Pay Salary Act. Henceforth, the Plaintiff will contend for a full-record of discovery orders in recognition of Appointments to Public Office of U.S. Government, by the decrees of Title 10 U.S.C. Section 3034, Vice-Chief of Staff; an appointment so duly nominated by the former 39th President Jimmy Carter, on the basis of established procurement of a Congressional hearing and Review; the conference on all rectified pronouncements of legendary mandate for Article I, Section 6, Clause 6, the "Debate and Speech Clause" of the U.S. Constitution.

The Plaintiff, on this date of February 15, 2011,so enters a brief to affirm the basis of contentions for an adjudication of the complaint to be announced to the official record in court docket file, by a receipts of adjourned title for In Re Wilson. Herein, the Plaintiff may evaluate all clinical evidence of prior restriction to entitlement periods for federal officers of the U.S. Department of Defense, and the complaint will allege an exceptional right of owed duty to the legal reproof of Public Officer were violated, in concurrence of acts made to be flagrant unto notices of a negligence standard. Henceforth, the Plaintiff also may mediate over all counsels to the UCMJ 10 U.S.C Section 827,the Courts-Martial under (JAG), the Justice Advocate Governor. Hereinafter, the Plaintiff resides over a judgment of clarified views in which an espousal of "default" and "indebtedness" to the estate and trust of petitioner are with a claimant value tendered unto all excised terms of "reciprocity" in federal courts; and the determinable evaluations of valid sources of the FRE(Federal Rules of Evidence) to address a waiver of circumstantial evidence for an appraisal of relevancy to all concurrent judgments of the Habeas Corpus Act of Title 28 U.S.C. Section 2241, the codified result of jurisdictional limits made obtainable to the pursuant rules of the official U.S. Magistrate Judges of civilian courts.

The Plaintiff may extend to all jurisdictional powers of the Local District Court of

Kansas, Eighth District, the final dispensation of heralded terms for a legal maturation of petitioner's rights to be acknowledged as a U.S. Army General of official capacity to announce all contentions formal rules in guidelines to the provincial scale of duty owed unto the power of exception in Title 10 U.S.C. Section 14508(e), Exception from Retirement Lists for State Adjudant generals and other adjudant generals(P.L. 105-85, Div. A., Title V, Section 521(b), Nov. 18, 1997, 111 Stat. 1734), an offer for the promoted scales of career service without defaults in a break-of-service, suspension, or replevin of social rewards, unless they are sworn unto official rights of a bondsman, in reproof of directives for an exception of "Official Leave" from a "Head of Agency", under the Title 5 U.S.C. Section 6339, Additional Leave Transfer Programs. The Plaintiff may so clinically state that all confirmed appointment powers and the ascertainable rules of promotional status were aligned to the "domestic security" of the Nation, prior to the end of 1979, for the decree of an unofficial break-in-service to have regulated against an anticipatory proposal for all mediated recognitions to the "executive privilege" of the Plaintiff's right. Henceforth, the Plaintiff is a standing member of the Executive Branch, for the duration of justiciable issues to be expounded upon by the formal jurisdictions of former public office known as a Director's jurisdiction, under the appointment to the office of the Director of Defense Intelligence Agency; an esteemed parlay of certified duties within a legendary protocal of a conception in origin, to beset the general rules of (P.L. 105-277, Div, C, Title 1, Section 151(b), Oct. 21, 1998, 112 Stat. 2681-611, and amended P.L 108-271, Section 8(b), July 7, 2004, 118 Stat. 814).

The Plaintiff may now assert that a back-pay requirement is negotiable to the "in rem jurisdiction" of FRCP(Federal Rules of Civil Procedure), Rule 4(n)(1),Asserting Jurisdiction Over Property or Assets, for all entitlements to offered to delivered to the official decrees of bondsman for a general requirement of subsequent reproof for the requirements of duty in the legislative powers of the "Equal Pay Act", to be met or exceeded with acknowledged forfeitures, seizures, and penalties owed for an indebtedness of Defendant, U.S. Government. Hitherto, the Plaintiff is owed a lump-sum payment schedule of declaratory judgment unto Title 5 U.S.C. Section 5551, Lump-sum payments, with a nature of payment to be described with Title 5 U.S.C. Section 5318,

Adjudant Rates of Pay; the advisory committee known as Ethics Reform Act of 1989, Section 703 (a)(2) (B) of P.L. 101-1949, and the noteworthiness for an executive privilege in owed rights of Title 5 U.S.C. Section 5303, Annual Adjustments to pay schedules, and Title 5 U.S.C. Section 5301, Policy. Herein, the enactments of the U.S. President are in veracity to an accent of decisive reforms of the original terms, to be acknowledged for all remittitur, from which an obligation to consider an evaluation of CPI. (Consumer Price Index), the Producer Index, the Employment Cost Index, and the Implicit Price Deflator for Personal Consumption Expenditures, should be interpolated in account of a final dispensation of annual rewards of Executive Order No. 12148. In providing for the Federal Pay Administration, a clinical schedule of duties to honor of petitioner's exhumed leadership in the jurisdictions of the U.S.DOD (Department of Defense), prior to December 15, 1979. Henceforth, the Plaintiff may now request a "replevin action" of controlled receipts of property allotments is execution of a bondsman, to the controlling sources of FEPCA (Federal Employee Comparability Act of 1990) under the concerns of Title 5 US.C. to make implicit a duty of offered information for the "President's Pay Agent" in completion of all inter-working standards of Title 5 US.C. Section 5304, Dual Compensation.

The Plaintiff may reside within a procedural request to FRCP(Federal Rules of Civil Procedure), Rule 44, Proving An Official Record, an auspice of leadership requirements to envelop and become the surmise of all obligatory rights of the Vice-Chief of Staff, The Adjudant offices of the Department of U.S. Army, and the verification schedules to such an effect of burden in "show of cause", to impetus concurrent jurisdictions of district courts unto Article III of the U.S. Constitution under Title 28 U.S.C. Section 1251, Original Jurisdiction; Section1733, Government and Books; Section 1736, Journals and Congressional Records; Section 1741, Consuls in Trials; and the domain of authorized notaries to encumber all capacities of official mandate for receipts to owed property. Henceforth, the Plaintiff may be confirmed with all judicial decisions of Title 28 U.S.S. Section 1737, Notaries of Bond, and Title 28 U.S.C. Section 1744, The Full-Faith and Credit to all States.

The Plaintiff may now set forth all accommodated credentials of these judiciary

rules in the concise matter of an affirmative role to an administration of the executor portion of this claim for an In Re case on formal judgment of the Fifth Amendment rights in owed property; an assignment of "in rem jurisdiction", according to Rule 4(n)(1), and the effect of quorom unto all receipts of "lump-sum payments" that are officially verified by the nature of accounts under Title 5 U.S.C. Section 5504, Nature of Payments. Herein, the assignor values of the Equal Pay Act of Title 5 U.S.C. Section 6658, and the "Back-Pay" allotments of salary owed in total of 34 years of federal service.

The Plaintiff also has decision to request a full schedule of administrative hearings for a non-jury trial under the Seventh Amendment, and the apparent conditions of the appurtenant rules of burden on the trier-of-fact, to aide in all judicial management of equitable standards in which the petitioner so moves as a claimant under FRCP(Federal Rules of Civil Procedure), Rule 4(i)(A), Serving the United States and its Agencies, Corporations, Officers, or Employees; to announce a court ordered summons of complaint , the order to make drawer upon Defendant, the U.S. Government, an exact receipt of "reciprocity" amongst venues of federal courts throughout all districts of the United States of America, by a demand in assigned duty of Rule 4(m) Time Limit For Service, and the upholding of charter for the local Rules of District Court of Kansas, Eighth District, under Title 28 U.S.C. Section 628(c).

On this date of February, 15, 2011, the Plaintiff is within a complaint procedure of FRCP(Federal Rules of Civil Procedure), Rule 8(a), Affirmative Pleads, to give leave of all ordered motions an answer of this averment, to be heard in charter and determined successively, for the awards of full-disclosure for a Title 5 U.S.C. Section 3106, Employment of Attorneys; Restrictions, according to (P.L. 89-554, Sept. 6, 1966, 80 Stat. 465) the exception of authorized law for petition to conduct all litigation within rights of Title 5 U.S.C., Government Employees And Organizations, to the ends of a formal judgment against the U.S. Government, as "Pay Agent", is determined at fault of invalid non-disclosures of income status in the nature of U.S. Treasury accounts, according to the demands of Title 28 U.S.C. Section 516, the arrangement of original pleads to engage a formal procedure of litigation for administrative services cases under the definitions of Revised Statutes Section 189 and 365 of Title 5 U.S.C. Section 49, and Title 5 U.S.C.

Section 314, to make a definition of purpose for a control of federal agencies drawn as Defendant parties to the case of In Re Wilson.

The Plaintiff so maintains on this sworn date of February 15, 2011, to admit the judicial procedures of Title 28 U.S.C. Section 636(a) to afford all vestiture in original pleads for a dispensation on "public rights" in compensation of Title 5 U.S.C. from which an announcement of the claimant sub-division of notices to enlist a judicial venue of Rule 4i(A), would also name the Executive Department", as the U.S. D.O.D. (Department of Defense), the controlling element of federal question, to be observed in a responsive pleading for all assignments of complaints, and venue, under the derisive rule of the National Security Act Amendments of 1949 (63 Stat. 578). Wherein, the National Security Act Amendments of 1949 are to establish the U.S. Department of Defense as an "Executive Department", including the jurisdictions of the Department of U.S. Army, according to R.S. Section 189 of Title 4 of the Revised Statutes; the Act of July 26, 1947, chapter 343,Secton 201 (d), as added August 1, 1949, chapter 412, section 4, 63 Stat. 579 of the former Title U.S.C. Section 171-1. Therefore, the assembled membership of Plaintiff to the "Executive Department" of U.S. Defense Intelligence Agency in Directorship, may be advised upon the Defendant, U.S. Government, by now giving receipt of service of process on their agents under Rule 4i(A), and the commitment to acknowledge the U.S. Department of Defense or the agencies of Executive Department that may now be known as the Defendant.

The Plaintiff so determines that on a afforded time of December 8, 1983 until an unspecified report of absence from all official duties of Adjudant offices were filed and completed, before the concurrent jurisdictions for a Missouri State Headquarters of Army National Guard, under Title 32 U.S.C. Appendix, Section 1101.2,Appoinment, in subsection (6), Report of appointment, the said petitioner was under an authorized work schedule of active-status. Hereinafter, the Plaintiff may assert that a forcible hold on all credentials of presumed relationship to the owed property of a Fifth Amendment right in "executive privilege" were illegally confiscated, for the behest of all derived legal terms that give rise to this cause of action before the local District Court of Kansas, Eighth District. Henceforth, the Plaintiff so moves to initialize a formal judgment on In Re

Wilson, by an arrangement of procedural due process under federal statutes of judicial decisions for Title 28 U.S.C. Section 1343, Civil Rights and Elective Franchise, in subsection (a)(4), as it may be stated in "color of title" for a qualification of pronouncements for civil deprivations afforded to Title 42 U.S.C. Section 1983, and the following definitions of subdivision 4:"to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including right to vote."

The Plaintiff now concerns a designated period of commencement to the service of process, in pursuant terms to local Rule 3.1 Commencement of Actions; Process, Service and Filing of Pleadings, Motions and Orders. Upon requisition of this dutiful order and the commencement period of disposition for a timeliness in a recognition of notices of power, the critical assignment of committal responses to the enforcement of the "100-mile bulge" under FRCP(Federal Rules of Civil Procedure), Rule 4(l)(1),Proving Service, and the

appropriate candor in set course of restraining orders to the assessment of default judgments, if respondent pleads are not entirely provided within concurrence to Rule 4(l)(2), and Rule 4(n)(1), Rule 4(n)(2), respectively. Hereinafter, the Plaintiff has made a vestiture of within the venue of the local District Court of Kansas, Eighth District, for the acknowledgement and dispensation of a sworn testimony in trust of Officials of this venue under Title 28 U.S.C. Section 636,Jurisdiction,Power, and Temporary Assignments, in subsection 4(c) (2), as follows: "If a Magistrate Judge is designated to exercise civil jurisdiction under paragraph(1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties consent."(Oct. 21, 1976, P.L. 94-577, Section 1, 90 Stat. 2729; Oct. 28, 1977, P.L. 95-144, Nov. 2, 2002, P.L. 107-

273, Div. B, Title III, Section 3002(b), 116 Stat. 1805; Sept. 9, 2005, P.L. 109-63, Section 2(d) 119 Stat. 1995).

Hereinafter, the Plaintiff so ay attach a full-brief to assert factual statements and all legal arguments to the duration of adjudged standards of civil procedure, under the examination of local Rule 7.6, Briefs and Memoranda. Therein, the Plaintiff may control a service of process upon the offices of the Comptroller General's Office, in wages of all entitlements, conferences, data, and selectivity of archived public documents to denote the ends of federal jurisdiction. The case of In Re Wilson is now commenced, according to the local Rule 4.1, Service of Process In Accordance With State Practice, and the codified requirements of FRCP(Federal Rules of Civil Procedure), Rule 4i (A), Rule 4(m), Rule (k)(2), Rule 4(l), Rule (n)(1), and Rule 4(n)(2), respectively.

Hereinafter, the Plaintiff so duly motions for an attached order to this request for a commencement of original pleadings, to enforce a "no public access" standard of court observations, and the regents of mass media, under the local Rule 5.4.12, Public Access.(Adopted 3/17/04). The Plaintiff so motions for a recognition of all provided standards, in update of "notices" of power, the controlling status of Rule 4i(A), Rule 4(K(2), Rule 4(m), Territorial Limits of Effective Service, Rule 4(l)(1), Asserting Jurisdiction over property with a Federal law, and the subsections of FRCP, Rule 4(h), Notice, in commitments to observe a long-arm statute and the conferences with reciprocity of the local District Court of Kansas, Eighth District, unto all jurisdictional limitations set forth for the "replevin" of "quartered properties" made to be announced in tangible and intangible assets, or entities of wealth in designation to a model of "corporate dissolutions", or a liquidation method. Henceforth, the Plaintiff so enters an observation of the verifiable sources within necessity to apply an enforcement of tendered summons, in a cast of prevailing systemization unto all court orders, from which the advisement to the Federal Long-Arm Statute of FRCP (Federal Rules of Civil Procedure), Rule 4(k)(2) are so dutifully enlisted to proof of service.

The Plaintiff may authorize a service of process on capital schedule of private companies and law firms in which the petitioner is announced to be the residing President Officer, and the sole-proprietorship owner of controlling interest to values of corporate

stocks. Therein, the assessment of a drawer in ranges of the general rule of long-arm statutes are now consistent with a demand to reign a proof of service upon the local companies of location the Washington, D.C., or the District of Columbia, under the domain of FRCP(Federal Rules of Civil Procedure), Rule 4(h)(1)(B), Service A Corporation, Partnership, or Association.

The Plaintiff so asserts that a designated officer should give an entry to fulfill receipts of a proof service, under the summons of Rule 4(h)(1)(B), at the Wilson Law Firm, P.C., a general corporation of petitioner's original founding principle in all articles of by-laws; the service of process should be delivered unto the address of 499109 N.E. Washington, D.C. 20304. Henceforth, the Plaintiff so motions for an order of service of process to be delivered unto the Wilson Personal Holding Company, P.C., wherein, the petitioner is the President and sole-proprietor, according to the original founding principle of articles of incorporation, and the domicile in the State of Vermont. The Plaintiff so determines that an exact placement of a service of process should be rendered on the designated responsible party of reception to a corporate office, by the delivery to the following address, as it may be stipulated to be known at the location of 481109 N.E. Washington, D.C., 20304.

stocks. Therein, the assessment of a drawer in ranges of the general rule of long-arm statutes are now consistent with a demand to reign a proof of service upon the local companies of location the Washington, D.C., or the District of Columbia, under the domain of FRCP(Federal Rules of Civil Procedure), Rule 4(h)(1)(B), Service A Corporation, Partnership, or Association.

The Plaintiff so asserts that a designated officer should give an entry to fulfill receipts of a proof service, under the summons of Rule 4(h)(1)(B), at the Wilson Law Firm, P.C., a general corporation of petitioner's original founding principle in all articles of by-laws; the service of process should be delivered unto the address of 499109 N.E. Washington, D.C. 20304. Henceforth, the Plaintiff so motions for an order of service of process to be delivered unto the Wilson Personal Holding Company, P.C., wherein, the petitioner is the President and sole-proprietor, according to the original founding principle of articles of incorporation, and the domicile in the State of Vermont. The Plaintiff so determines that an exact placement of a service of process should be rendered on the designated responsible party of reception to a corporate office, by the delivery to the following address, as it may be stipulated to be known at the location of 481109 N.E. Washington, D.C., 20304.

employee; the following statement of G.S.A is an advisement of the Court opinion on a buttrusted fact of "choice of law" in venue of federal questions:" A hearing examiner might come from outside the agency, but he had no authority to conduct an independent examination, and his conclusions and findings were in the nature of recommendations that the agency was free to accept or reject . Although review lay in the Board of Appeals and Review of the Civil Service Commission, Congress found "skepticism" among federal employees regarding the Commission's record in obtaining just resolutions of complaints and adequate remedies." Brown v. G.S.A., 425 U.S. 820(825) (1975).

In the case of Brown v. G.S.A., the Plaintiff may state a conjunctive proposal to dispel with the adversity of discriminatory reviews of the Civil Service Commission would take up an immediacy in restraint of such interceding factors of a retrenchment in administrative services that would not have embarked upon a compelling sanction of an assigned "Special Counsel" to the (M.S.P.B.) Merit Systems Protection Board; a safeguard for the Title 5 U.S.C or all sub-sections and with durational value of empowered route to the decisions of the Presidency.

The Plaintiff may now decide to embark remedies that follow in Section 717(c) of Title 42 U.S.C. of the Civil Rights Act of 1964, if the nebulous review of a continuum of federal statutes would not apply to find protections of "historic protected classifications" of the petitioner in all resides of the formal request to petition the local District Court of Kansas, for historical terms of remedies within a judgment for an administrative hearing, as follows: "If administrative remedies were ineffective, judicial relief from federal employment discrimination was even more problematic before 1972. Although an action seeking to enjoin unconstitutional agency conduct would we, it was doubtful that back pay in other compensatory relief for employment discrimination was available at the time that Congress was considering the 1972 Act. For

the plaintiff's cause of action under the Administrative Procedure Act, 28 U.S.C. , Section 1361, was held to be barred by sovereign immunity , since his claims for promotion would necessarily involve claims against the Treasury: "A suit against an officer of the United States is one against the United States itself 'if the decree would operate against' the sovereign ; Hawaii v. Gordon, 373 U.S. 57,58....(1963)[,], or if judgment sought would expend itself on the public treasury, or to compel it to act; Larson v. Domestic & Foreign Commerce Corp, 337 U.S. 683, 704, ..(1949)." 415 F. 2d , at 1277" (G.S.A., 425 U.S. 820(827) (1975).

The Plaintiff may evaluate all restraints to an enforcement of licensed protections and the administrative remedies, for a claims schedule on all averments for Title 5 U.S.C. Section 120, Powers and Functions of the Merit System Protection Board And Special Counsel, for the "choices of law" that within remittent schedules to an establish figure of gratuitous loss of an economic right, in forthright terms of labor. Consequently, the exhibit of discriminatory restraints on civil service in the Armed Forces may uptake a propensity of unconstitutional values to an impugment of flagrancy in all continous parameters of the of the impeded time of displacement from an official record of active-status in Armed Forces. The Plaintiff has already invoked a claim to the exceptional rights of these circumstances, from which a severity of loss is actionable to the cause of demeritus opinion on P.L. 93-147 such, as may be stated: "Title 18 U.S.C. Section 712, Misuse of Names, Words, Emblems, or insignia; insomuch as the inequitable retaliatory mechanisms of default may espirit a perilous turmoil against one or more officers, and the deliberations from a prerogative of one or more officers, not the intentional latitude for an apparent authority of JAG(Justice Advocate Governor) courts, under the laws of maritime is an inconsistency of leadership through a chain of command that is inclusive to the privacy of the adjudant offices of Title 10 U.S.C Section 3034, Vice Chief of Staff." (Citing an opinion on P.L. 93

147, 73 Stat. 570, Nov. 3 1973).

The Plaintiff may set forth a case structure of an exhibited treatment for the inconsistency of abstracts constraints on the identification of American Civil Liberties, as they were invoiced to the prior-times of 1972, and the claimant structure to permit lawsuit against the federal government; this is the quintessential stance of paradigms in the affirmative case of seizure on the demands of Fifth Amendment privilege for an adjudant officer, and the following status of administrative remedies of compilation in observation of the G.S.A case, as stated: " For the structure of the 1972 Amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive Section 717 of the Civil Rights Acts of 1964,42 U.S.C., 2000(e)-16 (1970 ed. Supp. IV), proscribes federal employment discrimination and establishes an administrative and judicial enforcement system. Section 717(a) provides that all personnel actions affecting federal employees and applicants for federal government 'shall be made free from any discrimination based on race, color, religion, sex, or national origin." (G.S.A., 425 U.S. 820(827) (1975).

The Plaintiff may initiate a codified proposal of Brown v. G.S.A . to the adjudge of equity cases, at the disposal of "head of departments" to make a confirmation on the installed latitude of patterned solutions that are interpreted to the formal intent of Title 42 U.S.C. Section, 2000(e)-5 and Executive Order 11478, and the following pretext of cited excerpts from footnote 11, as it may be cited: "The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any compliant of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to -(e) Government agency or official not relieved of responsibility to assure

non-discrimination in employment or equal employment opportunity. Nothing contained in this Act shall relieve any Government agency or official of its office, or his primary responsibility to assure non-discrimination in employment as required by the Constitution and statute or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government." (G.S.A., 425 U.S. 820(830-31) (1975).

The Plaintiff may now assert that in concern for a forthcoming guideline or precedents of court opinions for an order of federal regulations, the Sullivan case, and Brown v. G.S.A are a designated example for the issuance of lawsuits from which a "head of agency" may record the instantaneous terms of discrimination in the workplace, prior to a performance of unemployment, separation, suspension, or lay-offs. The Sullivan case did announce lay-offs from other agencies led to more defense activity, and the Plaintiff in this case of In Re Wilson a representation to all disallowances of a formal hindrance of institutional stipulations on the law enforcement and the conduct of members in uniformed services would suggest the Plaintiff has already submitted to the UCMJ, Title 10 U.S.C. Section 827, The Courts of Martial, a (JAG)(Justice Advocate Governor) to supplant all testimony on Title 18 U.S.C., Model Penal Code, the duration of formulated grievances for an interpretation of the judicial review of criminal procedure, according to the efficacy in Title 28 U.S.C. Section 636, and the rest of impartial testimony of conflict in relevancy to certain terms of the FRE(Federal Rules of Evidence), under the Appendix Rule 1102, Amendments.(Exec. Order. No.13363, Dec. 3, 2004,Amendment, Rule 902(12)).

The Plaintiff would also entreat a discernible view of P.L. 93-147 as a compliance measurement with apparent doctrine for the status of this case of public rights. Furthermore, the Plaintiff may set forth a case structure of an exhibited treatment for the inconsistency of abstract

employee; the following statement of G.S.A is an advisement of the Court opinion on a buttrusted fact of "choice of law" in venue of federal questions:" A hearing examiner might come from outside the agency, but he had no authority to conduct an independent examination, and his conclusions and findings were in the nature of recommendations that the agency was free to accept or reject . Although review lay in the Board of Appeals and Review of the Civil Service Commission, Congress found "skepticism" among federal employees regarding the Commission's record in obtaining just resolutions of complaints and adequate remedies." Brown v. G.S.A., 425 U.S. 820(825) (1975).

In the case of Brown v. G.S.A., the Plaintiff may state a conjunctive proposal to dispel with the adversity of discriminatory reviews of the Civil Service Commission would take up an immediacy in restraint of such interceding factors of a retrenchment in administrative services that would not have embarked upon a compelling sanction of an assigned "Special Counsel" to the (M.S.P.B.) Merit Systems Protection Board; a safeguard for the Title 5 U.S.C or all sub-sections and with durational value of empowered route to the decisions of the Presidency.

The Plaintiff may now decide to embark remedies that follow in Section 717(c) of Title 42 U.S.C. of the Civil Rights Act of 1964, if the nebulous review of a continuum of federal statutes would not apply to find protections of "historic protected classifications" of the petitioner in all resides of the formal request to petition the local District Court of Kansas, for historical terms of remedies within a judgment for an administrative hearing, as follows: "If administrative remedies were ineffective, judicial relief from federal employment discrimination was even more problematic before 1972. Although an action seeking to enjoin unconstitutional agency conduct would we, it was doubtful that back pay in other compensatory relief for employment discrimination was available at the time that Congress was considering the 1972 Act. For

petitioner to an official commission status with the U.S. Department of Army; under Title 10 U.S.C. Section 533, Service Credit Upon Original Appointment As A Commissioner Officer, the legal stipulations of commission status to the Regular Army were made a requeathed status upon all other official standards of the commencement to declarations in military service, for the U.S. Armed Forces/U.S. Army under the Cluster of Stars; a promoted rank more than the Fifth Star of Army Generalship. In subsequent terms of official status, the Plaintiff may now proceed to call upon all summons for the selection of the Local District Court of Kansas, Eighth District, to be the authorized venue of open hearings for the case of In Re Wilson. Hereinafter, the Plaintiff may take leave for the motions to represent one's self as a "Pro Hac Vice".

The Plaintiff so maintains an averment for a Rule 8(a) Pleading on the cause of a dispensation of final judgment to all compensational rights owed to the petitioner in purview of assigned transactions and occurrences of the entitlement for a waiver of attorney rights in dispensation requirements of this claim under Title 5 U.S.C. Section 3106, Employment of Attorneys; restrictions. Henceforth, the Plaintiff is owed an excessive penalty to describe windfall gains of official federal salary, under the entitlements schedule of Title 5 U.S.C Section 5108, GS-level Members of V or more , and the Federal Policy of "Pay-Master" to be enforceable upon amendments of Executive Order and the record of Title 5 U.S.C. Section 1105 (j). The Plaintiff's selection for the amounts of controversy are also significantly made a concurrent terms of "in rem jurisdiction" for all receipts of official summons of Rule 4(I), and Rule 4(h), Serving a Corporation, Partnership; or Association; to make enforceable the petitioner's bondsman and the assurety to public contracts, under Title 10 U.S.C. Section 1983, A Commencement of Civil Actions For Deprivation of Rights; Title 10 U.S.C. Section 2304 (B) (1), the Javits-Wagner-O'Day Act of Title 41 U.S.C Section 49; and Section 16 of

P.L. 95-563.

The Plaintiff may so record an indebtedness unto the Defendant, U.S. Government, by a liason in jurisdiction of the Secretary of Defense, under Title 10 U.S.C. Section 2452, in subsection C(4),and C(5), the initialized testimony of all inter-departmental responsibilities owed a Secretarial jurisdiction upon the sworn members of "Adjudant Staff" for a declaration of appointed work schedules in the U.S. Armed Services. On the date of May 8,1978, the Plaintiff may attest to the exact performance of the final vote of ratification for Appointment to U.S. Generalship did bestow upon person a vested right in all claims, to made an address of formal stipulations to the case In Re Wilson. The Plaintiff was affirmed to all bonds and the assuretyships of formal inquiry to the entitlements of Title 5 U.S.C. Section 5995, The Federal Pay Salary Act and Title 5 U.S.C. Section 5595, The Federal Employee's Salary Act. Henceforth, the Plaintiff will contend for a full-record of discovery orders in recognition of Appointments to Public Office of U.S. Government, by the decrees of Title 10 U.S.C. Section 3034, Vice-Chief of Staff; an appointment so duly nominated by the former 39th President Jimmy Carter, on the basis of established procurement of a Congressional hearing and Review; the conference on all rectified pronouncements of legendary mandate for Article I, Section 6, Clause 6, the "Debate and Speech Clause" of the U.S. Constitution.

The Plaintiff, on this date of February, 22, 2011, so enters a brief to affirm the basis of contentions for an adjudication of the complaint to be announced to the official record in court docket file, by a receipts of adjourned title for In Re Wilson. Herein, the Plaintiff may evaluate all clinical evidence of prior restriction to entitlement periods for federal officers of the U.S. Department of Defense, and the complaint will allege an exceptional right of owed duty to the legal reproof of Public Officer were violated, in concurrence of acts made to be flagrant unto notices of

a negligence standard. Henceforth, the Plaintiff also may mediate over all counsels to the UCMJ 10 U.S.C Section 827,the Courts-Martial under (JAG), the Justice Advocate Governor. Hereinafter, the Plaintiff resides over a judgment of clarified views in which an espousal of "default" and "indebtedness" to the estate and trust of petitioner are with a claimant value tendered unto all excised terms of "reciprocity" in federal courts; and the determinable evaluations of valid sources of the FRE(Federal Rules of Evidence) to address a waiver of circumstantial evidence for an appraisal of relevancy to all concurrent judgments of the Habeas Corpus Act of Title 28 U.S.C. Section 2241, the codified result of jurisdictional limits made obtainable to the pursuant rules of the official U.S. Magistrate Judges of civilian courts.

The Plaintiff may extend to all jurisdictional powers of the Local District Court of Kansas, Eighth District, the final dispensation of heralded terms for a legal maturation of petitioner's rights to be acknowledged as a U.S. Army General of official capacity to announce all contentions formal rules in guidelines to the provincial scale of duty owed unto the power of exception in Title 10 U.S.C. Section 14508(e), Exception from Retirement Lists for State Adjudant generals and other adjudant generals(P.L. 105-85, Div. A., Title V, Section 521(b), Nov. 18, 1997, 111 Stat. 1734), an offer for the promoted scales of career service without defaults in a break-of-service, suspension, or replevins of social rewards, unless they are sworn unto official rights of a bondsman, in reproof of directives for an exception of "Official Leave" from a "Head of Agency", under the Title 5 U.S.C. Section 6339, Additional Leave Transfer Programs. The Plaintiff may so clinically state that all confirmed appointment powers and the ascertainable rules of promotional status were aligned to the "domestic security" of the Nation, prior to the end of 1979, for the decree of an unofficial break-in-service to have regulated against an anticipatory proposal for all mediated recognitions to the

"executive privilege" of the Plaintiff's right. Henceforth, the Plaintiff is a standing member of the Executive Branch, for the duration of judicial issues to be expounded upon by the formal jurisdictions of former public office known as a Director's jurisdiction, under the appointment to the office of the Director of Defense Intelligence Agency; an esteemed parlay of certified duties within a legendary protocol of a conception in origin to beset the general rules of (P.L. 105-277, Div, C, Title 1, Section 151(b), Oct. 21, 1998, 112 Stat. 2681-611, and amended P.L 108-271, Section 8(b), July 7, 2004, 118 Stat. 814).

The Plaintiff may now assert that a back-pay requirement is negotiable to the "in rem jurisdiction" of FRCP(Federal Rules of Civil Procedure), Rule 4(n)(1),Asserting Jurisdiction Over Property or Assets, for all entitlements to offered to delivered to the official decrees of bondsmanship for a general requirement of subsequent reproof for the requirements of duty in the legislative powers of the "Equal Pay Act", to be met or exceeded with acknowledged forfeitures, seizures, and penalties owed for an indebtedness of Defendant, U.S. Government. Hitherto, the Plaintiff is owed a lump-sum payment schedule of declaratory judgment unto Title 5 U.S.C. Section 5551, Lump-sum payments, with a nature of payment to be described with Title 5 U.S.C. Section 5318, Adjudant Rates of Pay; the advisory committee known as Ethics Reform Act of 1989, Section 703 (a)(2) (B) of P.L. 101-1949, and the noteworthiness for an executive privilege in owed rights of Title 5 U.S.C. Section 5303, Annual Adjustments to pay schedules, and Title 5 U.S.C. Section 5301, Policy. Herein, the enactments of the U.S. President are in veracity to an accent of decisive reforms of the original terms, to be acknowledged for all remittitur, from which an obligation to consider an evaluation of CPI. (Consumer Price Index), the Producer Index, the Employment Cost Index, and the Implicit Price Deflator for Personal Consumption Expenditures, should be interpolated in account of a final

dispensation of annual rewards of Executive Order No. 12148. In providing for the Federal Pay Administration, a clinical schedule of duties to honor of petitioner's exhumed leadership in the jurisdictions of the U.S.DOD (Department of Defense), prior to December 15, 1979.

Henceforth, the Plaintiff may now request a "replevin action" of controlled receipts of property allotments is execution of a bondsman, to the controlling sources of FEPCA (Federal Employee Comparability Act of 1990) under the concerns of Title 5 US.C. to make implicit a duty of offered information for the "President's Pay Agent" in completion of all inter-working standards of Title 5 US.C. Section 5304, Dual Compensation.

The Plaintiff may reside within a procedural request to FRCP(Federal Rules of Civil Procedure), Rule 44, Proving An Official Record, an auspice of leadership requirements to envelop and become the surmise of all obligatory rights of the Vice-Chief of Staff, The Adjudant offices of the Department of U.S. Army, and the verification schedules to such an effect of burden in "show of cause", to impetus concurrent jurisdictions of district courts unto Article III of the U.S. Constitution under Title 28 U.S.C. Section 1251, Original Jurisdiction; Section1733, Government and Books; Section 1736, Journals and Congressional Records; Section 1741, Consuls in Trials; and the domain of authorized notaries to encumber all capacities of official mandate for receipts to owed property. Henceforth, the Plaintiff may be confirmed with all judicial decisions of Title 28 U.S.S. Section 1737, Notaries of Bond, and Title 28 U.S.C. Section 1744, The Full-Faith and Credit to all States.

The Plaintiff may now set forth all accommodated credentials of these judiciary rules in the concise matter of an affirmative role to an administration of the executor portion of this claim for an In Re case on formal judgment of the Fifth Amendment rights in owed property; an assignment of "in rem jurisdiction", according to Rule 4(n)(1), and the

effect of quorum unto all receipts of "lump-sum payments" that are officially verified by the nature of accounts under Title 5 U.S.C. Section 5504, Nature of Payments. Herein, the assignor values of the Equal Pay Act of Title 5 U.S.C. Section 6658, and the "Back-Pay" allotments of salary owed in total of 34 years of federal service.

The Plaintiff also has decision to request a full schedule of administrative hearings for a non-jury trial under the Seventh Amendment, and the apparent conditions of the appurtenant rules of burden on the trier-of-fact, to aide in all judicial management of equitable standards in which the petitioner so moves as a claimant under FRCP(Federal Rules of Civil Procedure), Rule 4(l)(A), Serving the United States and its Agencies, Corporations, Officers, or Employees; to announce a court ordered summons of complaint , the order to make drawer upon Defendant, the U.S. Government, an exact receipt of "reciprocity" amongst venues of federal courts throughout all districts of the United States of America, by a demand in assigned duty of Rule 4(m) Time Limit For Service, and the upholding of charter for the local Rules of District Court of Kansas, Eighth District, under Title 28 U.S.C. Section 628(c).

On this date of February 22, 2011 , the Plaintiff is within a complaint procedure of FRCP(Federal Rules of Civil Procedure), Rule 8(a), Affirmative Pleads, to give leave of all ordered motions an answer of this averment, to be heard in charter and determined successively, for the awards of full-disclosure for a Title 5 U.S.C. Section 3106, Employment of Attorneys; Restrictions, , according to (P.L. 89-554, Sept. 6, 1966, 80 Stat. 465) the exception of authorized law for petition to conduct all litigation within rights of Title 5 U.S.C., Government Employees And Organizations, to the ends of a formal judgment against the U.S. Government, as "Pay Agent", is determined at fault of invalid non-disclosures of income status in the nature of U.S. Treasury accounts,

according to the demands of Title 28 U.S.C. Section 516, the arrangement
of original pleads to engage a formal procedure of litigation for
administrative services cases under the definitions of Revised Statutes
Section 189 and 365 of Title 5 U.S.C. Section 49, and Title 5U.S.C. Section
314, to make a definition of purpose for a control of federal agencies
drawn as Defendant parties to the case of In Re Wilson.

The Plaintiff so maintains on this sworn date of February, 22, 2011,
to admit the judicial procedures of Title 28 U.S.C. Section 636(a) to afford
all vestiture in original pleads for a dispensation on "public rights" in
compensation of Title 5 U.S.C. from which an announcement of the
claimant sub-division of notices to enlist a judicial venue of Rule 4i(A),
would also name the Executive Department", as the U.S. D.O.D.
(Department of Defense), the controlling element of federal question, to
be observed in a responsive pleading for all assignments of complaints,
and venue, under the derisive rule of the National Security Act
Amendments of 1949 (63 Stat. 578). Wherein, the National Security Act
Amendments of 1949 are to establish the U.S. Department of Defense as
an "Executive Department", including the jurisdictions of the Department
of U.S. Army, according to R.S. Section 189 of Title 4 of the Revised
Statutes; the Act of July 26, 1947, chapter 343,Secton 201 (d), as added
August 1, 1949, chapter 412, section 4, 63 Stat. 579 of the former Title
U.S.C. Section 171-1. Therefore, the assembled membership of Plaintiff
to the "Executive Department" of U.S. Defense Intelligence Agency in
Directorship, may be advised upon the Defendant, U.S. Government, by
now giving an authorized service of process on their agents under Rule
4i(A), and the commitment to acknowledge the U.S. Department of
Defense or the agencies of Executive Department that may now be known
as the Defendant.

The Plaintiff so determines that on a afforded time of December 8,
1983 until an unspecified report of absence from all official duties of

Adjudant offices were filed and completed, before the concurrent jurisdictions for a Missouri State Headquarters of Army National Guard, under Title 32 U.S.C. Appendix, Section 1101.2, Appointment, in subsection (6), Report of appointment, the said petitioner was under an authorized work schedule of active-status. Hereinafter, the Plaintiff may assert that a forcible hold on all credentials of presumed relationship to the owed property of a Fifth Amendment right in "executive privilege" were illegally confiscated, for the behest of all derived legal terms that give rise to this cause of action before the local District Court of Kansas, Eighth District. Henceforth, the Plaintiff so moves to initialize a formal judgment on In Re Wilson, by an arrangement of procedural due process under federal statutes of judicial decisions for Title 28 U.S.C. Section 1343, Civil Rights and Elective Franchise, in subsection (a)(4), as it may be stated in "color of title" for a qualification of pronouncements for civil deprivations afforded to Title 42 U.S.C. Section 1983, and the following definitions of subdivision 4:"to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including right to vote."

The Plaintiff now concerns a designated period of commencement to the service of process, in pursuant terms to local Rule 3.1 Commencement of Actions; Process, Service and Filing of Pleadings, Motions and Orders. Upon requisition of this dutiful order and the commencement period of disposition for a timeliness in a recognition of notices of power, the critical assignment of committal responses to the enforcement of the "100-mile bulge" under FRCP(Federal Rules of Civil Procedure), Rule 4(l)(1),Proving Service, and the appropriate candor in set course of restraining orders to the assessment of default judgments, if respondent pleads are not entirely provided within concurrence to Rule 4(l)(2), and Rule 4(n)(1), Rule 4(n)(2), respectively. Hereinafter, the Plaintiff has made a vestiture of within the

venue of the local District Court of Kansas, Eighth District, for the acknowledgement and dispensation of a sworn testimony in trust of Officials of this venue under Title 28 U.S.C. Section 636,Jurisdiction,Power, and Temporary Assignments, in subsection 4(c) (2), as follows: "If a Magistrate Judge is designated to exercise civil jurisdiction under paragraph(1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties consent."(Oct. 21, 1976, P.L. 94-577, Section 1, 90 Stat. 2729; Oct. 28, 1977, P.L. 95-144, Nov. 2, 2002, P.L. 107-273, Div. B, Title III, Section 3002(b), 116 Stat. 1805; Sept. 9, 2005, P.L. 109-63, Section 2(d) 119 Stat. 1995).

Hereinafter, the Plaintiff so ay attach a full-brief to assert factual statements and all legal arguments to the duration of accompanied standards of civil procedures under the examination of local Rule 7.6, Briefs and Memoranda. Therein, the Plaintiff may control a service of process upon thr offices of the Comptroller General, Edward L. Williams, in wages of all entitlements, conferences, data, and selectivity of archived public documents ro denote the ends of federal jurisdiction. The case of In Re Wilson is now commenced, according to the local Rule 4.1, Service of Process In Accordance With State Practice, and the codified requirements of FRCP(Federal Rules of Civil Procedure), Rule 4i (A), Rule 4(m), Rule (k)(2), Rule 4(l), Rule (n)(1), and Rule 4(n)(2), respectively.

Hereinafter, the Plaintiff so duly motions for an attached order to

this request for a commencement of original pleadings, to enforce a "no public access" standard of court observations, and the regents of mass media, under the local Rule 5.4.12, Public Access.(Adopted 3/17/04). The Plaintiff so motions for a recognition of all provided standards, in update of "notices" of power, the controlling status of Rule 4i(A), Rule 4(K(2), Rule 4(m), Territorial Limits of Effective Service, Rule 4(l)(1), Asserting Jurisdiction over property with a Federal law, and the subsections of FRCP, Rule 4(h), Notice, in commitments to observe a long-arm statute and the conferences with reciprocity of the local District Court of Kansas, Eighth District, unto all jurisdictional limitations set forth for the "replevin" of "quartered properties" made to be announced in tangible and intangible assets, or entities of wealth in designation to a model of "corporate dissolutions", or a liquidation method. Henceforth, the Plaintiff so enters an observation of the verifiable sources within necessity to apply an enforcement of tendered summons, in a cast of prevailing systemization unto all court orders, from which the advisement to the Federal Long-Arm Statute of FRCP (Federal Rules of Civil Procedure), Rule 4(k)(2) are so dutifully enlisted to proof of service.

The Plaintiff may authorize a service of process on capital schedule of private companies and law firms in which the petitioner is announced to be the residing President Officer, and the sole-proprietorship owner of controlling interest to values of corporate stocks. Therein, the assessment of a drawer in ranges of the general rule of long-arm statutes are now consistent with a demand to reign a proof of service upon the local companies of location the Washington, D.C., or the District of Columbia, under the domain of FRCP(Federal Rules of Civil Procedure), Rule 4(h)(1)(B), Service A Corporation, Partnership, or Association.

The Plaintiff so asserts that a designated officer should give an entry to fulfill receipts of a proof service, under the summons of Rule 4(h)(1)(B), at the Wilson Law Firm, P.C., a general corporation of

petitioner's original founding principle in all articles of by-laws; the service of process should be delivered unto the address of 499109 N.E. Washington, D.C. 20304. Henceforth, the Plaintiff so motions for an order of service of process to be delivered unto the Wilson Personal Holding Company, P.C., wherein, the petitioner is the President and sole-proprietor, according to the original founding principle of articles of incorporation, and the domicile in the State of Vermont. The Plaintiff so determines that an exact placement of a service of process should be rendered on the designated responsible party of reception to a corporate office, by the delivery to the following address, as it may be stipulated to be known at the location of 481109 N.E. Washington, D.C., 20304.

The Plaintiff so now presents a claimant view, on the basis of this In Re mater, to affirm a justification in compensational rights of establishment for Title 42 U.S.C. Section 1981-1983, and the controlling interest of an upstanding role in magnification of graft periods in designated treatment of the Defendant's approach, to assigned federal employees of a "minority background", according to Title VII of the 1964 Civil Rights Act, wherein, the harbored times of misconstruence to all obligatory rights of labor contracts were jeopardized unto the following tier of federal laws, the Small Business Act (Act), 72 Stat. 384, as amended, 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),(3)). Henceforth, the Plaintiff may commit all working terms of adapted judicial rulings in Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995), to a finding of subsequent values in reaffirmation of Title 10 U.S.C. Section 2304, Head of Agency, and the anticipatory rights of Plaintiff's discourse in knowledge of "head of agency", to embark in a formalized situation of appointed military supervision of federal contracts for the duration of career tenure that may be acknowledged as a dateline of June 15, 1978 to August 25, 1979; a cast of military powers in recognition of Title 10 U.S.C. Section 2802, Military Construction Projects, Title 10 U.S.C. Section 2773(a), Departmental Accountable Officials ,(P.L. 107-314), div. A, title X, Dec. 1005(A), Dec. 2, 2002, 116 Stat. 2631, amended P.L. 109-163, title X, Sec. 1656 C)(8), Jan. 6, 2006, 119 Stat. 344(1); title XIII,, Section 1309(a), Nov. 14, 1986, 100 Stat.3902), amended P.L. 104-316, title 1, Sec. 115(g)(2), Oct. 19, 1996, 110 Stat. 3835; P.L:. 109-64, div. A, title VI, Sec. 672(a), Oct. 17,2006, 120 Stat. 2270). The Plaintiff so moves for concert in final judgment of the case of In Re Wilson to concur with actual damages for the clause of the Small Business Act (Act), 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),and(3), as the affirmative restraints from an established work office in labor construction and dense logistics may have confirmed any deprivation of contractual rights, to the ownership of a military jurisdiction of residency for Title 40 U.S.C. Section 1314, Easements ( P.L. 107-217, Section 1, Aug. 12, 2002,116 Stat. 1139),Title 40 U.S.C. Section 1315(Aug. 15, 2002, P.L 107-217, Section 1, 116 Stat. 1140, Nov. 25, 20002, P.L 107-296, Title XVII, Section 1706 (b)((1), 116 Stat. 2316),Title 31 U.S.C. Section 1307, Public building construction (P.L. 97-258, Sept. 13, 1982, 96 Stat.918), Title 40 U.S.C. Section 11316,

Accountability, (P.L. 107-217, Section 1, Aug. 21, 2002, 116 Stat. 1242).

The Plaintiff may state a derived ownership in "governmental-bid corporations" is availed upon by the decisive entry of classified subjects under the formal inspection of binding relationships to the following stipulations of Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995), at 205: "Federal law requires that a subcontracting similar to the one used here must appear in most federal agency contracts, and it also requires the clause to state that "[t] the contractor shall presume that socially and economically disadvantaged individuals include Black America, Hispanic America, Native Americans, Asian Pacific Americans, and other minorities, or any other individual found to be disadvantaged by the [Small Business] Administration pursuant to section 8(a) of the presumption set forth in that statute discriminates on the basis of race in violation of the Federal Government's Fifth Amendment obligation not to deny equal protection of the laws." Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff nay now conference in a military of obligation to make a defense of contract, on the basis of consideration, to owed the "good-faith and reasonableness' of "obligatory rights' in credentials of military personnel. Henceforth, the Plaintiff now extends the contractual obligations to a closure of legal sanctions derived from Title 42 U.S.C. Section 1983, Civil Actions for Deprivation of Rights, and the classified topics of Department of Army v. Blue Fox, Inc., 525 U.S. 255, at 258, on the necessary requirements of "equitable liens" to hold in verification of standing in subject matter jurisdiction, the most advisable terminology for a Taking-Clause of the Fifth Amendment view. The Plaintiff so may contend for a straightforward method of income reparations to be determined under the following terms of contract rules under the establishment of Title 10 U.S.C. Section 2304, Head of Agency, and he applied duty-status unto a formulated transactions of identifying business-owners, in bid contractors works , under a specified terminology of Title 40 U.S.C. Section 1314 (a)(1), a wholly owned Government corporation; the announcements of the Small Business Act (Act), 72 Stat. 384, as amended, 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),(3), so declares for a distinguished holding of Adarand Constructors Inc., in the following excerpt of quotation:" the Small Business Act (Act), 72 Stat. 384, as amended, (15 U.S.C. Section 631, declares it to be the "policy of the

United States that small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." Section 8(d)(1), 15 U.S.C. Section 637(d)(1).The Act defines "socially disadvantaged individuals" as those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities ," Section 89a(5),15 U.S.C. Section 637 (a)(50, and it defines "economically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business are who are not socially disadvantaged." Section 8(a0(6)(A), 15 U.S.C. Section 637(d)(1).Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff so implicates a clarified study of former tasks in the adjudant office of the U.S. Armed Forces/U.S. Army did consist of paramount standard though which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 1315.The Plaintiff so implicates a clarified study of former tacks in the adjudant offices of the U.S. Armed Forces/U.S. Army did consist of paramount standards through which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, was made a commitment of petitioner's awards in devotion of public service ; a prepared statement of duty status in raise of assigned military powers of attorney, Title 10 U.S.C. Section 1044(b) may stipulate all interconnected terms of protocol for executive privilege that were extended to ownerships of labor-constructor management throughout a prevailing time of calendar schedules for the year of 1979. Henceforth, the Plaintiff may submit an official statement in absolute pursuit of evidentiary findings of relevancy unto a dispensation of labor-schedules in notice of adjudicating the pending case of In Re Wilson , and the assembly of directed issues to an apparent source of "Directorship" of the Defense Intelligence Agency , under the classified terms of statutory provision Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, as the declared statements may be codified :"

(a). Construction (1), replacement of existing building s. When the Administration of General Services considers it to be in the best interest of the Federal Government to construct a new public building to take place of an existing public building, the Administrator my demolish the existing building and use the site on which it is located for the site of the proposed public building, f the Administrator believes that it is more advantageous to construct the public building on a different site in the same city, the Administrator may exchange the building and site, the site, for another site ,or may sell the building and site in accordance with the subtitle I of this tile and title III of he Federal Property and Administrative General Services Act of 1949 (41 U.S. C. Section 251 et seq. )" (Aug. 21, 2002, P.L. 107-217, Section 1, 116 Stat. 1159). The Plaintiff may confirm a jurisdictional issue for this In Re matter does intern to the qualifications of Adarand Constructors Inc v. Pena, 515 U.S. 200(1995),on the basis of actively making question to the verifiable sources of the Small Business Administration (SBA) were announced to a legal stipulation of worker's rights in Title 15 U.S.C. Section 8(a)(6)(A), or Title 10 U.S.C. Section 2304(B)(I) ,and Title 10 U.S.C. Section 2304b. Task order contracts: advisory and assistant services, in subsection C), as it may be stipulated: "(C. Content of Notice- the notice required by section 18 of the Office of Federal Procurement Policy Act (41 U,S.C. 416)and section 8(e) of the Small Business Act( 15 U.S.C. Section 637(e)) shall reasonably and fairly describe the general scope, magnitude , and duration of the proposed task order contract in a manner that would reasonably enable a potential offer, or to decide whether to request the solicitation and consider submitting an offer."(P.L103-355, title I, Section 1004(a)(1), Oct. 13, 1994, 108 Stat.3249; amended P.L 108-136,div.A.,title VIII, 843,Section 843 (b), Nov. 24, 2003, 117 Stat. 1553; P.L 108-375, div. A. ,title VIII, Section 813(a), Oct. 28, 2004, 118 Stat. 2014).The Plaintiff so may indicate that custody of protective shields to the Fifth Amendment privilege, in property rights, were implemented through attachments of statutory directives of the Small Business Administration (SBA), as the clinical sources of Adarand Constructors Inc. should import the codified scheme of Section 8(a) programs is availability of qualified owners of Government Bid Contracts in Title 10 U.S.C. Section 2304(B)(I), Task Order Contracts: " The Small Business Administration (SBA)has implemented these statutory

directives in a variety of ways, two of which are relevant here. One is "8(a) program", which is available to small businesses controlled by socially are economically disadvantaged individuals as the SBA has defined those terms. The 8(a) program confers a wide range of benefits on participating businesses,sec,e.g.,13 CFR Sections 124.303-124.311, 124,124.103(1999);48 (FR subpt. 19.8 (1994), one of which is automatic eligibility for subcontractor compensation provisions of the kind at issue in this case,15 U.S.C. Section 637 (d)(3)(c, (conferring presumptive eligibility on any one "found to be disadvantage...pursuant to section 8(a) of the Small Business Act"). (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff may enlist a participatory view of the Section 8(a) program, in the more construent terms of formal inquiry to appreciate demand for the business marketplace, and the accessible grade on all enlarged tasks of Title 10 U.S.C. Section 2304(B)(I),, a controlling degree of impetus to maintain an "executive privilege" within constraints of the Javits-Wagner-O'Day Act (41 U.S.C. 46 et seq.), or (ii) Section 8(a) of the Small Business Act (15 U.S.C. Section 637 (a); the arrangement of historically protected classifications to group participants of Sec 8(a) program, or SBA(Small Business Act) are informed with Adarand Constructors, Inc. , as follows: "To participate in the 8(a) program, a business must be "small", as defined in 13 CFR Section 124.102 (1944); and it must be 51% owned by individuals who qualify as "socially and economically disadvantaged", Section 124.103. The SBA presumes that black, Hispanics, Asian, Pacific, Subcontinent Asian, and Native Americans, as well as "members of other groups designated from time to time by SBA", are "socially disadvantaged", Section 124.105 (b)(1). It also allows any individual not a member of a listed group to prove social disadvantage "on the basis of clear and convincing evidence", as described in Section 124.105(c). Social disadvantage is not enough to prove "economic disadvantage" according to the criteria set forth in Section 124.106(a)." (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff so may interpret an alternative program of Section 8(b) of the SBA(Small Business Administration) as the attribute of discoverable matters in relevant questions to initiate a counseling party of judicial review for the case of In Re Wilson. Hereinafter, the

accomplishments of administrative guidelines that were imparted to a associative level of bargaining components would instill a completed number of financial resources to the administration of "estate and trusts", furthermore, the adjusted balances of cumulative opinions on a constructed theory of organized bid-contract would advise to the competent sources of local Rule 66.1(e), Administration of Estate, with a presumed task in which a licensed mediation of the case in Adarand Constructors Inc. would obligate an administrative remedy, as follows: "A different set of regulations, however, says that member of minority groups wishing to participate in the Section 8(d) subcontracting program are entitled to a race-base presumption of social and economic disadvantage. 48CFR Sections 19.001,19.703(a)(2)(1994). We are left with the some uncertainty as to whether participation in the 8(d) subcontracting program requires and individualized showing of economic disadvantage. In any event, in both cases the 8(a) and the 8(b) programs, the presumptions of disadvantage are rebuttable if a third party comes forward with evidence suggesting that the participant, is not, in fact, either economically, or socially disadvantaged. 13 CFR Section 124.111 c) -(11), 124.601-124.609(1994)." (IBID,515 U.S.200 (208) (1995).

The Plaintiff so may contend for an administrative license in classified predictions on a variable of legitimate practicums through which arbitration parties have concerned the economic trends of an industrial schedule for a citation of jurisdictional review or Section or Section 8(d) SBA's (Small Business Administration) Contracts. Hereinafter, the Plaintiff does recognize a criteria source of Title 31U.S.C. Section 712, Investigating the use of public money , to effectuate over a designated term of public-interest ; the happenstances of the duty in maintaining an efficacy in government. The Title 31U.S.C. Section 712 is defined in the apparent concern of the following statements: "The Comptroller General shall-(1)investigate all matters related to the receipt , disbursement, and use of public money; 2). estimate the cost to the United States Government of complying with each restriction or expenditures of a specific appropriation in a general appropriation law and report each estimate to Congress with recommendations the Comptroller General considers desirable; 3). analyze expenditures of each executive agency the Comptroller General believes help Congress decide whether pubic money has

been used and expended economically and efficiently; 4). make investigation and report ordered by either House of Congress or a committee of Congress having jurisdiction over revenue, appropriations, or expenditures the help and information the committee requests." (Sept. 13, 1982,P.L 97-258, Section 1, 96 Stat. 889).

been used and expended economically and efficiently;  4). make investigation and report
ordered by either House of Congress or a committee of Congress having jurisdiction over
revenue, appropriations, or expenditures the help and information the committee
requests." (Sept. 13, 1982,P.L 97-258, Section 1, 96 Stat. 889).

The Plaintiff so now presents a claimant view, on the basis of this In Re mater, to affirm a justification in compensational rights of establishment for Title 42 U.S.C. Section 1981-1983, and the controlling interest of an upstanding role in magnification of graft periods in designated treatment of the Defendant's approach, to assigned federal employees of a "minority background", according to Title VII of the 1964 Civil Rights Act, wherein, the harbored times of misconstruence to all obligatory rights of labor contracts were jeopardized unto the following tier of federal laws, the Small Business Act (Act), 72 Stat. 384, as amended, 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),(3)). Henceforth, the Plaintiff may commit all working terms of adapted judicial rulings in Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995), to a finding of subsequent values in reaffirmation of Title 10 U.S.C. Section 2304, Head of Agency, and the anticipatory rights of Plaintiff's discourse in knowledge of "head of agency", to embark in a formalized situation of appointed military supervision of federal contracts for the duration of career tenure that may be acknowledged as a dateline of June 15, 1978 to August 25, 1979; a cast of military powers in recognition of Title 10 U.S.C. Section 2802, Military Construction Projects, Title 10 U.S.C. Section 2773(a), Departmental Accountable Officials ,(P.L. 107-314), div. A, title X, Dec. 1005(A), Dec. 2, 2002, 116 Stat. 2631, amended P.L. 109-163, title X, Sec. 1656 C)(8), Jan. 6, 2006, 119 Stat. 344(1); title XIII,, Section 1309(a), Nov. 14, 1986, 100 Stat.3902), amended P.L. 104-316, title 1, Sec. 115(g)(2), Oct. 19, 1996, 110 Stat. 3835; P.L:. 109-64, div. A, title VI, Sec. 672(a), Oct. 17,2006, 120 Stat. 2270). The Plaintiff so moves for concert in final judgment of the case of In Re Wilson to concur with actual damages for the clause of the Small Business Act (Act), 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),and(3), as the affirmative restraints from an established work office in labor construction and dense logistics may have confirmed any deprivation of contractual rights, to the ownership of a military jurisdiction of residency for Title 40 U.S.C. Section 1314, Easements ( P.L. 107-217, Section 1, Aug. 12, 2002,116 Stat. 1139),Title 40 U.S.C. Section 1315(Aug. 15, 2002, P.L 107-217, Section 1, 116 Stat. 1140, Nov. 25, 20002, P.L 107-296, Title XVII, Section 1706 (b)((1), 116 Stat. 2316),Title 31 U.S.C. Section 1307, Public building construction (P.L. 97-258, Sept. 13, 1982, 96 Stat.918), Title 40 U.S.C. Section 11316,

Accountability, (P.L. 107-217, Section 1, Aug. 21, 2002, 116 Stat. 1242).

The Plaintiff may state a derived ownership in "governmental-bid corporations" is availed upon by the decisive entry of classified subjects under the formal inspection of binding relationships to the following stipulations of Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995), at 205: "Federal law requires that a subcontracting similar to the one used here must appear in most federal agency contracts, and it also requires the clause to state that "[t] the contractor shall presume that socially and economically disadvantaged individuals include Black America, Hispanic America, Native Americans, Asian Pacific Americans, and other minorities, or any other individual found to be disadvantaged by the [Small Business] Administration pursuant to section 8(a) of the presumption set forth in that statute discriminates on the basis of race in violation of the Federal Government's Fifth Amendment obligation not to deny equal protection of the laws." Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff nay now conference in a military of obligation to make a defense of contract, on the basis of consideration, to owed the "good-faith and reasonableness' of "obligatory rights' in credentials of military personnel. Henceforth, the Plaintiff now extends the contractual obligations to a closure of legal sanctions derived from Title 42 U.S.C. Section 1983, Civil Actions for Deprivation of Rights, and the classified topics of Department of Army v. Blue Fox, Inc., 525 U.S. 255, at 258, on the necessary requirements of "equitable liens" to hold in verification of standing in subject matter jurisdiction, the most advisable terminology for a Taking-Clause of the Fifth Amendment view. The Plaintiff so may contend for a straightforward method of income reparations to be determined under the following terms of contract rules under the establishment of Title 10 U.S.C. Section 2304, Head of Agency, and he applied duty-status unto a formulated transactions of identifying business-owners, in bid contractors works, under a specified terminology of Title 40 U.S.C. Section 1314 (a)(1), a wholly owned Government corporation; the announcements of the Small Business Act (Act), 72 Stat. 384, as amended, 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),(3), so declares for a distinguished holding of Adarand Constructors Inc., in the following excerpt of quotation:" the Small Business Act (Act), 72 Stat. 384, as amended, (15 U.S.C. Section 631, declares it to be the "policy of the

United States that small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." Section 8(d)(1), 15 U.S.C. Section 637(d)(1).The Act defines "socially disadvantaged individuals" as those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities ," Section 89a(5),15 U.S.C. Section 637 (a)(50, and it defines "economically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business are who are not socially disadvantaged." Section 8(a0(6)(A), 15 U.S.C. Section 637(d)(1).Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff so implicates a clarified study of former tasks in the adjudant office of the U.S. Armed Forces/U.S. Army did consist of paramount standard though which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 1315.The Plaintiff so implicates a clarified study of former tacks in the adjudant offices of the U.S. Armed Forces/U.S. Army did consist of paramount standards through which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, was made a commitment of petitioner's awards in devotion of public service ; a prepared statement of duty status in raise of assigned military powers of attorney, Title 10 U.S.C. Section 1044(b) may stipulate all interconnected terms of protocol for executive privilege that were extended to ownerships of labor-constructor management throughout a prevailing time of calendar schedules for the year of 1979. Henceforth, the Plaintiff may submit an official statement in absolute pursuit of evidentiary findings of relevancy unto a dispensation of labor-schedules in notice of adjudicating the pending case of In Re Wilson , and the assembly of directed issues to an apparent source of "Directorship" of the Defense Intelligence Agency , under the classified terms of statutory provision Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, as the declared statements may be codified :"

(a). Construction (1), replacement of existing building s. When the Administration of General Services considers it to be in the best interest of the Federal Government to construct a new public building to take place of an existing public building, the Administrator my demolish the existing building and use the site on which it is located for the site of the proposed public building, f the Administrator believes that it is more advantageous to construct the public building on a different site in the same city, the Administrator may exchange the building and site, the site, for another site ,or may sell the building and site in accordance with the subtitle I of this tile and title III of he Federal Property and Administrative General Services Act of 1949 (41 U.S. C. Section 251 et seq. )" (Aug. 21, 2002, P.L. 107-217, Section 1, 116 Stat. 1159). The Plaintiff may confirm a jurisdictional issue for this In Re matter does intern to the qualifications of Adarand Constructors Inc v. Pena, 515 U.S. 200(1995),on the basis of actively making question to the verifiable sources of the Small Business Administration (SBA) were announced to a legal stipulation of worker's rights in Title 15 U.S.C. Section 8(a)(6)(A), or Title 10 U.S.C. Section 2304(B)(I) ,and Title 10 U.S.C. Section 2304b. Task order contracts: advisory and assistant services, in subsection C), as it may be stipulated: "(C. Content of Notice- the notice required by section 18 of the Office of Federal Procurement Policy Act (41 U,S.C. 416)and section 8(e) of the Small Business Act( 15 U.S.C. Section 637(e)) shall reasonably and fairly describe the general scope, magnitude , and duration of the proposed task order contract in a manner that would reasonably enable a potential offer, or to decide whether to request the solicitation and consider submitting an offer."(P.L103-355, title I, Section 1004(a)(1), Oct. 13, 1994, 108 Stat.3249; amended P.L 108-136,div.A.,title VIII, 843,Section 843 (b), Nov. 24, 2003, 117 Stat. 1553; P.L 108-375, div. A. ,title VIII, Section 813(a), Oct. 28, 2004, 118 Stat. 2014).The Plaintiff so may indicate that custody of protective shields to the Fifth Amendment privilege, in property rights, were implemented through attachments of statutory directives of the Small Business Administration (SBA), as the clinical sources of Adarand Constructors Inc. should import the codified scheme of Section 8(a) programs is availability of qualified owners of Government Bid Contracts in Title 10 U.S.C. Section 2304(B)(I), Task Order Contracts: " The Small Business Administration (SBA)has implemented these statutory

directives in a variety of ways, two of which are relevant here. One is "8(a) program", which is available to small businesses controlled by socially are economically disadvantaged individuals as the SBA has defined those terms. The 8(a) program confers a wide range of benefits on participating businesses,sec,e.g.,13 CFR Sections 124.303-124.311, 124,124.103(1999);48 (FR subpt. 19.8 (1994), one of which is automatic eligibility for subcontractor compensation provisions of the kind at issue in this case,15 U.S.C. Section 637 (d)(3)(c, (conferring presumptive eligibility on any one "found to be disadvantage…pursuant to section 8(a) of the Small Business Act"). (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff may enlist a participatory view of the Section 8(a) program, in the more construent terms of formal inquiry to appreciate demand for the business marketplace, and the accessible grade on all enlarged tasks of Title 10 U.S.C. Section 2304(B)(I),, a controlling degree of impetus to maintain an "executive privilege" within constraints of the Javits-Wagner-O'Day Act (41 U.S.C. 46 et seq.), or (ii) Section 8(a) of the Small Business Act (15 U.S.C. Section 637 (a); the arrangement of historically protected classifications to group participants of Sec 8(a) program, or SBA(Small Business Act) are informed with Adarand Constructors, Inc. , as follows: "To participate in the 8(a) program, a business must be "small", as defined in 13 CFR Section 124.102 (1944); and it must be 51% owned by individuals who qualify as "socially and economically disadvantaged", Section 124.103. The SBA presumes that black, Hispanics, Asian, Pacific, Subcontinent Asian, and Native Americans, as well as "members of other groups designated from time to time by SBA", are "socially disadvantaged", Section 124.105 (b)(1). It also allows any individual not a member of a listed group to prove social disadvantage "on the basis of clear and convincing evidence", as described in Section 124.105(c). Social disadvantage is not enough to prove "economic disadvantage" according to the criteria set forth in Section 124.106(a)." (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff so may interpret an alternative program of Section 8(b) of the SBA(Small Business Administration) as the attribute of discoverable matters in relevant questions to initiate a counseling party of judicial review for the case of In Re Wilson. Hereinafter, the

accomplishments of administrative guidelines that were imparted to a associative level of bargaining components would instill a completed number of financial resources to the administration of "estate and trusts", furthermore, the adjusted balances of cumulative opinions on a constructed theory of organized bid-contract would advise to the competent sources of local Rule 66.1(e), Administration of Estate, with a presumed task in which a licensed mediation of the case in Adarand Constructors Inc. would obligate an administrative remedy, as follows: "A different set of regulations, however, says that member of minority groups wishing to participate in the Section 8(d) subcontracting program are entitled to a race-base presumption of social and economic disadvantage. 48CFR Sections 19.001,19.703(a)(2)(1994). We are left with the some uncertainty as to whether participation in the 8(d) subcontracting program requires and individualized showing of economic disadvantage. In any event, in both cases the 8(a) and the 8(b) programs, the presumptions of disadvantage are rebuttable if a third party comes forward with evidence suggesting that the participant, is not, in fact, either economically, or socially disadvantaged. 13 CFR Section 124.111 c) -(11), 124.601-124.609(1994)." (IBID,515 U.S.200 (208) (1995).

The Plaintiff so may contend for an administrative license in classified predictions on a variable of legitimate practicums through which arbitration parties have concerned the economic trends of an industrial schedule for a citation of jurisdictional review or Section or Section 8(d) SBA's (Small Business Administration) Contracts. Hereinafter, the Plaintiff does recognize a criteria source of Title 31U.S.C. Section 712, Investigating the use of public money , to effectuate over a designated term of public-interest ; the happenstances of the duty in maintaining an efficacy in government. The Title 31U.S.C. Section 712 is defined in the apparent concern of the following statements: "The Comptroller General shall-(1)investigate all matters related to the receipt , disbursement, and use of public money; 2). estimate the cost to the United States Government of complying with each restriction or expenditures of a specific appropriation in a general appropriation law and report each estimate to Congress with recommendations the Comptroller General considers desirable; 3). analyze expenditures of each executive agency the Comptroller General believes help Congress decide whether pubic money has

Accountability, (P.L. 107-217, Section 1, Aug. 21, 2002, 116 Stat. 1242).

The Plaintiff may state a derived ownership in "governmental-bid corporations" is availed upon by the decisive entry of classified subjects under the formal inspection of binding relationships to the following stipulations of Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995), at 205: "Federal law requires that a subcontracting similar to the one used here must appear in most federal agency contracts, and it also requires the clause to state that "[t] the contractor shall presume that socially and economically disadvantaged individuals include Black America, Hispanic America, Native Americans, Asian Pacific Americans, and other minorities, or any other individual found to be disadvantaged by the [Small Business] Administration pursuant to section 8(a) of the presumption set forth in that statute discriminates on the basis of race in violation of the Federal Government's Fifth Amendment obligation not to deny equal protection of the laws." Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff nay now conference in a military of obligation to make a defense of contract, on the basis of consideration, to owed the "good-faith and reasonableness' of "obligatory rights' in credentials of military personnel. Henceforth, the Plaintiff now extends the contractual obligations to a closure of legal sanctions derived from Title 42 U.S.C. Section 1983, Civil Actions for Deprivation of Rights, and the classified topics of Department of Army v. Blue Fox, Inc., 525 U.S. 255, at 258, on the necessary requirements of "equitable liens" to hold in verification of standing in subject matter jurisdiction, the most advisable terminology for a Taking-Clause of the Fifth Amendment view. The Plaintiff so may contend for a straightforward method of income reparations to be determined under the following terms of contract rules under the establishment of Title 10 U.S.C. Section 2304, Head of Agency, and he applied duty-status unto a formulated transactions of identifying business-owners, in bid contractors works , under a specified terminology of Title 40 U.S.C. Section 1314 (a)(1), a wholly owned Government corporation; the announcements of the Small Business Act (Act), 72 Stat. 384, as amended, 15 U.S.C. Section 631(15 U.S.C. Section 637(d) (2),(3), so declares for a distinguished holding of Adarand Constructors Inc., in the following excerpt of quotation:" the Small Business Act (Act), 72 Stat. 384, as amended, (15 U.S.C. Section 631, declares it to be the "policy of the

United States that small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." Section 8(d)(1), 15 U.S.C. Section 637(d)(1).The Act defines "socially disadvantaged individuals" as those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities ," Section 89a(5),15 U.S.C. Section 637 (a)(50, and it defines "economically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business are who are not socially disadvantaged." Section 8(a0(6)(A), 15 U.S.C. Section 637(d)(1).Adarand Constructors Inc. v. Pena, 515 U.S. 200(1995). The Plaintiff so implicates a clarified study of former tasks in the adjudant office of the U.S. Armed Forces/U.S. Army did consist of paramount standard though which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 1315.The Plaintiff so implicates a clarified study of former tacks in the adjudant offices of the U.S. Armed Forces/U.S. Army did consist of paramount standards through which an implementation phase of installing security measures for a tactical resolution of military operations, in address to Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, was made a commitment of petitioner's awards in devotion of public service ; a prepared statement of duty status in raise of assigned military powers of attorney, Title 10 U.S.C. Section 1044(b) may stipulate all interconnected terms of protocol for executive privilege that were extended to ownerships of labor-constructor management throughout a prevailing time of calendar schedules for the year of 1979. Henceforth, the Plaintiff may submit an official statement in absolute pursuit of evidentiary findings of relevancy unto a dispensation of labor-schedules in notice of adjudicating the pending case of In Re Wilson , and the assembly of directed issues to an apparent source of "Directorship" of the Defense Intelligence Agency , under the classified terms of statutory provision Title 40 U.S.C. Section 3305, Construction And Alteration of Buildings, as the declared statements may be codified :"

directives in a variety of ways, two of which are relevant here. One is "8(a) program", which is available to small businesses controlled by socially are economically disadvantaged individuals as the SBA has defined those terms. The 8(a) program confers a wide range of benefits on participating businesses,sec,e.g.,13 CFR Sections 124.303-124.311, 124,124.103(1999);48 (FR subpt. 19.8 (1994), one of which is automatic eligibility for subcontractor compensation provisions of the kind at issue in this case,15 U.S.C. Section 637 (d)(3)(c, (conferring presumptive eligibility on any one "found to be disadvantage...pursuant to section 8(a) of the Small Business Act"). (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff may enlist a participatory view of the Section 8(a) program, in the more construent terms of formal inquiry to appreciate demand for the business marketplace, and the accessible grade on all enlarged tasks of Title 10 U.S.C. Section 2304(B)(I),, a controlling degree of impetus to maintain an "executive privilege" within constraints of the Javits-Wagner-O'Day Act (41 U.S.C. 46 et seq.), or (ii) Section 8(a) of the Small Business Act (15 U.S.C. Section 637 (a); the arrangement of historically protected classifications to group participants of Sec 8(a) program, or SBA(Small Business Act) are informed with Adarand Constructors, Inc. , as follows: "To participate in the 8(a) program, a business must be "small", as defined in 13 CFR Section 124.102 (1944); and it must be 51% owned by individuals who qualify as "socially and economically disadvantaged", Section 124.103. The SBA presumes that black, Hispanics, Asian, Pacific, Subcontinent Asian, and Native Americans, as well as "members of other groups designated from time to time by SBA", are "socially disadvantaged", Section 124.105 (b)(1). It also allows any individual not a member of a listed group to prove social disadvantage "on the basis of clear and convincing evidence", as described in Section 124.105(c). Social disadvantage is not enough to prove "economic disadvantage" according to the criteria set forth in Section 124.106(a)." (Adarand Constructors Inc , 515 U.S.200 (207) (1995).

The Plaintiff so may interpret an alternative program of Section 8(b) of the SBA(Small Business Administration) as the attribute of discoverable matters in relevant questions to initiate a counseling party of judicial review for the case of In Re Wilson. Hereinafter, the

accomplishments of administrative guidelines that were imparted to a associative level of bargaining components would instill a completed number of financial resources to the administration of "estate and trusts", furthermore, the adjusted balances of cumulative opinions on a constructed theory of organized bid-contract would advise to the competent sources of local Rule 66.1(e), Administration of Estate, with a presumed task in which a licensed mediation of the case in Adarand Constructors Inc. would obligate an administrative remedy, as follows: "A different set of regulations, however, says that member of minority groups wishing to participate in the Section 8(d) subcontracting program are entitled to a race-base presumption of social and economic disadvantage. 48CFR Sections 19.001,19.703(a)(2)(1994). We are left with the some uncertainty as to whether participation in the 8(d) subcontracting program requires and individualized showing of economic disadvantage. In any event, in both cases the 8(a) and the 8(b) programs, the presumptions of disadvantage are rebuttable if a third party comes forward with evidence suggesting that the participant, is not, in fact, either economically, or socially disadvantaged. 13 CFR Section 124.111 c) -(11), 124.601-124.609(1994)." (IBID,515 U.S.200 (208) (1995).

The Plaintiff so may contend for an administrative license in classified predictions on a variable of legitimate practicums through which arbitration parties have concerned the economic trends of an industrial schedule for a citation of jurisdictional review or Section or Section 8(d) SBA's (Small Business Administration) Contracts. Hereinafter, the Plaintiff does recognize a criteria source of Title 31U.S.C. Section 712, Investigating the use of public money , to effectuate over a designated term of public-interest ; the happenstances of the duty in maintaining an efficacy in government. The Title 31U.S.C. Section 712 is defined in the apparent concern of the following statements: "The Comptroller General shall-(1)investigate all matters related to the receipt , disbursement, and use of public money; 2). estimate the cost to the United States Government of complying with each restriction or expenditures of a specific appropriation in a general appropriation law and report each estimate to Congress with recommendations the Comptroller General considers desirable; 3). analyze expenditures of each executive agency the Comptroller General believes help Congress decide whether pubic money has

been used and expended economically and efficiently; 4). make investigation and report ordered by either House of Congress or a committee of Congress having jurisdiction over revenue, appropriations, or expenditures the help and information the committee requests." (Sept. 13, 1982,P.L 97-258, Section 1, 96 Stat. 889).

assesssment of clerical opinion, not yet, the the policy remand of governmental network, in a fully-abided (version of Executive Order and the affirmative commitments to duty of civil rights laws, therein, the Plaintiff so addresses the accountancy of the Defendant, Executive Department, U.S. D.O.D.(Department of Defense), under Title 40 U.S.C. Section 11316,Accoutability, as the formal statute may be observed: "The haed of each execiutive agency, in consultation, with the Chief Information Officer and Chief Financial Officer of that executive agency(or; in the case of an executive agency witout a chif financual officer, any comparable official),shall estabish policies and procedures to ensure that-1). the accounting, financial, asset mangemtn,and thje other information suystems of the executive agency are designed, developed, maintaned, and used effectively to provide financial or program performance data fincial statents of the executive agency;2. financial and related programs performance data are provided on a reliable, consistent, and timely basis to executive agency, financial management systems; and 3. financial statement support-A). assessment and revisions of mission-related processes and administrative processes of the executive agency, B). measurement of the performances of investments made by the agency in information systems (P.L. 107-217,Section 1, Aug. 21, 2002, 116 Stat. 1242).

The Plaintiff may adjudicate on the order of Wirtz, as follows: "ordered: that defendants W. Willard Wirtz, Edward C. Sylvester, and their subordinates, agents, and employees and others acting in concern with then, be and hereby are restrained from taking any action withjout first affording Crown Papermakers notice and a full evidentiary hearing on the issue whether plaintiff Crown Zellerbach Corporation is in compliance wit the equal employment opportunity clauses required in its Government contracts and subcontracts by Executive Order 11246, as implemented by agreements dated March 19, and June 16, 1967, between Crown Zellerbach Corporation and the Office of Federal Contract Compliance , to: a. advise the heads of agency of the United States that Crown is not incompliance with the OFCC agreements or with the Executive Order by issuing or circulating any memorandum, notice of hearing or other Communication to any head of agency, or contracting officer or any other person those who require notice in order to participate in the hearing; b). debar, threaten to debtor, or otherwise blacklist or threaten

bargaining agreement. The Papermakers have insisted in the negotiations that, on the advance of it s counsel, the changes proposed by the OFFC may not be lawfully imposed by Crown upon the Papermakers. On September 8, 1967, the Papermakers formally notified Crown that unless a collective bargaining agreement was signed by September 19, presumaly without effecting the seniority system charges demanded by OFCC, the union would strik at Bogalusa.(Wirtz, 281 F.Supp. 337(1968).

The Plaintiff now may represent a onclusion of lw to antiocipate the giudleime of "preliminary injunctions" against hirin practices and the installmentsof pay-schedules should be xtended to a remedy of thepettitoner ,on the basis of the follwing character of Crowns's postion on the December 2 agreement, and the ploitized terms of rejection notice ondecember 7,1967:"A' Consult memorandum' to the heads of all agencies was circulated by Sylvester on May 5, 1967, and was withdrawn on June 16,1967,. Thjat memorandum was interpreted by the same Government contracting officers to mean that Crown was not in compliance or until OFC advised otherwise. There is evidence tending to show that Crown annd its affiliates lost at leastone prospective saels contracted of the My 5, memorndum. ("Wirtz, 281 F.Supp. 337(1968).

The plaintif may admit a corrollary premise of economic rights to be availed upon as te instance to all owed amoiunts of controversy, for the demand of Crown to make notices with the OFCC in a timely manor as to not be debarred from an executive order to constructr on NLRB (Natinal Labor Relations Board) agreemnt; the consequntial eleents for a presumptive threshold of equitble relief in Govermment contracts may now be presented in Wirtz:" If another such memeoranda or any other notice which stares that Cropwn is not in cmpliancxe is circulated buy OfCC, or if Crown isa summarily debarred pending a hearing, it is likely that Crown will irreparably lose a substantial volume of sales , not subject to exact detminatiin to botyh the Government anbdto othe contrractors who in turn do business with the Govrnmet, If Cdrown loses a substasntial voplume opf sasles , there will be san increasing less in jobs and in membership in the Papamakers Local Union at Begalusd which wil;l deprivew the internaatiional unoion of its dies. Futhermore, ,if astrilke should occur as a result ofther imposition odf a senoirty sysatem unaccetable to the bargaining parties , cxrown will suffr totalk loss of substantial money

to blacklist, Crown from eligibility for contracts with the United States and its agencies or with others who contract with, sell to or otherwise deal, with the United States and its agencies; Provided: hat this injunctions hall not restrain the defendants from instituting a hearing under section 208(b) of the Executive Order so long as any notice thereof states that Crown Zellerbach Corporation is not deemed to be in noncompliance with the Executive Order, unless and until an order shall be entered in accordance with 41 CFR part-60-1 after notice and a hearing conduucted pursuant thereto, and until further order of this Court." ("Wirtz, 281 F.Supp. 337 (342) (1968).

The Plaintiff so motions for an address of injunctive powers against the accounting practices of Defendant, Executive Department, U.S. D.O.D.(Department of Defense),with regard to Title 40 U.S.C. Section 11316,Accoutability, in subsection (2), and the elongated pattern of managerial oversights in which a distinguished marker of financial obligation unto payment of "petitioner" should have been appropriately conveyed to the incurrent terms of accounting information systems and the database inventory management of Title 5 U.S.C. Section 552; herein, the economic resolutions of adminstrative policies for "Government Bid contracting Companies" may be said in continuous treatment avenues to adjust all repariations of fiscal budgets to the imperative mandates of methodical payment systems under derioved assignor schedules known as "Government Sponsored Enterprises" of Title 12 U.S.C. Section 4619(a)(1)(B),as follows:" i. the enterprise is not likely to pay its obligatins in the normal course of business; ii. the enterprise has incurred or is reasonably likely to incur losses that would deplete substantially all of its core capital and it is unlikely that the enterprise will replenish its core capital within a reasonable period, iii. the enterprise has concealed or is concealing books, papers, record, or assets of the enterprise that are material to the discharge of the of the Director's responsibilities under subchapter, or has refused or is refusing to submit such books, papers, record, or information regarding the affairs of the enterprise for inspection to the Director upon request; or iv. the enterprise has willfully violated, or is willfully violating a final cease-and-desist order under section section 431 of this title." (P.L. 102-550, Title XIII, Section 1369, Oct. 28, 1992, 106 Stat. 3981). The Plaintiff so now may motion for an injunction based on a mandatory order of

jurisdictional powers consistent with the powers of courts, under the legal standard of Title 28 U.S.C. Section 636, (e)(5) certain requirements in contempts of courts, and the invested terms of duly vested authorities in local Rule 83.7(e), Review of Orders; the applicability of other rules, may be interpreted to case of specific intent for an enactment of all demands in construction of a "receivorship" of estate, inclusive of the transfers of entitlements that announce an "Official Name" with the astounding principle of an officer's trust in FRCP(Federal Rules of Civil Procedure), Rule 25(b)(1), A Survivorship. Hereinafter, the Plaintiff may keep an embodiment of attributable terms in relational-back powers to the residency of Articles of incorporation, the corporate power's of Presidency to enact a "By-Law" in order of stare decisid with this case of Crown Zallerbach Corporation v. Wirtz, 281 F.Supp. 337, at 347: " Order-upon motion of United Papermakers and Paperworkers, AFL-CIO, plaintiff in Civil Action 3151-67, to intervene in Civil Action 3150-67,Crown Zellerbach Corporation v. Wirtz and Sylvester, and it appearing to the Court that common questions of law and fact exist in the two cases, and there being no opposition by Crown Zellerbach Corporation and defenants to the motion to intervene, it is this 4th day of January, 1968, Ordered, that the motion to intervene be and is hereby granted." ("Wirtz, 281 F.Supp. 337 (347) (1968).

The Plaintiff may collectively endorse all executive terms in applicabilty to an enforcement of Local Rule 83.7(e), with all other definitions of injunctions that must be representative to Title 28 U.S.C. Section 1292, therein, the Plaintiff may reside a petitioner's order of civil procedure on the basis of clarified notices of power in an injunctive order, and the final stipulations of sub-section(e),Applicabilty of other rules:' The parties to any proceedings governed by this rule shall give the same notice of the filing of pleadings, records, and other documents as is required by Fed. R. Civ. P.5. ALL other provisions of the Federal Rules of Civil Procedure and rules of this court shall apply to such proceedings to the extent to which they are applicable. The provisions of this rule shall control over the provisions of any local rules in conflict.(As amended 3/04, 10/22/98. Renumbered 6/95.Formerly Rule 503).

which it obligated to pay in benefits."("Wirtz, 281 F.Supp. 337(1968).

The paintiff now may represent a necesszarty rule of vivil procedure to be the rfeflecticvee terms of controlling order to a demand imn petitinor's rights of a "prelimminary injunctrion, such as the entiltulemets of economic offerance, and trhe outcomes of a 'status-quo'inequitable reilief of all availasble remedies, at law, thecase of Wirtz, was justified, on trhthe close of a translation of trial actions , such as the following excerpts may represent: Crown Zellerbaxh and Paparmakers are entilted, as a matter of law, to a preliminary injunction enjoining defendants from directly nor indirectly debarring Crown from further buisiness with the Govermnr or Govermnment contractors by means of formal debarmewnt, temporary, temporary suspension, or otherwise, and from interfering with Crown's colloectrive bargaining agreement with Papermakrs, isuance of a consult memorandum, or any other similr device,prior to an administrative hearing in which he question of whether Crown is in compliance with Executive Order No. 11246 can be resolved. Pl,aintiff's have an adequate adminmistrative remedy under the procedures contemplated by the Executive Order 11246 and the contracts entered into by Crown." ("Wirtz, 281 F.Supp. 337 (341) (1968).

The Plaintiff may now define an answerable testimony for all pursuits of injuntive remedies, in which Wirtz may develop in arguments, for alegendary passge of stare decisis doctrine. Hereinafter, the Pliantiff circumstances for the duration of justified premises in aparent dispensation of jurisdictional issues, a decree on the following reports of Title 10 U.S.C are to be considered an entitlement:1). Title 41 U.S.C. Section 52, Definitins, 2).Title 10 U.S.C. Section 2773(a), Departmental Accountable Officials (P.L. 107-314, div. A, title X, sec. 1005(a), Dec. 2, 2002, 116 Stat. 2631; amended P.L. 109-163, div. A, title , Sec. 1656 (c,(8), Jan. 6. 2006, 119 Stat. 344(o), and 3).Title 10 U.S.C. Section 2721 Propery Records; maintenance on quantitative and monetary basis, (Aug.10, 1956, Ch. 1041, 70(A) Stat. 152, Section 2701; renumbered Section 2721, P.L. 99-499, Title II, Sec. 211(a)(1)(A), Oct. 17, 1986, 100 Stat. 7719, amended P.L.102-510, Div.A, title VII, Sec. 1322(a)(12),Nov. 5, 1990, 104 Stat.1671, P.L.102-1900, div A, title III, Sec. 347(b), title (x), Section 1061(a)(17)(A), Dec. 5, 1991, 105 Stat. 1347, 1473.). The Plaintiff so moves to endorse an injunctive relief on responsive time for an

(a). Construction (1), replacement of existing building s. When the Administration of General Services considers it to be in the best interest of the Federal Government to construct a new public building to take place of an existing public building, the Administrator my demolish the existing building and use the site on which it is located for the site of the proposed public building, f the Administrator believes that it is more advantageous to construct the public building on a different site in the same city, the Administrator may exchange the building and site, the site, for another site ,or may sell the building and site in accordance with the subtitle I of this tile and title III of he Federal Property and Administrative General Services Act of 1949 (41 U.S. C. Section 251 et seq. )" (Aug. 21, 2002, P.L. 107-217, Section 1, 116 Stat. 1159). The Plaintiff may confirm a jurisdictional issue for this In Re matter does intern to the qualifications of Adarand Constructors Inc v. Pena, 515 U.S. 200(1995),on the basis of actively making question to the verifiable sources of the Small Business Administration (SBA) were announced to a legal stipulation of worker's rights in Title 15 U.S.C. Section 8(a)(6)(A), or Title 10 U.S.C. Section 2304(B)(I) ,and Title 10 U.S.C. Section 2304b. Task order contracts: advisory and assistant services, in subsection C), as it may be stipulated: "(C. Content of Notice- the notice required by section 18 of the Office of Federal Procurement Policy Act (41 U,S.C. 416)and section 8(e) of the Small Business Act( 15 U.S.C. Section 637(e)) shall reasonably and fairly describe the general scope, magnitude , and duration of the proposed task order contract in a manner that would reasonably enable a potential offer, or to decide whether to request the solicitation and consider submitting an offer."(P.L103-355, title I, Section 1004(a)(1), Oct. 13, 1994, 108 Stat.3249; amended P.L 108-136,div.A.,title VIII, 843,Section 843 (b), Nov. 24, 2003, 117 Stat. 1553; P.L 108-375, div. A. ,title VIII, Section 813(a), Oct. 28, 2004, 118 Stat. 2014).The Plaintiff so may indicate that custody of protective shields to the Fifth Amendment privilege, in property rights, were implemented through attachments of statutory directives of the Small Business Administration (SBA), as the clinical sources of Adarand Constructors Inc. should import the codified scheme of Section 8(a) programs is availability of qualified owners of Government Bid Contracts in Title 10 U.S.C. Section 2304(B)(I), Task Order Contracts: " The Small Business Administration (SBA)has implemented these statutory

The Plaintiff so now requests an injunctive power be representative of injuction orders by the local District Court of Kansas, Eighth District, to concern an adherence unto all devised schedules of payments for "Government Sponsored Corporations" , the developed identity of business charters in articles of Title 5 U.S.C. Section 552, Title 10 U.S.C. Section 2304(B), Title 41 U.S.C. Section 48, Title 40 U.S.C. Section 1314,Easements, Title 10 U.S.C. Section 2773(a), Departmental Accountable Officials. Herein, the Plaintiff may call on injunctive relief for causation of denied payments in address to petitioner as the" said person" of recall to an accountability of authoritative bondsmen, designated military supervisor, chief engineering specialist, adjudant officer, and military power of attorney. Therefore, the Plaintiff so moves to intervene on a verification of payment scales to Title 10 U.S.C. Section 2773(a), Departmental Accountable Officials, by the administrative review of arrangement to Title 10 U.S.C. Section 2304(B), The Javits-Wagner-O'Day Act of Title 41 U.S.C. Sec. 48, and the classified tems of the concurring opinion of Adarand Constructors Inc. v. Pena, 515 U.S. 200,(1995), on notice in all "subcontracting compensation clauses" due to Sec 8(a) of Title 15 U.S.C. Section 637(a) also known as the S.B.A.(Small Business Administration). The Plaintiff so motions for court ordered injunction of all the Defendants' prior accounts with petitioner's Government Bid Corporation, and the company also known as the Wilson Personal Holding Company, P.C., 499109 N.E. Washington. D.C. 20304. Hereinafter, the Plaintiff so motions for a court ordered injunction to proceed with a cumulative status for notices of a pending corporate dissolution with petitioner's party, the corporate President, and the sole-proprietor of the business.

The Plaintiff may also lead on an injunctive standard for any inadvertent or negligent scheme of Defendant, the named party of the Executive Department, also regarded as the U.S. D.O.D.(Department of Defense); the petition may now request an injunctive status for an account of the case known as Crown Zallerbach Corporation v. Wirtz, 281 F. Supp. 337(1968). Hereinafter, the case of Wirtz was adjudged on the Defendant, on the basis of a claimant value within accountability to a jurisdiction with the Secretary of Labor, as follows: "Crown has sought to bargain in good faith to persuade the Papermakers and its local affiliates to agree to change the seniority system provided in the collective

clinical staff office picture, while employees being afforded "longer lunch breaks", and entry into his "office door without firstknowing ...[by] persons of non-color ...even "[t]he Staff in the Clinic [would] knock before entering," despite the fact that [t]he Staff in the Clinic [would] knock before entering a white person's office."(IBID, 284 F. Supp 1,(5) (2003).

The Plaintiff so moves for an administrative services judgment to confirm a procedural due process in address of local Rule 83.7(Review of Order), for the District Court of Kansas, Eighth District, and the classified determinations of a prepared report to execute a settlement agreement based on the case findings of Department of Army, as they may be verified in the following excerpt: "As a prelimenary matter, this Court is compelled to address the issue of whether or not it has subject matter jurisdiction and to take exception with the prior ruling on this subject that was made by the judge previously assigned to this matter, that this Court, and not the Court of Appeals for the Federal Circuit, has subject matter jurisdiction over plaintiff's complaint. Order file stamped November 28, 2000 ("Order") at 4. The prior order was issued in response to the federal defendant's previously filed motion to dismiss this matter for lack of jurisdiction and failure to state a claim, or alternatively, for summary judgment. The defendant made two arguments in support of a finding that this Court was without subject matter jurisdiction first, that this Court did not have jurisdiction to review actions taken by the MSPB under the Whistleblower [sic] Protection Act [, ] " and second, that this Court was "without jurisdiction over discrimination complaints that were settled at the administrative level." Id. (IBID, 284 F. Supp 1,(7) (2003).

The Plainiff may petition for a court order judgment to follow in this In Re case with an applied jurisdictional ruling on all agency related federal statutes in which the administrative policies should have determined a

laches for the proposal of a toll of limitations, to encumber a recitation of prejudicial bias most objectional by the hypthetical issues that were arisen in qualification of a integral measure of compelled facts to make receipt of an evidentiary report for the composite testimony of the original plead . Hereinafter, the Plainiff should be justified in a clinical holding to evaluate the juridictional question of the tolling statutes, such as they may be enlisted for a burden of presumption on claims for public rights, in compensation, and the attachment to a determinant interest for an adjudge of hypothetical tests on Title 5 U.S.C. 5595, The Federal Employee's Salary Act; wherever the amended complaint may adduce a clinical report is necessary to license the negligible standards of misconduct in labor relations management of federal services under Title 5 U.S.C Section 7301, comprehensively.

The Plaintiff may now represent on analysis of all jurisdictional issues in which a federal court did complete a holding of a favorable judgment in equitable relief of said petitoner, to announce the case of Department of Army , as it may be stated: "In holding that the Court had jurisdiction over plaintiff's complaint, the prior judge ruled that pursuant to 5 U.S.C Section 7703(b), this court has jurisdiction over mixed cases, I.e., cases in which "a plaintiff raises both discrimination and non-discrimination claims...." Id. The Court cocluded that this is a "mixed case" because the plan language of the settlement agreement incoporates plaintiff's retailatory and discrimination claims. Id. , at 5. Regarding the defedant 's second jurisdictional argument, the Court concluded that it had jurisdiction because it would not be "solely reviewing the validity of the settlement agreement, but rather [would]be reviewing the Administrative Judge's decision to accept the agreement." (IBID, 284 F. Supp 1,(8) (2003).

The Plaintiff may direct the local District Court of Kansas, Eighth District, to imperative all classified dispositions of the Court ruling, in Department

of Army, as the adjustment of justifying principles to regard a comprhensive formulae of adjudication methods, to encompass the guidelines of federal statues, which are representative of conclusory judments on a "In Re case". The extenuated factors of greivance for a completed tenure of appointment schedules to the command of adjudant offices of the U.S. Armed Forces/ U.S. Department of Army, in agreement of a U.S. Senate Ratification. Henceforth, the Plintiff has clearly stated a closure to the power of appointment in most cognizant relationship with governmental regulations of domain in signature of American Public Law, the dutiful manifest of canon doctine in Amerisjurisprudence is to behold a concerted testimony, in affidavit compilations of official memoranda. Furthermore, the Plaintiff may assert that the encumered facilities of heightened political security for all transpositions of arrayed data profiles should extend to the classifications of dosage profiles. Thereunto, the Plaintiff may suggest to the petitioners for an originating source of plead, in the cocerrn of In Re cases that a dutiful requisition of executive privilege is to extend upon all hypothetical testimony for an identity of personage; this decree is more exact to the confirmations of American Public Law and the relinquishment of obscure venerations led to the "hearsay exception" of the Federal Rules of Evidence.

The Plaintiff may now declare a presumptive test of cited decision on Title 5 U.S.C. is to be announced for the principle of equitable relief on a binding placement of standing in "ripeness doctrine", as the formulated qualifications of the case, in Department of Army, may project upon the final order of decision pursuant to the Civil Service Reform Act ,(Title 5 U.S.C Section 7303(b)(1), as follows in excerpt of decreed testimony: " Pursuant to the Civil Service Reform Act, ("CSRA"), 5 U.S.C. Section 1703 (b)(1) (2000)", "a petition to review a final order or decision of he [Merit System Protection] Board shall be filed in the United States Court Of Appeals for the Federal Circuirt." However, in cases invoving claims of

discrimination, the plaintiff is entitled to de novo review in federal disctrict. See 5 U.S.C. Section 7703(b)(2). Thus while section 7703 (b)(1) gives the Federal Circuit jurisdiction over final decisions of the MSPB, pursuant to section 7703(b)(2), a district Court has jurisdiction over "[C] ases of jurisdiction subject to the provisions of sections 7702..." Id.; see also Powell v. Dep't of Defense, 158 F. 3d 598, (D.C. Cir. 1988). For plaintiff's case to be entitled to judicial review by district Court judge he "must satisfy two requirements. First, he must have been 'affected by an action which the employee ...may appeal to the [MSPB] ", Powell, 15 F.3d at 598 (quoting 5 U.S.C. Section 7702(a)(1)(A)"Second, the employee must allege 'that a basis for the action was discrimination prohibited by-(I) section717 of the Civil Rights of 1964...'" Id. (quoting 5 U.S.C. Section 7702(a)(1)(B)." (IBID, 284 F. Supp 1,(8) (2003).

The Plaintiff may state, a directive for administrative relief from the guidelines of the MSPB, (Merit System Protection Board) did not occur, in this particular, and the considerations for a judicial review of the Federal Pay Salary Act, Section 5995, and the supplemental testimony on the Pay-Back Administration, with the compensational packages through Title 5 U.S.C. Section 5595, The Federal Employee's Salary Act.

Henceforth, the Plaintiff may concern a direct question of the case for Horn, were it may designate to the reviewability of administrative claims for the MSPB, (Merit System Protection Board), and he confirmed opinion on development of administrative procedures to be engaged by Plaintiff, as it may be stated: "rejecting Ballentine and holding that employee could seek review of his discrimination claims in the district court, despite the fact that the MSPB had dissmissed plaintiff 's appeal because it was untimely and had not reached the merits of his discrimination claims). Thus, in this case, because the MSPB never issued a ruling on the merits of plaintiff's discrimination claims, this Court would conclude , if the jurisdictional question was before it on a clean state, that the Federal

Circuit and not this Court, has proper jurisdiction over plaintiff's complaint." (IBID, 284 F. Supp 1,(9) (2003).

The Plaintiff may interpret a jurisdictional issue of complaint situation under the adopted decision of the "law of the case doctrine", as it may be interpreted by the case, Department of Army, based on the applied doctrine in the following excerpt of quotation: "However, this Court will not dismiss this matter for lack of subject matter jurisdiction for several reasons. This decision is primarily based on the law of case doctrine, which provides that "the same issue presented a second time in the same case in the same court should lead to the same result." La Shawn A. v. Barry,87 F.3d 1389,1393 (D.C. Cir. 1996) (emphasis in original). This doctrine is applicable "as much to decisions of a coordinate court's owm decisions." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800,816 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)(citation omitted)."( IBID, 284 F. Supp 1,(7) (2003).

The Plaintiff may approach a decisive implication of subject matter jurisdiction as it were to follow all allocated terms of federal statutes,to make a claimant in the local District Court of Kansas, Eighth District, the certifiable terms of the 'law of the case doctrine" making an interpretive report for stare decisis in culminating report for the following decision of the Court, in Department of Army and Lashawn A. : "Clearly, the prior ruling in this case concluded that this court is vested with subject matter jurisdiction because plaintiff's claim Costitutes a "mixed cases", one involving claims of discrimination and non-discrimination. While this principle must be followed by the district court when an appellate Court has ruled on a matter of law in the case [ ,] ...[ I] t is discretionary ... for a court that is considering whether to revisit its own prior decisions in the same case." Harris v Key Bank Nat'L Ass'n 193 F.Supp 2d 707, 711 ( W.D.NY. 2002). Thus, in the second category of cases," the application of the law-of -case -doctrine" does not limit a court's power to recognize

its own decisions prior to final judgment." Id. (Citations omitted)." (IBID, 284 F. Supp 1,(8) (2003).

The Plaintiff may contend for a selected terms of formal judgment in the subject matter jurisdicion of qualified report to the case of In Re Wilson. A participatory report is associative with an adjustment of argumentative views to coincide introjections of determinant issues for allocated claims of In Re Wilson that do extend to settlement agreement, such as the corporate dissolution of a sole-proprietorship under state statutes, and the calculations for adjusted gross income, or F.I.C.A. (Federal Income Contributions) to be defined as the critical segment of the entitlement of Title 5 U.S.C. Section 551, Lump-Sum Payments; Title 5 U.S.C. 5595, The Federal Employee's Salary Act; and Title 5 U.S.C. 5995, The Federal Pay Salary Act. Therein, The Plaintiff has introduced a developed formulae of composed judicial issues to the arrangement of settlements for a case on Title 5 U.S.C. Section 5507, Affidavits of Officers, and the approximate declimation of any further interpretation of Title 5 U.S.C. Section 6369, The Establishment of leave bank programs, or the exceptions to qualify for "leave bank" under Title 5 U.S.C. Section 6361, The Head of Departments in Exceptions of Leave Bank.

The Plaintiff has duly noted an EEOE request is aligned with a "choice of law", for a commited interest to be applied, in doctrine, for such averments in which a totalistic value of retribution is a fortunate hyperextension of the original plead, to enclose the derivative suits of negligence in Title 28 U.S.C. Section 1343, Deprivation of Rights; Title 28 U.S.C. Section 1346, U.S. Government as Defendant; Title 28 U.S.C. Section 1349; and Title 5 U.S.C. Section 5551, Lump-Sum Payments; Title 5 U.S.C. 5595, The Federal Employee's Salary Act; Title 5 U.S.C. 5995, The Federal Pay Salary Act; Title 5 U.S.C. Section 5301, Policy; Title 5 U.S.C. Section 6658, The Equal Pay Act or "Back Pay"; Title 5 U.S.C. Section 6339, Additional Leave transfer programs; Title 5 U.S.C. Section

6323, Military leave; Reserve and National Guardsmen; Title 5 U.S.C.
Section 6304, Annual leave accumulation; Title 5 U.S.C. Section 8102,
Compensation for disability or death of employee, Title 42 U.S.C. Section
1701 A, The Defense Base Act, Title 42 U.S.C. Section 1983, actual
damages and punitive damages against the U.S. Government for
negligence in an involuntary separation from the Directorship of the
Defense Intelligence Agency and the U.S. D.O.D (Department of Defense).
The Plaintiff may now exert standing on all averments and policies in
which the local Rule 56.1 Motions for Summary Judgment would extend
to an adjusted clausal terms of final judgment of In Re Wilson, for a
dispensation and the assigned receivorship of the "estate and trust" to
the Plaintiff, and with the committed proposal to the Defendant, U.S.
Government, on the basis of the established grounds for the equitable
relief on compensation rights in Title 5 U.S.C. Governmental
Organizations and Employees, according to the following standards of
benchmark judicial ruling in the case of Horn v. United States Department
of Army, 28 F. Supp. , 284 F. Supp. 1 (2003); the committed statements
of stare decisis should predict in favor of compensatory awards for In Re
Wilson, as follows: "See , e.g. Harms v. Internal Revenue Service, 321 F.
3d. 1001,1008 (10th Cir. 2003), ( "A decision need not be reached by the
MSPB on the merits of the discrimination issue, however, for the appeal to
constitute a "case of discrimination". 5 U.S.C. Section 7702 (a)(1). This is
clear from the statutory language in Section 7702(a)(1)(B) which specifies
only that the employee must allege that a basis for the action was
unlawful discrimination for the appeal to fall under Section 7702 (a)(1)."
(IBID, 284 F. Supp 1,(9) (2003).

The Plaintiff may address a judicial decision of Department of Army, on
the proposed terms of a preliminary issue in adjudication for the outer-
sources of administrative courts and the adjunct hearings of American
Public Law, most ostensibly, a classified opinion on the guidance of

Christienson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) for a declaration of the merits in claim of subject matter jurisdiction invested to federal courts on demands of hearing vindicated issues from a venue of MSPB appeal.

The Plaintiff so contends for all oath of sworn testimony to bring forth an emergence of codified issues that are a dispensation of "settlement agreements", for the duration of examinable tenets of Title 28 U.S.C. Judiciary and Judicial Procedures, and the debrief of exact matters within the legal threshold of an especial case of U.S. reporter known as Office of Senator Mark Dayton v. Hanson, 550 U.S. 511 (2007). Henceforth, the Plaintiff may contend for an interpretative model of Section 412 of the Act, 2 U.S.C. Section 1412, the Congressional Accountability Act of 1945(Act), 109 Stat. 3, as amended, 2 U.S.C. Section1301 (2000ed. and Supplement IV), to reside on the formal inquiry of balancing questions for a decisive matter of depositional phases, in the preliminary motions of discovery order, and the affirmative presentation of Title 10 U.S.C. Section 3034, Vice-Chief of Staff, to the commands of a verification period before this tribunal of the; local District Court of Kansas, Eighth District. The Plaintiff so moves for an elicited terms of subject matter jurisdiction, to reside under direct examination of Constitutional powers in Article I, Section 6, Clause 1, as it may be concerned in the following decree: " For any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." (Footnote 2: Hanson, 550 U.S. 511(2007).

The Plaintiff so contends for a decision of Court order, in the case of Hanson, to provide a responsive set of delineated questions for the character of oath and sworn testimony to be deposed, by petitioner, on the grounds of Title 28 U.S.C. Section 1733, Government Records and Papers , Copies, Title 28 U.S.C. Section 1736, Congressional Journals, Title 28 U.S.C. Section 1737, Copy of Officer's Bond; Title 28 U.S.C.

Section 1732, Record Made In Regular Course of Business; Photographic Copies; Title 28 U.S.C. Section 1731, HandWriting; Title 28 U.S.C. Section 1692, Process and Orders Affecting Property In Different Districts; Title 28 U.S.C. Section 1657, Priority of Civil Actions, and Title 28 U.S.C. Section 1715, Notifications To Appropriate Federal And State Officials, for the consigned nature of preliminary motions that may assist upon a curtailing evidence of justified issues from within all incidental terms of "consents of the Senate", to the vast nomenclature of Ratified offices, according to "Presentment" of a consent in the Senate, and the case of Title 28 U.S.C. Section 3034, Vice-Chief of Staff.

The Plaintiff may determine a committed interest within an efficacy for the denoted Constitutional powers of Article I, Section 6, Clause 1, on the legendary promotion of Hanson, to an acclaim of questions that may enlist a court inquiry for surmountable tasks of initialized phases of duty, in members of the U.S. Senate to confirm a political testimony in behalf of petitioner; the applied request of such a legendary place of constitutionality are posited on the following question of Hanson: "Under Section 412 of the Act, direct review in this Court is available" from any interlocutory or final judgment, decree, or order of a court upon the Constitutionality of any provision" of the statute. Neither the order of the District Court denying appellant's motion to dismiss nor the judgment of the Court of Appeals that order can fairly be characterized as a ruling "upon the constitutionality" of any provision of the Act. The District Court's minute order denying the motion to dismiss nor the judgment of the Court of Appeals affirming that order can fairly be characterized as a ruling "upon the constitutionality of any provision of the Act. The District Court's minute order denying the motion to dismiss does not state any grounds for decision. App,. to Juris Statement 59a. Both parties agree that order cannot therefore, be characterized as a constitutional holding." (Hanson, 550 U. S. 511, (513) (2007).

The Plaintiff so maintains a Court slated opinion on all contravened issues of the "Speech or Debate Clause, Article I, Section 6, Clause 1, for a derived element of subject matter jurisdiction that may be promoted to this In Re case, by the claims of discovery motions in FRCP(Federal Rules of Civil Procedure), Rule 30, Depositions; the abided segment of conditional responses to be offered in an official selection of U.S. Senators for the acceptable claims in all avenues of declaratory law, such as the Court, Hanson, may enlist an appointed standard of the Judiciary Branch, to aide of accommodated witness in pronouncement of the "separation of powers". The latitude of all maintained oath and affirmations of said members of the current U.S. Senate may be officially ruled upon by a degree of right in the "Debate and Speech Clause", as well as the enhancement of an origin to all assigned immunities in empowerment of the decision from the Judiciary Branch and the context of Hanson, as it may be stated: " The Court of Appeals' opinion rejects appellant's argument that forcing Senator Dayton to defend against the allegations in this case would necessarily contravene the Speech or Debate Clause, although it leaves open the possibility that the Speech or Debate Clause may limit the scope of the proceedings in some respects. Neither of those holdings qualifies as a ruling on the validity of the Act itself." (IBID, 550 U.S. 511 ( 513–514) (20007).

The Plaintiff so asserts a command of duty status for a regulatory speech to eminate from the annals of the U.S. Senate, in commemoration of a documented period of Ratification, as it was assigned to the sworn minutes of the 95th Congress of the United States, Second session, upon the demands of a declared premise of a constitutional limits to the so-called Recess Appointment. Hereunto, the Plaintiff may proclaim the official date of Ratification was announced to May 10, 1978, thus, the petitioner so regards all developed business of the joint resolution votes, to be called into the adherence of Title 28 U.S.C. Section 1732, Record

Made In Regular Course of Business; Photographic Copies, for the proposed charge of notice to the culminating view of all announcements in the "Debate and Speech Clause", and Title 28 U.S.C. Section 1736, The Congressional Journals do confer on the local District Court of Kansas, Eighth District: " If any business, institution member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing entry, print, representation or combination thereof, or any act, transaction, occurrence, or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic, or other process which accurately reproduces of forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law. Such reproduction, when satisfactorily identified, is as admissible in evidence if the original reproduction is in existence and available for inspection under the direction of court. The introduction of a reproduced record, enlargement, or fascimile does not preclude admission of the original. This subsection shall not be construed to exclude from evidence any document or copy thereof which is otherwise admissible under the rules of evidence." (June 23, 1948, c.646, 62 Stat. 945; Aug. 28, 1951, c. 351, Sections 1, 3, 65 Stat. 205, 206; Aug. 30, 1961, P.L. 87-183, 75 Stat. 413, Jan. 2, 1975, P.L 93-595, Section 2(b), 88 Stat. 1949).

The Plaintiff may concern a substantial ruling of the Court opinion, in Hanson, to consign a discernible realm of constitutionality upon all obligations in Title 28 U.S.C. , from which an appeal of the Judiciary may embark a credible legend of evidentiary forums, in the happenstance of ascertainable goals for mediated terms of presumptive requirements to consecrate in oath of sworn Congressional officials, as it may be now

rectified to the claims of equitable relief, are now within a qualified parameter to invocate upon the domain of the "Debate and Speech Clause", in formulated principle: "The Office argues that the Court of Appeals' holding amounts to a ruling that the Act is Constitutional' as applied." According to the Office, on "as applied " Constitutional holding of that sort satisfies the jurisdictional requirements of Section 412. We find this reading difficult to reconcile with the statutory scheme. Section 413 of the Act provides that: " [t] he authorization to bring forth judicial proceedings under [the Act] shall not constitute or waiver of sovereign immunity for any other purpose, or the privilege of any Senate or Member of the House of Representatives under [the Speech or Debate Clause] of the Constitution." 2 U.S.C. Section 1413. (Hanson, 550 U.S. 511 (513–514)(2008).

The Plaintiff may address a qualified recount of court ordered interpretations of the recount of the Congressional Accountability Act of 1945(Act), 109 Stat. 3, as amended, 2 U.S.C. Section 1301 for all prospective interests of a petitioner's request to advise on the consequential facets of litigation under a surmise of duties in a derived justiciable value of procedural due process, and the compliant realms of "intent" within the Act; a predicative view of oath in sworn testimony of Congressional members now made paramount to the open forum of stare decisis for Hanson, as follows: "The provision demonstrates that Congress did not intend the Act to be interpreted to permit suites that would otherwise be prohibited under the Speech or Debate Clause. Consequently, a Court's determination that jurisdiction attaches despite claim or Speech or Debate Clause. Consequently, a Court's determination that jurisdiction attaches despite a claim of Speech or Debate Clause immunity is best reach as a ruling on the scope of the Act, not its Constitutionality. This reading is faithful, moreover, to our established practice of interpreting statutes to avoid constitutional difficulties."

(Hanson, 550 U.S. 511 (514) (2007).

The Plaintiff so motions for an evaluation of apparent commands, in Hanson, for a detailed interpretation of a promoted status in this In Re matter to the dispensation under Title 28 U.S.C. Section 1657, Priority of Civil actions, and the calculated indicators of a purposeful intent to manifest on adjourned insight to the burden of allocated duty for all imperative statements from Congressional members to official and parlay, in respective tacit of the amulgamated questions of reserved tenure within an Executive Department, or the vital interest of speculation for the official status under the jurisdiction of a "Head of Agency", the foray of accomplished legal titles ensign to the Plaintiff's status in Governmental office are announced to Title 10 U.S.C. Section 3034, Vice-Chief of Staff  within objective to maintain all balances of the "power of appointment", to the legal restraints of the Constitutional domain entailed to the meaning of a "Consent in Senate" clause. Henceforth, the Plaintiff's distinguished Honorability for the apparent doctrines of the leading case of  Myers v. U.S., 270 U.S. 255, (1926) would impart to the local District Court of Kansas, Eighth District, the exhibit of a salute in an institutional tradition for the presentation of formal judgment in favor of the petitioner.

The Plaintiff may now delegate authority in a proficient technical response for an inherent restatement of a bicameral question of the purpose in the invoking principles of the Congressional Accountability Act of 1945. Hereinafter, the Plaintiff may designate to the opinion of judicial review a probative question of legal responsiveness to the duty status of Article I, Clause 6, Section 1, in order to call the U.S. Senators to the duration of effective subpoena testimony that would render a burden of presumptive relief; a provision of interpreted matters of the "power of Appointment" are now presented to the claims of Executive Privilege, as proceeds: "The provision for appellate review is best understood as

responding to a congressional concern that if a provision of the statute is declared invalid there is an interest in prompt adjudication by this Court. To extend that review to instances in which the statute itself has not been called into question, giving litigants under the Act preference over litigants in other cases holding that "statutes authorizing appeals are to be strictly construed." (Hanson, 550 U.S. 511 (515) (2007).

The Plaintiff's so now moves to give a closure to applied standards of reciprocity, in courts of original jurisdiction to Title 28 U.S.C. Section, 1251, Original Jurisdiction, and the appurtenant command of priority of original jurisdiction of judgments now cited as reviewable for the local Rules of Kansas District Court, Eighth District, the announcement of Title 28 US.C. Sec.636(a) to admit the participant values of the In Re matter, before a conditional element of formal subpoena of Congressional Members of the U.S. Senate, in lieu of entitled offices , and the conservatory of ethics in government, to ascertain a balance of posited terms for an efficient management of procedure due process. Hereinafter, the Plaintiff may set forth a deposition form in accordance to FRCP (Federal Rules of Civil Procedure),Rule 30, Depositions, Title 28 U.S.C. Section 1736, Congressional Records, and the following stipulations of the Congressional Accountability Act of 1945,or (Act) so enumerated upon in determinant issues of Office of Senate Mark Dyson V. Hanson, 550 U.S. 511, (2007), at 515: "Nor are there special circumstances that justify the exercise of our discretionary certiorari jurisdiction, to review the Court of Appeals' affirmative of the interlocutory order entered by the District Court. Having abandoned its decision in Browning v. Clerk, U.S. House of Representatives, 719 F. 2d 923 (1986), the D.C. Circuit is no longer in obvious conflict the personnel decisions of Members of Congress. Compare 459 F.3d 1(case below) with Bostien v. Office of Sen. Ben Nighthorse Campbell, 390 F. 3d 1301(CA 10 2004)." Accordingly , the appeal is dismissed for want of jurisdiction, and

certiorari is denied. We express no opinion on the merits, nor do we decide whether this action became want upon the expiration of Senator Dayton's term in office. It is so ordered."(Hanson, 550 U.S. 511 (515) (2007).

The Plaintiff so follows in a clearance of constitutional testimony represented to a critical segment of a means, in Government, to access an itemization of leadership protocols from which an instilled method of public trust my have concerted an effort to assemble the Congressional Members within an higher opinion of utilitarian values for a buttress of commonplace ethical goals to exert a likeness to the critical mass of subject matter that may instill a consecrated judgment upon a veracity of obligated mediums of our question to imbide within the culminating terminology of reformist treatment of plenary views for a cognizant domain of facilitated interpretations of the "separation of powers" that were demarked within a committed entry of the case Office of Senator Mark Dayton v. Hanson, 550 U.S. 511 ,(2007) for the above board and breadth of intermittent realism to debut a selected treatise on the "Debate and Speech Clause" of Article I, Clause 6, Section 1 of the U.S. Constitution, in culminating opinion of demand for the (Act) of Congressional Accountability Act of 1945, 109 Stat. 3, 2 U.S.C. Section 1301, (2000 ed. and Supp. IV).

The Plaintiff so request a cognizant terms off oath in sworn testimony of public trust, to abide in conference with the constitutional holding on the case of Hanson, and the acclamation of formal interest in legal matters of Court initiated subpoena power now relegated upon Congressional Members of selected office for a compelling interest in a timely and certified published testimony to verify a command in duty of "ratification powers" of the U.S. Senate for an entitlement to Title 10 U.S.C. Section 3034, Vice-Chief of Staff. Hereinafter, the formal subpoena is to be represented to the Congressional member of the following seat of the

U.S. Senate: The Honorable Senator Patrick Leahy, Committee on the Judiciary, Chair, 224 Dirksen Senate Office Building, Washington, D.C. 20510.

The Plaintiff so motions for a legal opinion on Title 28 U.S.C. Section 1736, Congressional Journals and Records, to be enforced by Court order of Local Rules, 30.1 Notice of Depositions, (formerly Rule 210(b), Rule 30.3, Time For Taking Depositions (formerly Rule 35.1), Rule 32.1, Use of Discovery At Trial( formerly Rule 210(I)), and Rule 37.1. Motions Relating To Discovery, (Renumbered, 6/95, Formerly Rule 210(f)), and the formal intent of Rule 45, Subpoena, under subsection(b)(2) Issued from which Court: "A subpoena must issue as follows: (A) for attendance at a hearing or trial, form the Court for the district where the hearing or trial, from the Court for the district where the hearing or trial is to held; (B). for attendance at a deposition, from the Court of the district where the deposition is to be taken; and C). for production or inspection, if separate from or subpoena commanding a person's attendance, from the court for the district where the production where the production or inspection is to be made."

The Plaintiff therein so balances a clausal relationship on extended review of dated executive order, to a classified profile for all archive retrieval of formal intercourse with the U.S. Army General Offices of N.A.O. (North American Operations) and the rights of petitioner to have completed all achievements of longitudinal studies and official records on the combat preparedness of the U.S. Armed Forces/U.S. Army prior to January 1981. Therefore, the Plaintiff may call upon a briefing stage of the legendary case on the demands of timelines, in development of Presidential Reports in the stare decisis of Cheney v. United States District Court For D.C., 542 U.S. 367 (2004).   In the following case an opening hearing on all constitutional requirements of U.S. Governmental officials to abide in directives of disclosures rules that announce a duty in American Public

Law, and the reorchestrated events of canon doctrine for a reversionary task of Presidential designated executive orders for standing committees, such as the N.E.P.G.(National Energy Policy Development Group) to maintain a discourse of authorized media sources within a public relations of the granting privileges of the F.A.C.A. (Federal Advisory Committee Act), Title 5 U.S.C. Appendix Sec. 2, p. 1, and the requirements to comply with procedural and disclosure requests in the Vice-President and nominated officials to the standing committee. The Plaintiff may request a consolidated disposition on all invoking principles that were constitutionally upheld by the U.S. Supreme Court under the execution of the writ of certiorari, to apply in demand of disclosure rules for implementation of FRCP(Federal Rules of Civil Procedure), Rule 34, Production of Documents, and the lists of governmental records, from which a heralded implication on the relevancy of justified rules for a beneficial regard of the case In Re Wilson. Hereinafter, the cause of petitions may proceed on a question of transactions for a procured treatment of comprehensive task for, Presidential Records; the deliverance of an engaging principle for procedural due process was defined for an implementation policy under the advisory reports of an executive prerogative, as the following statements of United States District Court For D.C., may represent : "FACA was enacted to monitor the "numerous committees, boards, commissions, councils, and similar groups [that] have been established to advise officers and agencies in the executive branch of the Federal Government", Section 2(a), and to prevent the "wasteful expenditure of public funds" that may result from their proliferation, Public Citizen v. Department of Justice, 491 U.S. 440, 453(1989). Subject to specific exemptions, FACA imposes a variety of open meeting and disclosure requirements on groups that meet the definition of an "advisory committee". As relevant here, an "advisory committee" means "any

committee, board, commissions, council, conference, panel, task force, or other premplar group, or any subcommittee or other subgroup thereof....which is -(B) established or utilized by the President ...except that [definition] excludes (I) any committee that is composed wholly of full-time, or permanent part-time, officers or employees of Federal Government..." Title 5 U.S.C. App. Section 3(2), p.2 . "United States District Court For D.C. , 542 U.S. 367 (373) (2004).

The Plaintiff may now evaluate a distinct opinion on procedural due process of "executive privilege" in the Fifth Amendment, as the display of outstanding presumptions in which a culminating preposition of judicial writ were prioritized unto the claimant of petitioners in the writ of mandamus, and the abatement of a divided panel of the Court of Appeals in accredited judgments of the interlocutory motion of In Re Cheney, 334 F. 3d. 1096 (CADC 2003), a derived opinion of alternative relief for petitioners was provided in cumulative recitation of stare decisis, as it may be read: "under its reading of Nixon , moreover, privilege claims must be made "with particularly". 334 F. 3d., at 1104. In the majority's view, if the District Court rejects the claim of executive privilege and creates "an imminent risk of disclosure of allegedly protected presidential communicators", mandamus might well be appropriate to avoid letting 'the cat out of the bag'" Id., at 1104-1105." But so long as the separation of powers conflict that petitioners anticipate remains hypothetical," the panel held, "We have no authority to exercise the extraordinary remedy of mandamus. Id. at 1105." United States District Court For D.C. , 542 U.S. 367 (376) (2004).

The Plaintiff so requests for a determinable order of chronological terms to partition a veil of the authority in which a governmental shield for the indications of delay, unto an admissible guideline of evidence and relevancy may portend to be forthcoming an objective view of duty in federal statutes is a distinguishing element of petitioner's classified

subjects for an advisory goal within local Rule 66.1(3), Administrative Judgments, and the governing latitude of hearing presumptions for a declaration of writs in procedural due process of law, as it may connoted by the following statements of United States District Court For D.C. : " As the writs is one of the "most patent weapons in the judicial arsenal," Id. , at 107, three conditions must be satisfied before it may issue. Kerr v. United States District Court for Northern Dist. of Cal., 426 U.S. 394, 403 (1976). First," the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires, "ibib. -a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process, Fahey, supra, at 260. Second, the petition must satisfy "burden of showing that [his] right to issuance of the writ is "clear and indisputable." " Kerr, supra, at 403(quoting Bankers Life & Causality Co., supra, at 384). Third, even if the first two prerequisites have been met, the issuing Court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. Kerr, supra, 403(quoting Bankers Life & Casuality Co., supra ,at 384). Third, even if the first two prerequisites have been met, the issuing Court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. Kerr, supra, 403 (citing Schlagehauf v. Holder,379 U.S. 104,112, n. 8 (1964). These hurdles, however demanding, are not insuperable. This Court has issued the writ to restrain a lower Court when its actions would threaten the separation of powers by "embarrassing the executive arm of the Government," Ex parte Peru, 318 U.S. 578, 588 (1943), or result in the "intrusion by the federal judiciary on a delicated area of federal-state relations," Will, supra, at 95(citing Maryland v. Saper (No. 1), 270 U.S. 9 (1926). (IBID, 542 U.S. 367 (381) (2004).

The Plaintiff may amendment a character owed to the discretionary power of P.L. 95-591, 92 Stat. 2525, wherein, the onclave standard of Title 44

U.S.C. Section 2202. Ownership of Presidential Records is a correlative typology of administrative prudence in this following statements: "The United States shall reserve and retain complete ownership, possession , and control of Presidential records, and such records shall be administered in accordance with the provisions, and such records shall be administered in accordance with the provisions of this chapter."(P.L. 95-591, 92 Stat. 2523, Nov. 4, 1978).

The Plaintiff may contend for a an advisory role of stare decisis to be forthcoming, to all predicate relationships of executive privilege of executive privilege, under the exegesis of formal stipulations in procedural due process for modern courts, and the gravity of an upheld constitutional requirement to authorize disclosure rules on information of public papers from the commands of the U.S. President were absolved in ethical frameworks of federal service and the findings of the U.S. Supreme Court in United States District Court For D.C. ,as it may be quoted: " Here, however, the Vice President and his comembers on the NEPG are the subjects of the discovery orders. The mandamus petition alleges that the orders threaten "substantial intrusions on the process by which those in closest operational proximity to the President advise the President." App. 343. These facts and allegations remove this case from the category of ordinary discover orders where interlocutory appellate review is unavailable, through mandamus or otherwise. It is well established that "a President's Communications and activities encompass a vastly wider range of sensitive material than would be true of any 'ordinary individual". United States v. Nixon, 418 U.S., at 715. (IBID, 542 U.S. 367 (381) (2004).

The Plaintiff may now address more extensive relations on the intercourse with P.L. 95-591, 92 Stat. 2527, Title 44 U.S.C. Section 2202. Ownership of Presidential Records, to govern in accordance with the goals of a mediated source in renewal of stare decisis, for the emphatic

suggestive of adjudged issues on mandatory terms, in which a prerogative for the administrative guidance of F.A.C.A. (Federal Advisory Committee Act), Title 5 U.S.C. Appendix Sec. 2, p. 1. is applicable to a more recent status to obligate a constitutional remedy; this statement is now enlisted in permissible responses to an impinged judicial ruling on the ethics in procedural due process, as the Chief Justice Marshall (was cited in United States District Court For D.C. : " Chief Justice Marshall, sitting as a trial judge, recognized the unique position of the Executive Brach when he stated that " in no case...would a court be required to proceed against an ordinary individual." United States v. Burr, 25 F. Cas. 187, 192 (No. 14, 6940 (CC Va. 1807). See also Clinton v. Jones, 520 U.S. 681,698-699 (1997)("We have, in short, long recognized the Constitutional scheme' that [the Office of the President] occupies" (quoting Nixon v. Fitzgerald, 457 U.S. 731 749 (1982)); 520 U.S. at 710-724 (Breyer, J. concurring judgment. As United States v. Nixon explained, these principles do not mean that the "President is above the law." 418 U.S., 715. Rather, they simply acknowledge that the public interest requires that a coequality, the greatest protection consistent with the fair administration of justice", ibib., and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." (IBID, 542 U.S. 367 (381) (2004).

The Plaintiff may now request for local District Court of Kansas, Eighth District, to adjourn upon the ethical imperatives within claims of an official decree in proclamation of direct exegesis to arbitrate over the "principles of ethical conduct for government officers and employees" under Executive Order. No. 12371, Oct. 17, 1990, 55 F.R. 42547, as it may be read to the bench of the federal district court: "By virtue of the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to establish fair and exacting

standards of ethical conduct for all executive branch employees, it is hereby ordered as follows: Section 101. Principles of Ethical Conduct- To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each Federal employee shall respect and adhere to the fundamental principles of the ethical service as implemented in regulations promulgated under sections 201 and 301 of this order; (a) Public service is a public trust requiring employees to place loyalty to the Constitution , the laws, and ethical principles above private gain. (b) Employees shall not hold financial interest that conflict with the conscientious performance of duty.(C. Employee shall not engage in financial transaction using on public Government information or allow the improper use of such information to further any private interest. (d). An employee shall not, except pursuant to such reasonable exceptions as are provided by regulation, solicit, or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employees agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties."(Title 5 U.S.C. Section 7301, Ex. Ord. No. 12731, Oct. 17, 1990, 55 F.R. 42547). The Plaintiff so moves to entrance an enumerated number of interrogatory questions under a discovery order of FRCP(Federal Rules of Civil Procedure),Rule 26, Discovery Orders. Herein, the Plaintiff may pursuit an acknowledged development of ethical opinions for assigned members of the bureaucracy of the Defendant, U.S. Government, in the Executive Branch, and the liason to all accomplished benchmarks of Executive Ord. No. 12371, in which a codified extension of legal parameters may purview upon a constraint in objectives of petitioner's labor in federal service, the objectives of a well recognized to the U.S. Supreme Court for an appointment ratification of lifetime tenure in public office of a U.S. Army General. Henceforth, the Plaintiff may obligate a

constitutional requirement in the determination of judicial records to the finish of formal statutes, executive orders, public papers, emblems, picture, books of records, memoirs, financial statements, identification cards, and the official names in utilization with the Social Security Number. Therefore, the Plaintiff may compare a balancing test for constitutional requirements in the case of United States District Court For D.C., with an apparent cadre of litmus tests to lesson for the compliance schedules of an ethical framework in the active internment of Executive Ord. No. 12371.

The Plaintiff may enter a designated resolution of the Court in United States District Court For D.C., as the clinical evaluation in assigned holding of legal theorem, to make an absolute reside of deferment in equitable relief, a plausible testimony within a contractual manifest of the following requirements: "The separations-of-power considerations should inform a court of appeals' evaluation of a mandamus petition involving the President or the Vice President. Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." (United States District Court For D.C., 542 U.S. 367 (382) (2004).

The Plaintiff may actively report on an ethical practice of civil litigation, in concern with ethics, and the apparent retrieval of subpoena power in al conducive methods of arbitrated means to exercise the hierarchial management typologies with an arrangement of judicial writs, from which a transmuttable view of participatory government is asserted to the commands of favorable petitions in Title 28 U.S.C. Judiciary and Judicial Procedures, and Title 5 U.S.C. Section 7132, Subpenas: "(a) Any member of the Authority, the General Counsel, or the Panel, any administrative law judge appointed by the Authority under section 3105 of this title, and any employee of the Authority designated by the Authority may -(1) issue

subpenas requiring the attendance and testimony of witnesses and the production of documentary or other evidence from any place in the United States; and (2) administer oaths, take or order the taking depositions, order responses to written interrogatories, examine witnesses, and receive evidence. No subpena shall be issued under this section which requires the disclosure of intra-management guidance, advice, counsel, or training within an agency or between an agency and the Office of Personnel Management.(b) In the case of contumacy or failure to obey a subpena issued under subsection (a)(1) if this section, the United States district court for the judicial district in which the person to whom the subpena is addressed resides or is served may issue an order requiring such person to appear at any designated place to testify or to produce documentary or other evidence. Any failure to obey the order of the Court may be punished by the Court as a contempt thereof. C) Witnesses (whether appearing voluntarily or under subpena) shall be paid the same fee and mileage allowances which are paid subpena witnesses in the courts of the United States."(Added P.L. 95-454, Title VII, Section 701, Oct. 13, 1978, 92 Stat. 1214).

The Plaintiff may apparently specify a durational task of the subpoena order is now rectified to an authorized language of Title 5 U.S.C. Section 7132, Subpenas, so the familiar prospects of arbitrations for an assigned counsel in the Government Ethics Committee would designate a legitimate provision of political resolutions for a public service. Hereinafter, the Plaintiff so commits a full opinion for an obligation of Defendant, to formulate a respondent answer to a continuum of legal theories from which a clarified proposal of declassifications, recognitions, and the clarified domain of efficient terms of an authorization status for military clearances would presuppose a characterization of the nominated Presidential Administrations to be said in this original plead, solely, in requirements of accomplished tasks of Title 5 U.S.C. Governmental

Organizations and Employees. Hereinafter, the Plaintiff may discourse within a preparatory conduct of subpena authority were the conceptualization of maintaining a formal presumption to end a respite of delay in all codified matters of "hearsay rule exception" would engender a caveat of all responsiveness to the relevancy of balancing questions for a judicial opinion, as it may be stated in United States District Court For D.C.: "The distinction Nixon drew between clinical and civil proceedings is not just a matter of formalism. As the court explained, the need for information in the criminal context is much weightier because "our historical commitment to the rule of law ...is nowhere more profoundly manifest than in our view that 'the twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer." Id., at 708-709 9 quoting Berger v. United States, 295 U.S. 78,88(1935). In light of the "fundamental" and "comprehensive" need for "every man's evidence" in the criminal justice system, 418 U.S. , at 709,710,not only must be Executive Branch , first assert privilege to resist disclosure, but privilege claims that shield information from a grand jury proceeding or a criminal trial are not to be "expensively construed, for they are in derogation of the search for the truth," id. at 710. The need for information for use in civil cases, while for from negligible, does not share the urgency or significance of the criminal subpoena requests in Nixon. As Nixon recognized, the right to production of relevant evidence in civil proceedings does not have the same "constitutional dimensions." Id., at 711." (United States District Court For D.C., 542 U.S. 367 (384) (2004).

The Plaintiff may concern a respondeat view in Executive Order No. 12674,"Principles of Ethical Conduct for Government Officers and Employees" for the reassertion of proponent values under guise of performa statistics, in which a clearance of posited relationships of ethical conduct and the peer-evaluation of adjudant officers may

determine a release on atypical behavior of criminal negligence; this citation may certainly surmise upon the challenge preemptory views for all subpoenas to the public offices of the Defendant, the "Executive Department" of the U.S. D.O.D. (Department of Defense): "(m) Employees shall adhere to all laws to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age, or handicap. (n) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated pursuant to this order. Sec. 102. Limitations on outside earned income, (a). No employee who is appointed by the President to a full-time non-career employees in the White House Office, the Office of Policy Development, and the Office of Cabinet Affairs,  shall receive any earned income for any outside employment activity performed during that Presidential appointment. (b) The prohibition set forth in subsection (a) shall not apply to any full-time noncareer employees employed pursuant to 3U.S.C.105 [section 105 of Title 3, The President] and 3 U.S.C. 107(a)[section 107(a)of Title 3]at salaries below the minimum rate of basis pay then paid for GS-9 of the General Schedule."(Title 5 U.S.C. Section 7310, Exec. Ord. 12674, April 12, 1989, 54 F.R. 1519).

The Plaintiff may now address a primary resolve of the Court in Cheney v. United States District Court For D.C., and the administrative goals of the Judicial Branch that wee identified in promissory safeties on subpena authority, as it may be vested in one branch for an interpreter of the U.S. Constitution, by all forces of law, readily accessible to an incurrence of particular response in withholding statements on the basis of hegemonic stances; the ascertainable guidelines of peremptory status was of an accomplished intercession upon members of the Executive Branch, in judicial ruling of (FACA) and the articulated contentions of Executive Order No.12674, for the recorded interpretations of the case law: " The

court also observed in Nixon that a "primary constitutional duty of the Judicial Branch [is] to do justice in criminal prosecutions." Id., at 707. Withholding materials from a tribunal in an ongoing criminal case when the information is necessary to the Court in carrying out its tasks "conflict[s] with the function of the courts under Art. III. "Ibid. Such an impairment of the "essential functions of [another] branch ", ibid. is impermissible. Withholding the information in this case, however, does not hamper another branch's ability to perform its "essential functions" in quite the same way. Ibid. The District Court ordered discovery here, not to remedy known statutory violations, but to ascertain whether FACA's disclosure requirements even apply to the NEPG in the first place. Even if FACA embodies important Congressional objectives, the only consequence from respondent's inability to obtain the discovery they have is that would be more difficult for private complainant's to vindicate Congress' policy objectives under FACA. And even if, for argument's sake, the reasoning in Judge Randolph's dissenting opinion in the end is rejected and FACA's statutory objectives would be to some extent frustrated, it does not follow that a Court's Article III authority or Congress' central Article I powers would be impaired." (United States District Court For D.C., 542 U.S. 367 (384-385) (2004).

The Plaintiff may now assign a promoted revision of administrative guidelines, in order to obtain a formal inquiry into all specialized terminology of executor provisions for Title 5 U.S.C. Sections 5551-6639, as the clarified federal income status, or derived recounts of internal management scenarios of the Office of Personnel Management would make apparent the entitlement schedules for a sole beneficiary under a compelling responsiveness, to the integrated module of accessible commands for a heightened security in a distribution of compensatory payments, such a dialogue with administrative clearances of Title 5 U.S.C. Sections were classified as a descriptive rule on voluntary-status of leave

programs in clear usage of official memorandum, to bring forth a causality of formulated terms from which an affidavit proposal for an officer of the civil service or uniformed services would suffice in all adept nature of managerial referendums to personalize an entitlement allotment. Hereinafter, the Plaintiff may subject all discussions on Title 5 U.S.C., to an ethics review of competent structures of field memorandum in which a discourse of propelling reversions of obligated tasks to upstage a whole reside of the Plaintiff's likeness in account of a legendary triumph of hired practices in Title 5 U.S.C. Section, 5507, Affidavits of Officers were obligatory to concealing frame of documentary network.

The Plaintiff may recount an aforementioned statements of preface for a scrupulous task of officiating the actuality in managerial supervision of the Comptroller General's Office within the preferential terms of Section 201, The Office of Government Ethics, as it may proceed: "The Office of Government Ethics shall be responsible for administrating this order by: (a) Promulgating in consultation with the Attorney General and the Office of Personnel Management, regulations that establish a single, comprehensive, and clear set of executive branch standards of conduct that shall be objective, reasonable, and enforceable. (b) Developing, disseminating, and periodically updating an ethics manual for employees of the executive branch describing the applicable statutes, rules, decisions, and policies. (C Promulgating with the concurrence of that Attorney General, regulations interpreting the provisions of the post-employment statute, [section 207 of title 18], United States Code [section 208 of Title 18];m and the statute and prohibiting supplementation of salaries, section 209 of Title 18, United States Code [section 209 of Title 18]. (d) Promulgating, in consultation with the Attorney General and the Office of Personnel Management, regulations establishing a system of nonpublic (confidential) financial disclosure by executive branch

employees to complement the system of public disclosure under the Ethics in Government Act of 1978[Pub.L. 95-521, see Tables for classification].

The Plaintiff may address a decisive nature of ethical infractions against the contents of intent questions, from which a federal district court may appraise a challenge in affirmative rebuttal to all happenstances in direct examinationof Title 5 U.S.C. Section 7311. Loyalty and Striking. In consequnce of the Plaintiff's formal presentation if ethics rules from enlisted sections of Executive Order No. 12674, Principles of Ethical Conduct For Government Officers And Employees, the assessory clause, or accomplice liability to Title 18 of the United States Code is now to be defined within an array of interrogatory questions, to obtain the exculpatory reports of intent to violate more than several parts of Title 5 U.S.C. Section 7303 Suitability and Security, in which there may be enclosed designated entities of the Defendant's bureaucracy, the Executive Departments of the U.S.D.O.D., I.R.S. (Internal Revenue Service), The Comptroller General's Office, The MSPB (Merit System Protections Board), GSA(General Service Administration), and the (DOIA),Defense Intelligence Agency. Herein, the Plaintiff may request subpena orders, according to Title 5 U.S.C. Section 7103-7303, for The Office of Government Ethics in section 209 of Title 18, United States Code, to address the local District Court of Kansas, Eighth District, for the duration of all comitted sources of disloyalty to Plaintiff. Henceforth, the grounds for all petition's for charges of "disoyalty" are founded on Title 5 U.S.C. Section 7103-7303, for The Office of Government Ethics in section 209 of Title 18, United States Code, and Title 5 U.S.C. Section 7311. Loyalty and Striking; the communication of Honorable Gen. William Edward Wilson to request the U.S. Attorney's Office to confirm all developed terms of alleged law violations for the duration of a drawn and sworn testimony of The Office of Government Ethics in section 209 of Title 18,

United States Code, and the assigned investigations of U.S. Magistrate Judge for determinant sanctions of Title 28 U.S.C. Section 636,in subsection(e)(5), contempt authority.

The Plaintiff may authorize a demand of stare decisis to eminate from instructions to the judicial rulings of United States District Court For D.C., under the claims for executive privilege for the approval of discovery orders to now qualify:"The scope of plaintiff's requests is broader than that reasonable calculated to lead to admissible evidence") ; id. at 232, n. 10 ("We state our general objections here for purposes of clarity for the record and to preclude any later argument that, by not including them here, those general objections here for purposes of clarity for the record and to preclude any later argument that, may not including them here, those general objections have been waived.") In addition, the Government objected to the burden that would arise from the District Courts insistence that the Vice-President win now the discovery orders by assertinng specific claims of privilege and making more particular objections. Id., at 201(Tr. of Status Hearing (Aug. 2, 2002)) (noting "concerns with disrupting the effective functioning of the presidency and the vice-presidency"); id.; at 274([c]ompliance with order of the court imposes a burden on the Office of the Vice-President. "(United States District Court For D.C., 542 U.S. 367 (388) (2004).

The Plaintiff may petition to organize a discoveryorder for appurtenant commands in Title 28 U.S.C. Section 1736, (Extracts From Journals of Congress) admissible when injunction of secrecy is removed, and the compilations of date procurement in official neccisity from any perishable treatment of enclosed quatifications to paperwork reduction activity, if the surmise on the Journal of Executive Proceedings of the Senate may disclose an indespinsable measurement of codified laws and regulations for procedural due process, then the admissions of the case instuction of United States District Court For D.C.; may be cited to the following

excerpts: "These arguments, too, were rejected. See id. at 372, 329(Nov. 1, 2002,Order) (noting that the Court had,"on numerous occassions", rejected the Government's assertion "that court orders requiring [it] to respond in any fashion to [the]discovery request creates on 'unconstitutional burden' on the "Executive Branch"). Contrary to the District Court's and the Court of Appeals' conclusion, Nixon does not leave them the sole option of inviting the Executive Branch to invoke executive privilege while remaining otherwise pwerless to modify a party's overly broad discovery requests. Executive privilege is an extraordinarily assertion of power" not to be lightly invoke." United States v. Reynolds, 345 U.S. 1, 7 (1953). (United States District Court For D.C., 542 U.S. 367 (389) (2004).

The Plaintiff may petition for clarity of problems interrelated to a constructivist treatment of administrative goals, in advocay of Title 5 U.S.C. Section 7311. Loyalty and Striking; the petitioner may presuppoose a designated role of ethical conduct is to arbitrate over the attachments of equal protection under the law, as it would be the same, a culminating fortune of guaranteed premises for the executive privilege is asserted, coequal branches of the Government are set on a collision course. The Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives. This inquiry places courts in the ackward position of evaluating the Executive's claims of confidentiality and autonomy, and pushes to the fore difficult questions of separations of powers and checks and balances. These occasion[s] for constitutional confrontation between the two branches" should be avoided whenever possible." (United States v. Nixon, supra, at 692, (United States District Court For D.C., 542 U.S. 367 (390) (2004).

The adjusted mechanism of administrative policies are an embark to solidified terms of executive privilege, for the engagement of loyalty

subjects in which plausible restraint on tactical matters of legal strikes in federal service may be detected, as the unequal stance of bearucratic norms in actualization of a perpetual treatment of abrogated clearences, to render such obstructions of justice thath may be classified to the curtaling measures of regulatory sanctions under Title 5 U.S.C. Section 7311, Loyalty and Striking. Therefore, the Plaintiff may demostrate an examine of Title 5 U.S.C. Section 7311, for the formal suggestions to adherence with capacities of labor relations and management of governmental services, such as may be particularly qualified, in acceptance of a heightened security to the jurisdiction of U.S. Government, on the basis of the presentation of formal regualations: "An individual may not accept or hold a position in the Government of the United States or the government of the District of Colummbia if he–(1) advocates the overthrow of our constitutoional form of government; (2) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the District of Columbia." (P.L. 89–554, Sept. 6, 1966, 80 Stat. 524).

The Plaintiff may now recognize a legendary ruling of the Court, on the invoked principles against shields of Executive Privilege, and the pertinent regard of primary status o enforcing the ultimate questions of good in public policy, and the hazing to rest of disfavored legal postulates for a narrowing subject of subpoena authority on codified indications of relevancy in "exculpatory materials" to reside under an analysis of trial procedures in federal district courts outside of the District of Columbia, as the regard for public interest in enforcing discovery orders for a respondent in federal commission known as the (NEPG), the National Energy Policy Development Group were to enact a governmental oversight by administrative rules of (FACA), the Federal

Advisory Committee Act, Title 5 U.S.C. App. Section 2, p.1, in the following responses of a directive to maintain all orders of judicial management in pre-trial motions: "In United States v. Poindexter, 727 F.Supp 1501 ( 1989), defendant Poindexter, on trial for criminal charges, sought to have the District Court to enforce subpoena orders against President Reagan to obtain alllegedly exculpatory materials. The Executive considered the subpoenas "unreasonable and oppressive." Id. at 1503. Rejecting defendant's argument that the Executive must forst assert executive privilege to narrow the subpoenas, the District Court agreed with the President that "it is undesirable as a matter of constitutional and public policy to compel a President to make his decision on privilege with respect to a large array of documents." Ibid. The Court decided to narrow, on its own the scope of the subpoenas to allow the Executive "to consider whether to invoke the choices availlable to the District Court and the Court of Appeals in this case." (United States District Court For D.C., 542 U.S. 367 (390) (2004).

The Plaintiff so motions to confirm in all specifications of the Court order, in United States District Court For D.C. , to reexamine statutes for any defacto membership in committes or agencies from which an arise of determining issues for the burden of discovery orders from the Executive Branch would be encumbered upon a license for inspection of exculpatory content within officiall records and proceedings of he declared forum of U.S. Government, such as the (F.A.C.A.) Federal Advisory Committee Act, Title 5 U.S.C. App. Section 2, was immediate source for respondents to implement a writ of mandamus before a U.S. Court of Appeals; the Plaintiff now stands on all case precedent of verfication to a justified remedy of an official holding in all stipulated motions for iscovery orders made pertinent to the subject matter of prejudicial reside on the timeliness and relevancy of a procedural due process, this allocation of burden in presumption of fedral statutes

obligated to the judiciary bfor the contents of amounts in controversy of this original plead in In Re Wilson are now activley receipted by the following excerpt in final judgment of United States District Court For D.C. : " Because the issuance of the writ is a matter vested in the discretion of the Court to which the petition is made vested in the discretion of the Court to which the petition is made, and because this Court is not presumed with an original writ of mandamus, see, e.g. Ex Parte Peru, 318 U.S., at 586, we leave to the Court of Appeals to address the parties' arguments with respect to the challenge to AAPS and the discovery orders. Other matters bearing on whether the writ of manamus issue should also be addressed, in the first instance, by the Court of Appeals after considering any additional briefs and arguments asit deems appopriate. We note only that all courts should be mindful of the burdens imposed on the Executive Branch in any future proceedings. Special conssiderations applicable to the President and the Vice-President suggest that the Courts should be sensitive to requests by the Government for interlocutory appeals to reexamine, for example,whether the statute embodies the de facto membership doctrine. The judgement of the Court of Appeals for the District of Columbia is vacated, and the case is remanded for further proceedings consistent with this opinion. It is so ordered." (United States District Court For D.C., 542 U.S. 367 (391-92) (2004).

The Plaintiff may so enter a presumtive resolution for a judicial review of all ethical rules, to be cited under sub-classifications of Executive Order No. 12674, Principles of Ethical Conduct For Government Officers And Employees, and the promulgated standards of the Governmental Ethics Committee, in accordance with a justiciable purpose of enabling on exhibit of documentary findings of official memorandum under the guise of the most relevant staure to disposition on the illegitimate factors of (OMB) budgetary management of Title 5 U.S.C. and Pay Administration of

Section 5509 may inspection for a qualifier of apparent and derived equitable resolutions of this In Re case. Herein, the applicable shortages of adepth communications to the legal quorum of mandatory provisions of federal statutes, in which an absolute definition of federal labor is inchanted with all reliances upon the extrinsic nature of beleved income status, by an obligatory requirement of committed GS-Level performance, and the affidavit reports to secludean oblique tendency of managerial oversight would project for the emergence of fualt in timeliness to notify a classified management personnel of deliberate misallocation of compensatory funds.

The Plaintiff may clarify upon all directives of entitlement, to be received under a petition for a consigned interest of public rights, the basis of Title 5 U.S.C. Section 7123 is now to be elected to petitioner's responsivness in all surmised questions of governmental oversight, in which a legal sequence of adversarial predicatives of deliberate suspensions to clincal monitors of behest command for the heads of the Office of Personnel Management may recite an invocation of the Plaintiff's constitutional privileges in "equal protection under the law".

The Plaintiff may now introduce a concurring judgemnt on citation of United States District Court For D.C. , in recommendation of outset rules to entitle respondents for any particular losses in apportionment, to an excuplatory result of case disclosure on the discriminatory policies of defacto membership in partisanship to management of field agencies, as well as the divestiture from prescribed terms of ethical goals, in which a formulated guidelines of the hypothetical structure for an arrangment of balances were to increase a compliant status of reforms within certification of hired instruments of (OPM) management of Defendant, U.S.Government, would activate an arbitration method for all resolutions of greivances, or overlays of duties embarked upon an undersupervised value. Hereinafter, the Plaintiff may allege a defacto management of the

(OPM), the Office of Personnel Management is within a direct line of
argmentary interrogatives, from which a compelling source of neligence
is a peremptory delay of administration reports on a calcualted source of
data verification for the compesation details of Plaintiff's federal salary.
In the the annals of post-modern courts, the assembly of collective
determinants on Amerisjurisprudence have concerned a respite of
practical treatments for an allegatory premise, in arrival of the legendary
remains of determinatives for a exculpable view of field agencies in
administration of the interworking process of (OPM) management of the
U.S. Government. Therein, the Plaintiff may address a bilateral question
to the local District Court of Kansas, Eighth District, to concern a
"bicamerial" issue in conference with all entries of legalistic techniques, in
which an applicable formulae of managerial provisions should advise
upon a presumtion of (OMB) budgetary management of Title 5 U.S.C. and
Pay Administration of Section 5509, (FACA), the Federal Advisory
Committee Act, Title 5 U.S.C. App. Section 2, and the Office of
Government Ethics in section 209 of Title 18, United States Code, and
Title 5 U.S.C. Section 7311. Loyalty and Striking.

The Plaintiff may now instruct the local District Court of Kansas, Eighth
District, to a judicial review of Title 5 U.S.C. Section 7303 Suitability and
Security, for an advisement on a case specific treatment of figurheads in
a transverse principle of "novel de facto member doctrine", wherein, the
peremptory status to good officiating of bureaucracy of the Defendant,
U.S.Government was given a citation of remand, in the course of
injunctive sanctions that were imputed on the (NEPG), the National Energy
Policy Development Group for the proceeding terms of quotation from
United States District Court For D.C : "Relying on the Court of Appeals'
novel de facto member doctrine, ante,at 374, respondents sought to
make that showing by obtaining the very records to which they will be
entitled if they win their lawsuit. In other words, respondents sought to

obtain, through discovery, information about the NEPG's work in order to establish their entitlement to the same information. Thus, granting broad discovery in this case effectively prejudged the merits of respondent's claim for mandamus relief-on outcome entirely inconsistent with the extraordinary nature of the writ. Under these circumstances, instead of reqiuring petitioners to object to particular discovery requests would tend to establish their theory of the case." (United States District Court For D.C., 542 U.S. 367 (393) (2004).

The Plaintiff so attaches an addendum matter of labor management relations, to the key edifice of legal profiles for a surmise on petitioner's status may contend for an intercessionary task of a legitmate request for all anticiapted gains of enforceable reassurance to the judicial review. Hereinafter, the Plaintiff has called on the apparent basis for interrelating an opinion for Title 5 U.S.C. Section 5304, Dual Compensation, with an active model of constructive thjemes, in adjournment of a proceduraldue process that would enlist a forum of Title 5 U.S.C. Section 7123, Judicial Review,Enforcement: "The filing of a petition under subsection (a)or (b) of this section shall not operate as astay of the Authority's order shall be on the record in accordance with section 706 of this title. No objection that has not been urged before the Authority, or its designee, shall be considered by the Court, unless the failure of neglect to urge the objection is excused because of extraordinary circumstances. The fidings of the Authority with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any person applies to the court for leave to adduce the additional evidence and shows to the satisfaction of the Court that the additional evidence is material and that there were reasonable grounds for the failure to adduce the evidence in the hearing before the Authority or its designee, and to be made a part of the record. The Authority may modify its finding as to the facts, or make new findings by reason of

additional evidence so taken and filed. The Authority shall file its modified or new findings, which,with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." (P.L. 95-454,Title VII, Sec. 701, Oct. 13, 1978, 92 Stat. 1213).

The Plaintiff may affirm in all designated terms of the concurring opinion of the Court, for the precise veracity of qualified statements to be revisited, in a practical relationship of judicial review on many facets of supersede terms of an injunctive relief to all delineated value of retrenchment throughout the pretrial phase of ordered motions may be anticipated by the considerable realms of an executive privilege, yet, the Plaintiff has imparted the most necessary restraint on classifications of privilege now within a relevancy, such as "declassification orders" of procurement rule on Executive Order No.12065, National Security Information Policy. Henceforth, the Plaintiff may stipulate upon a command of stare decisis in applied doctrines of judicial procedure for the adhesion to all prescribed terms for an implementation phase of ordered motions of Discovery; this upheld judgement of a confirmed stance to enlist a proprietary right of a strident theme for the attenuated judgment of United States District Court For D.C. , as it may be interpeted: " I therefore think it would have been appropriate for the Court of Appeals to vacate the District Court's discovery order. I nevertheless join the Court's opinion and judgment because, as the architect of the de facto member doctrine, the Court of Appeals is the appropriate forum to direct future proceedings in the case." (United States District Court For D.C., 542 U.S. 367 (393) (2004).

The Plaintiff may acclaim a directive for an interpositional status of judicial review for all constraints on ethics in the U.S.D.O.D. (Department of Defense), in which a causation of compalint is directed to the the edifice of legal norms for the imparture of FRCP(Federal Rules of Civil

Procedure), Rule 8, Original Pleadings, to encompass such atypified concesions of civil procedure that may entail acontractual obligation to executive orders for legal requirements of compliance with national security provisions, and the ethical practices with safeguards to law enforcement of "Ex Parte" views in Title 50 U.S.C. Section 1845, Camera In Ex Parte View. Henceforth, the Plaintiff may reevaluate a concurring judgment of United States District Court For D.C.: " The question with which the Court of Appeals was faced also necessarily had to account for the fact that respondents sought mandamus relief in the District Court. Because they proceed by mandamus, respondents had to demonstrate in the District Court a clear and indisputable right to the Federal Advisory Committee Act (FACA) materials. If respondents' right to the materials was not clear and indisputable, then petitioners' right to relief in the Court of Appeals was clear. One need to look no further than the District Court's opinion to conclude respondent's right to relief in the District Court was unclear and hence that mandamus would be unavailable. Indeed, the District Court ackowledged this recognition "that applying FACA to meetings among Presidential advisors' present[s] formidable constitution diffulties." (United States District Court For D.C., 542 U.S. 367 (394) (2004).

The Plaintiff may now call upon a regulatory provision of labor management relations, to complete an ethics reform in guidelines to the contest of this Original Plead. Hereinafter, the compelling sources of this complaint are directly petioned to the local District Court of Kansas, Eighth District, for all determinations of equitable relief that may be pursuant to the adjustable indicators of an allocated reside for a judicial review of court ordered imjunctions, to all discourse of federal labor in the U.S. Armed Forces, as it may bew allegatory upon the Defendant,the U.S.Government, to the owed immunities and privileges of the Plaintiff's rights in compensatory awards of actual damages for a negligence

standard interrelated to unfair work practices, in the Depastment of Army, and the designated offices of the U.S. Civil Service, to include the budgetary offices of the (OPM) Office of Personnel Management. Thereunto, the Plaintiff may relate all demands for injunctive relief to a forwarded premise of contractual relationships that were established by constructive entities of law known to the awards of the power of Appointment, and the Ratification of the U.S. Senate Subcomitte on Armed Forces.

The Plaintiff may assert a celebrated view of the pervasive and vast decree on injuctive orders for the discourse of a given opinion for equitable relief is to be forthcoming a judicial decision to maintain a discovery request. Therefore, the exact terms of the final judgement in the concurring opinion of <u>United States District Court For D.C.</u> , was formulated as it may proceed: "Indeed, the District Court acknowledged this Court's recognition "that applying FACA to meeting among Presidential advisors present[s] formidable constitutional difficulties." Putting aside the serious Constitutional questions rasised by respondents' challenge, the District Court could not even determine whether FACA applies to the National Energy Development Group (NEPG) as a statutory mattter. 219 F.Supp. 2d, at 54-55 (noting the possibility that, after discovery, petitioners might prevail on summary judgemnt on statutory grounds). I acknowledge that under the Court of Appeals de facto member doctrine, see Association of American Physicians & Surgeons,Inc. v. Clinton, 997 F. 2d 898 ,915 (CADC 1993), a district Court is authorized to undertake broad discovery into the innerworkings of the NEPG has the same potential to offedn the Constitution's separation of powers as the actual application of the FACA to the NEPG itself. 334 F. 3d at 114-115 (Randolph, J. dissenting)." (<u>United States District Court For D.C.</u>, 542 U.S. 367 (395) (2004).

The Plaintiff may now preface a stage to all asserted claims of actual

damages for the delay of a persistent route in objective of disembarked
normative from all other solutions, in residency of acknowledged ethics
for the Executive Privilege of Public Officials, therein, a drawn partition to
authoritatively veil a "hearsay exception" is to be regarded as a more
deletrious standard for the public interest of the American Republic than
to grant a Discovery order, according to the following premise of Title 5
U.S.C. Section 7123, Judicial Review; enforcement: "The Authority may,
upon issuance of a complaint as provided in section 7118 of this title
charging that any person has engaged in an unfair labor practice, petition
any United States district Court within any district in which the unfair
labor practice in question is alleged to have occurred or in in which such
person resides or transacts business for appropriate temporary relief
(including a temporary restraining order) it considers just and proper. A
Court shall not grant any temporary relief under this section if it would
interfere with the ability of the agency to carry out its essential functions
or if the Authority fails to establish probalble cause that on unfair labor
practice is being committed." (P.L. 95–454,Title VII,Section 701,Oct.
13,1978, 92 Stat. 1213).

The Plaintiff may now enter averments on accord of a forecasted schedule
of actual damages, in representation of all economic losses that have
been incurred by a "deprivation of rights", a pursuant terms of Title 28
U.S.C. Section 1343, Deprivation of Rights, in subsection (3), the cases of
civil discrimination to subscribe to judicial rulings on Title 42 U.S.C.
Section 1981–85. Henceforth, the Plaintiff has represented a classified
report on a recollection of ensampled terms for a career tenure of the
Honarable Gen. William Edward Wilson, U.S. Armed Froces/U.S. Army. In
considerable sequences of determinative initiative for the engagement of
lawsuit, the Plaintiff has represented an estate case before the local
District Court of Kansas, Eighth District, the establishment of petitioner's
receipient of actual terms for a declaration of issues, in a question of law,

were tendered on a classsified provision of dispostion of "economic rights", and the collective standard of an "In Re" performa, to establish a "ripeness doctrine" for the dispensation of all active claims within an announced legal restraint to a mediated "receivorship" of "estate and trust". Hereinafter, the Plaintiff has sought to adjudge all unresolved terminology held in question for an abatement of law and property rights, in which a clarified presupposition of any event of negligence standard may be cultured by a persistent recount of a drawn notice of the establishment of Fifth Amendment rights for a custodial privilege over property rights; the open disclaimer of warranty to be received in survivorship of the estate, by the acknowledgements of all "official signatures" of petitioner for a duplication of privileges, in all entitlements of "bondsmanship" and "The Full-Faith and Credit".

The Plaintiff may now recite a leading standard for a receivorsip of estates on the grounds of  a damages clause, to be exacted for all terms of negligence,for the cases to involve the U.S. Government, as Defendant under Title 28 U.S.C. Section 1349, in subsection (3), were it may reflect on the grounds of judicial review for any citation of "unfair labor practices" to be the exacting toll of laches, and the burden of fortuitous losses in economic contracts that are consistent with inter-state and commerce, public service, executive privilege, and the assignments of the Federal Government as payee to a pension's fund, under arranged status of claimant values now within the purview of this original plead for In Re Wilson for the clinical reference of Title 5 U.S.C. Section 7123, Judicial Review; enforcement; the Plaintiff may now presume the arguments of In Re Wilson on the basis of the antecedent times of succession to all evidence of an discriminatory restraint of "involuntary separation" from a career tenure in Directorship of the (DOIA), the Defense Intelligence Agency on the basis of Settlement of Accounts; Title 42 U.S.C. Section 1983, Civil Actions for Deprivation of Rights; Local Rule 66.1(e),

Administration of Estate; Local Rule 83.7, Review of Orders in
Administrative Agencies, Boards, Commissions and Officers,(Inclusive of
Social Security Administration); the court ordered injunction to all federal
payments under devised schedules to the Wilson Personal Holding
Company, P.C., under Title 40 U.S.C. Section 11316, Accountability; A
court ordered corporate dissolution of the Wilson Personal Holding
Company, P.C., according to RSMOs351.327, RSMOs351.467,and RSMOs
351.448 for actual damages in a 89% liquidation of corporate assets; and
the court ordered employment contract with the Wilson Law Firm, P.C. for
the lifetime President Officer and Sole Proprietor; Title 42 U.S.C. Section
1983, actual damages and punitive damages against the U.S. Government
for negligence in an involuntary separation from the Directorship of the
Defense Intelligence Agency and the U.S. D.O.D. for treble damages.
The Plaintiff so motion for entry of a leading standard of case profiles, to
implicate a procession of constitutional requirements that are outlined for
adjournment on the Classification Act of Title 5 U.S.C. Section 5101,
under the formal review of an respondent terms for a testimony on a
precedence of Court ordered money judgments in the case of United
States v. Testan, 424 U.S. 392, at 397: "We turn to the respective status
that are advanced as support for the action by the Court of Claims. A. The
Tucker Act. The central provision establishing the jurisdiction of the court
is that part of the court is that part of the Tucker Act now more codified
at 28 U.S.C. Section 1491:"The Court of Claims have jurisdiction to render
judgment upon any claim against the United States founded either upon
the Constitution, or any Act of congress, or any regulation of an
executive department, or upon any express or implied contract with the
United States, or for liquidated damages in cases in cases not sounding
tort." (Testan, 424 U.S. 392,(397), (1975).

The Plaintiff may now seek a judicial review of the current state of money
damages due to a petition fro the Classification Act of Title 5 U.S.C.

Section 5101, and the excessive delay, and oversight of compensatory payments of federal salary that are noticed in the case of In Re Wilson, under the clinical terms of Title 5 U.S.C. Section 5108, a General Schedule for GS-15 or more federal employees and the discharge of orchestrated duties owed to all claimants in practicum of the jurisdictional Act ,as specified in United States v. Testan, 424 U.S. 392, at 398: "The Court then went on to hold that the Declaratory Judgment Act did not grant the Court of Claims authority to issue declaratory judgments. Cited in support of all this were Glidden Co. v. Zdnakok ,370 U.S. 530, 557, (1962) (Harlan J.) (plurality opinion); United States v. Jones, 131 U.S. 1 (1889); and United Sates v. Alire 6 Wall 573 ,575 (1808 See Lee v. Thorton, 420 U.S. 139 (1975); Richardson V. Morris, 409 U.S. 464 (1973); United States v. Sherwood, 312 U.S. 584, 589-591 (1941). The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists. Eastport S.S. Corp. v. United States,178 Ct. Cl. 509, 605-607,372 F.2d 1002,1007-1009(1967). We therefore must determine whether the two other federal statutes that are invoked by the respondents confer a substantive right to recover money damages from the United States for the period of their allegedly wrongful civil service classifications." (Testan, 424 U.S. 392,(398), (1975).

The Plaintiff may reside on claimant value of the Tucker Act a dual principle that has been recognized for damages, in juncture of remedies, versus, a closure to the Soveriegn immunity of the U.S. Government from such lawsuits, in the contest of such regards for a cause in stand of subject matter jurisdiction in the case of United States v. Testan, 424 U.S. 392, at 403: "[T]he Acts is not merely a hortatory catalogue of high principles." Brief for Amicus Curiae 15 . The built-in avenue of

administrative relief is one response to these statutory requirements. Review and reclassification may be brought into play at the requeath of an employee. 5 U.S.C. Sec. 5112. (b). And respondents, as has been noted, did just that. A second possible avenue of relief -and it, too seemingly ,is only prospective is by the way of mandamus, under 28 U.S.C. Sec. 1361, in a proper federal district court. In this way, also, the respondents have asserted their claims. See n. 5,supra. The respondents, thus, are not entirely without remedy. They are without the remedies in the Court of Claims of retroactive classification and money damages to which they assert they are entitled. Additional remedies of this kind are for Congress to provide and the courts to construct."(Testan, 424 U.S. 392,(404), (1975).

The Plaintiff may now seek to motion for the local District Court of Kansas, Eighth District, to affirm the duty in the so-called "remand statutes", not of jurisdiction for the U.S. Court of Claims, but the federal district courts on the basis of Title 5 U.S.C. Section 5596, as the case of Testan may settle on terms of outside monetary relief: "The remand statute, P.L. 92-415, 86 Stat. 652, now codified as part of 28 U.S.C. Sec. 1419 (1970ed, Sipp. IV), authorizes the court of Claims to "issue orders directing restoration to position, placed in appropriate duty ....status, and correction of applicable records" in order to complement the relief afforded a money judgment, and also to "remand appropriate matter to any administrative ... body" in a case "within its jurisdiction ." The remand statute, thus, applies only to cases already within the court's jurisdiction. The present litigation is not such a case. Respondents cite Allison v. United States ,195 Ct. Cl. 263, 451 F. 2d 1035, (1071) , and Petit v. United States, 203 Ct. Cl. 207, 488 F. 2d 1026 (1973), as precedent for the remand order in this case. Those cases found the employees "entitlement" to money damages in an Executive Order, and to that extent might be distinguishable in the instant case." (Testan, 424 U.S. 392,(405),

(1975).

The Plaintiff may now seek all monetary relief to be sought for actual damages of this claim under the order for recompense under Title 5 U.S.C. Section 5569, in an appendage to all other claims of Title 5 U.S.C. 5595, the cause for enforcement of the Lloyd-LaFollete Act, 5 U.S.C. Section 7501, administrative review of a wrongful adverse action, and in the Back Pay Act, as follows in Testan: "Congress, of course, now has provided specifically in the Lloyd-LaFollette Act, 5 U.S.C. Section 7501, for administrative review of a claim of wrongful adverse action, and in the Back Pay Act for the award of money damages for a wrongful deprivation of pay. But federal agencies continue to have discretion in determining most matters relating to the terms and conditions of federal employment. One continuing aspect of this rule, mentioned above, that the federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act."(Testan, 424 U.S. 392,(406), (1975).

The Plaintiff may assess a concern for a latitude in cases that are governed for laches of tolling statutes, if they are not most germane to Title 10 U.S.C. Section 14508(e), Exceptions To the Retirement Lists of State Adjudants and Other Adjudants, as the case was otherwise made standard for the Supreme Court has held that the statutory time provision for filing with the EEOC a Title VII claim against a private employer is not a jurisdictional prerequisite to suit in federal court, but is instead subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982). Hereinafter, the Plaintiff may address the case
of Zipes v. Trans World Airlines on concern for illuminating on all premises of the established terms of statutory provision in attachments

to timeliness of filing any case of provincial status for Title VII, 42 U.S.C. Section 2000(e)-e(5) and (f) for the significance of actual damages sought for this cause and the contentions for restitution of all pensions funds, not previously acknowledge to Plaintiff for a prior terms to affirmations of directed subpoena orders; henceforth, the Plaintiff may exemplify upon certified predictions of Court's view in Zipes, as confirmed: "We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like statute of limitations, is subject to waiver, estoppel, and equitable tolling. The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion. The provision granting district courts jurisdiction under Title VII, 42 U.S.C. Section 2000(e)-e(5) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It contains no reference to the timely filing requirement. The provision specifying the time for filling charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. The legislative history of the filling provision is sparse, but Senator Humphrey did characterize the time period for filing a claim as a "period of limitations" 110 Cong. Rec. 12723 (1964,and Senator Case described its purpose as preventing the pressing of "stale" claims, id. at 7243, the end served by a statute of limitations." Zipes v. Trans World Airlines, 455 U.S. 385, (394),(1982).

The Plaintiff may now expound on a collective history of Title VII legislation, for the consistent parameter that is defined unto the 1972 Amendments to give allowances on all exculpatory findings of interment of maximum terms of justified principle to adjudicate under a civil lawsuit, as the instruction to such an embark of gestures for tantamount knowledge of applying statutes to civil lawsuits was made pertinent: "In the final Conference Committee section-section analysis of H.R.

1746,The Equal Opportunity Committee not only termed the filling period a "time limitation," but explained: "This subsection as amended provides that charges be filed within 180 days of the alleged unlawful employment practice. Court decisions under the present law have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law; it is not intended that such court decisions should be in any way circumscribed by the extension of the time limitations in this subsection." This result is entirely consistent with prior case law. Although our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases, and as or more often in the same or other cases, we have referred to the provision as a limitations statute." Zipes v. Trans World Airlines, 455 U.S. 385, (395),(1982).

The Plaintiff may support a Court's view on interpretation of Franks v. Bowman Transportation Co. 424 U.S. 747 (1976), as the reversal of limited terms of tolling statutes in concern with "silent plaintiffs", or the "unsaid members" of a union against an employer; the premise stated as a consistent fervency of grounds to perpetual terms of filings of administrative charges: "The District Court denied relief for unnamed class members on the ground that those individuals had not filed administrative charges under the provisions of Title VII and that relief for them was thus not appropriate. The Court of Appeals did not disturb this ruling, but we reversed, saying: "The District Court stated two reasons for its denial of seniority relief for the unnamed class members. The first was that those individuals had not filed administrative charges under the provision of Title VII with the Equal Employment Opportunity Commission and therefore class relief of this sort was not appropriate. We rejected this justification for denial of class-based relief in the context of backpay awards in Albemarle Paper [Co. v. Moody, 422 U.S. 405 (1975),] and ....reject it here. This justification for denying class-based relief in Title

VII suits has been unanimously rejected by the courts of appeals, and Congress ratified that construction by the 1972 amendments...." Id., at 771(footnote omitted)." Zipes v. Trans World Airlines, 455 U.S. 385, (396),(1982).

The Plaintiff may also seek to envision all codified regents of law, at equity, to formulate no clasping terms of "sua sponte" to abate from a constructive matter of administrative claims; this is authorized in the case Mohasco Corp. v. Silver, 447 U.S. 807 (1980), on the following excerpts from Zipes: "Similarly, we did not sua sponte dismiss the action in Mohasco Corp. v. Silver, 447 U.S. 807 (1980), on the basis that the District Court lacked jurisdiction because of plaintiff's failure to comply with a related Title VII time provision. Instead, we merely observed in a footnote that "[p]etitioner did not assert respondent's failure to file the action within 90 days as a defense." Id., at 811, n. 9. By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waive as well as tolling when equity so requires, we honor the remedial purpose of the filing requirement, to give prompt notice to the employer. We therefore reverse the Court of Appeals in No. 78-1545." Zipes v. Trans World Airlines, 455 U.S. 385, (398),(1982).

The Plaintiff now request the local District Court of Kansas, Eighth District, to uphold all laches of entry to the averments of this original plead for In Re Wilson, with a codified framework to install a claimant solution on alternative basis of compelling financial resources to be insured an enclosure of true ownership, for an endurance of "deeds in titles" of property that may verify a categorical domain of statutory requirements, in which the entitlements of true ownership were concerted by honors of appointment and Ratification, promotional status, articles of incorporation, Government-Bid Contracts, Directorship jurisdiction, and the fiduciary liability of sole ownership in capital stock

for a personal holding company. Hereinafter, the Plaintiff may remain within the state of claims for an honor of procedural qualifications, in hire of a degree participatory writs to onclave the genre of cases for Title 28 U.S.C. Section 1343, Deprivation of Rights, under the assembled pleas on Title 42 U.S.C. Section 1981-1985; the closure to all petitions for a treble damages on involuntary separation from a U.S. Directorship position and the grievance for civil rights violations in the Executive Department are wholly recognized in the following context of Title VII cases: "The award of retroactive seniority to members of Subclass A is not infirm for want of a finding of a discriminatory employment practice. Equally meritless is the union's contention that retroactive seniority contrary to the collective-bargaining agreement should not be awarded over the objection of a union that has not itself been found guilty of discrimination. In Franks v. Bowman Transportation Co., 424 U.S., at 764, we read the legislative history of Title VII as giving "emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole in so far as possible the victims of discrimination." (Zipes v. Trans World Airlines, 455 U.S. 385, (399) (1982).

The Plaintiff may now concern a damages clause for the designated liability on formulated terms of pensions an annuities plans owed to the petitioner of In Re Wilson. Hereinafter, the Plaintiff should identify a compilation of definitions for cases of discrimination in a federal workplace that may encumber rights for a duration of issues on debt recovery from Sections 1981, Section 1982, Section 1983, and Section 1985 of Title 42 U.S.C., and the right to sue for entitlements of a pension retirement fund on the grounds of Title 28 U.S.C. Section 1343, subsection (3). In adherence with all notices for an equitable tolling statute to add revisions for advance cause of settlements for unexplained or involuntary separations from a federal workplace, the Plaintiff may now

represent a controlling standard of stare decisis on unsaid standards of discrimination in which a collective terms of displacement of employment rights are conveyed to all erroneous patterns of retaliatory practices or attempts for severance, in the case of (Gomez-Perez v. Potter, 128 S. Ct. 1931 1942-1943) (2008).

Herein, the Plaintiff may seek to outline a category of actual damages for Defendant, U.S. Government, that are a prospective view of aligned trends of discrimination, if by the mechanics of estoppel, or the grade on incremental patterns of racially motivated discrimination, the impetus of economic losses unto the petitioner are most observant of a loss of consortium in a field of decisions for an expectation to forecast on all indemnified risks of long-term employment insurances under the annuities plans of Title 10 U.S.C. Section 1448, Application of Plan, in question of the accumulative payments for Survivor Benefits Plan, and the case of Irwin v. Department of Veteran Affairs, 498 U.S. 89 (1990). The Plaintiff may stipulate a classified trend for discrimination in federal workplaces does arise an umbrage for causes on controlling questions of law for Title VII cases, as it may be stipulated on affiant proposals for actionable remedies to enjoin within insolvent terms of displaced worker, as the formal statement is defined in summary of Irwin v. Department of Veteran Affairs: " Irwin contacted an equal employment opportunity counselor and filed a complaint with the VA, alleging that the VA had unlawfully discharged him on the basis of his race and physical disability. The VA dismissed Irwin's complaint, and the Equal Employment Opportunity Commission (EEOC) affirmed that decision by a letter dated March 19, 1987. The letter, which was sent to both Irwin and his attorney, expressly informed them that Irwin had the right to file a civil action under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. Section 2000(e) et seq. within 30 days of receipt of the EEOC notice. According to Irwin, he did not receive the EEOC's letter

until April7, 1987, and the letter to his attorney arrived at the attorney's office on March 23, 1987, while the attorney was out of the country. The attorney did not learn of the EEOC's action until his return on April 10, 1987." (Department of Veteran Affairs, 498 U.S. 89 (91) (1990). The Plaintiff may assess a schedule of equitable tolling statutes for a compilation of terms for a right to sue that must pursuit after delegated showing of actual damages for patterns of discrimination under guidelines of Title 42 U.S.C. Section 2000(e), and the entitlement schedules for Sections 1981 through Section 1985, on a directive of statutory provisions for doctrine in lawsuits on economic recovery of pension plans from the Federal Government, under Title 28 U.S.C. Section 1343, in subsection(3), and the outlay of arguments on Section 2000(e)–16(c), as the convene of ripenes doctrine would inset suitable terms: "The fact that petitioner did not strictly comply with Section 2000(e)-16(c)'s filing deadline does not, however, end our inquiry. Petitioner contends that even if he failed to timely file, his error may be excused under equitable tolling principles. The Court of Appeals rejected this argument on the ground that the filing period contained in Section 2000(e)-16(c) is jurisdictional, and therefore the District Court lacked authority to consider his equitable claims. The court reasoned that Section 2000(e)–16(c) applies to suits against the Federal Government and thus is a condition of Congress' waiver of sovereign immunity. Since waivers of sovereign immunity are traditional construed narrowly, the court determined that strict compliance with Section 2000(e)-16(c) is a necessary predicate to a Title VII suit. Respondents correctly observe that Section 2000(e)-16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed. See Library of Congress v. Shaw, 478 U.S. 310 (1986). But our previous cases dealing with the effect of time limits in suits against the Government have not been entirely consistent, even though the cases may be distinguished on their facts." (Department

of Veteran Affairs, 498 U.S. 89 (94) (1990).

The Plaintiff so confirms that a timely motion to proceed with all contentions of lawsuit is engaged with a compliance for a filing period with the local District Court of Kansas, Eight District, on the basis of a recurrent theme of racial discrimination, age discrimination, estoppel, and the denial of Federal Government to recognize petitioner's request to administratively review occupational status and pension profiles in April 2008, by no disclosure of information from public records on Plaintiff's rights in a DD-204 Form for Adjudant Offices; and the following mandates of the case in Department of Veteran Affairs: "Title 42 U.S.C. Sec. 2000(e)-16(c) provides in relevant part: "Within thirty days of receipt of notice of final action taken by ...the Equal Employment Opportunity Commission ....an employee or applicant for employment or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000(e)-5 of this suits against the Government, but probably not to all of them. In the present statute, Congress said that "[w]ithin thirty days ...an employee ... may file a civil action ....." (Department of Veteran Affairs, 498 U.S. 89 (95) (1990).

The Plaintiff may afford all considerations of "prior restraint" in description of "intent" for applied usage of federal statutes should interpret on key factors of hired reference to the authorized proponents of initial filing of lawsuits, and the clarified domain of sovereign immunity in the Federal Government, as the dissenting opinion pertains to an outlay of formalistic instruction in assertion of prior Court decisions in Soriano v. United States, as follows: "Not only is the Court's holding inconsistent with our traditional approach to cases involving sovereign immunity, it directly overrules a prior decision by this Court, Soriano v. United States, 352 U.S. 270 (1957). the question in Soriano was whether war tolled the statute of limitations for claims against the Government

filed in the Court of Claims. In arguing for equitable tolling, the plaintiff
there relied on a case in which this Court had held that was had tolled a
limitations statute for purposes of private causes of action. Id., at 275.
The Court was not persuaded, stating that "[t]hat case involved private
citizens, no the Government. It has no applicability to claims against the
sovereign. " Ibid. The Court explained: "To permit the application of the
doctrine urged by petitioner would impose the tolling of the statute in
every time-limit-consent Act passed by the Congress…. Strangely
enough, Congress would be required to provide expressly in each statute
that the period of limitations was not to be extended by war. But
Congress was entitled to assume that the limitation period it prescribed
meant just that period and no more. With this intent in mind, Congress
has passed specific legislation each time it has seen fit to toll such
statutes of limitations because of war. And this Court has long decided
that limitations and conditions upon which the Government consents to
be sued must be strictly observed and exceptions thereto are not to be
implied." Id., at 275-276. (footnote omitted). (Department of Veteran
Affairs, 498 U.S. 89 (99) (1990).

The Plaintiff has previously stated a formal procedure of filing pleads so
does interpret for a dual notification in Title 5 U.S.C. Section 3106,
Employment of Attorneys: Restrictions, according to (P.L 89-554, Sept. 6,
1966,80 Stat. 465) and the prevailing status of Revised Statutes of Title 5
U.S.C. in sections 189, Sections 365, and Title 5 U.S.C Section 49.
Hereinafter, the Plaintiff so motions for a cumulative evaluation of all
descriptive inventories of the EEOC regulations for equitable tolling of
"remedial statutes" along with a customary parameter of 29 CFR Sec.
1613.234(a) 1990, and the following excerpt of Department of Veteran
Affairs: "However, a claimant's representative before the EEOC will not
necessarily also represent the claimant in the ensuing civil suit; indeed,
the representative in the administrative proceedings need not even be an

attorney. See Sec.1613.214(b). Notice to the claimant is therefore the more logical trigger for the limitations countdown. This construction is not only sensible in light of the notice requirement's function in the statutory scheme, but is also consistent with our previous admonitions that Title VII, a remedial statute, should be construed in favor of those whom the legislation was designed to protect. See Zipes v. Trans World Airlines, 455 U.S. 385, 397-398 (1982); Love v. Pullman Co., 404 U.S. 522,527 (1972). Accordingly, I respectfully dissent from the Court's judgment. I would instead reverse the judgment of the Court of Appeals and remand the case for resolution of the disputed factual issue of when the petitioner himself actually received notice of from the EEOC of his right to file a civil action." (Department of Veteran Affairs, 498 U.S. 89 (102) (1990).

The Plaintiff so now presumes testimony on this case for In Re Wilson, with an accord in a developed opinion of stare decisis, to be established by the leading case of Garcettti v. Ceballos , 547 U.S. 410 (2000, at 418; the accessible debut of court rulings on prohibitions of "public employees constitutionally protected interest in freedom of expression", an ensembled question of preliminary review to the holding of Connick v. Myers, 461 U.S. 138,142 (1983), as it may be stated: " It is well settled that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). The question presented by the instant case is whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." (Ceballos, 547 U.S. 410 (413) (2006). The Plaintiff so does address a burgeoning prospective of First Amendment Theory in a direct relationship take exact monitor of evidentiary hearings on the entitlement of public office, so the respective matters of compensational duties are appropriately conferred to the

acumen, in leadership of general management, as the Constitutional perspectives of a mediated source of public relations would impress upon an accurate display of all enhancements of job performances within the accessible domain of Secretarial Jurisdiction for Title 10 U.S.C. Section 2302,"Head of Agency", Title 10 U.S.C. Section 3034, Vice-Chief of Staff, Title 5 U.S.C. Section 5313, GS-Level Positions of V or more, Title 5 U.S.C. Section 6339,(a)(1)(B), Director of Defense Intelligence Agency, and the following predictions of Connick v. Myers, on the Court opinion of Ceballos, as it may proceed: " Connick instructs Courts to begin by considering whether the expressions in question were made by the speaker "as a citizen upon matters of public concern." See id. , at 146-142." (Ceballos, 547 U.S. 410 (416) (2006).

The Plaintiff so enter an initialized standard of jurisdictional review of Garcettti v. Ceballos, in line with a concurring theme for ascertainable objections of presentation for mandatory rules on concepts of official documents that were ordered to the commission status of Title 10 U.S.C. Section 2802, Military Construction Projects, (P.L. 97-214, 52(a), July 12, 1982, Title 32 U.S.C. Section 717, Evaluative Programs and Activities of the United States Government (P.L 97-258, Sept. 13, 1982, 96 Stat. 893); Title 42 U.S.C. Section 111, Termination of Contracts; (July 1, 1944, c. 358, Section 11, 58 Stat. 658; Ex. Ord. NO. 9809 , Section 8, eff. Dec. 12, 1946, 11 F.R. 14281; 1947 Reorg. Plan NO. 1, Section 201, eff. July 1, 1947, 12 F.R. Stat. 14281, 61 Stat. 951; June 30, 1949, c. 288, Title I, Section 102(B), 63 Stat. 380.); Title 41 U.S.C. Section 432 ,Value Engineering (P.L. 93-400, Section 40, formerly Section 39, P.L. 105277, Div. 2, Title III, Section 308,Oct. 1998, 112 Stat. 2681-879; renumbered Section 40, P.L 108-136, Div. A, Title IV, Section 1431 (a)(2), Nov. 24, 2003, 117 Stat.1672; Title 41 U.S.C. Section 605, Decision By Contracting Officer; Title 41 U.S.C. Section 35, Contracts for materials, etc. exceeding $10,000; representations and stipulations; amended Oct. 13, 1994 P.L

103-355, Title VII, Section 7201(1), 108 Stat. 3378, Title 41 U.S.C. Section 254, Contract Requirements,(P.L.103-355, Title IV, Sections, 4103(c, 4402(c), Title VIII, Section 8204(b), Title X, Section 10005(e), 108 Stat. 3270, 3728,3320,3341,3349,3396,3408); Title 41 U.S.C. Section 254(d) Examination of Records Contractor, (June 30, 1949, c. 288, Title III, Section 304 (as added and amended Oct. 13, 1994, P.L. 103-355, Title II, Sec. 2251 (a), Title IV, Section 4103(d),108 Stat.3318, 3341; Feb 10, 1996, P.L.104-106, Div. D (b), Title XLIII, Section 4321(e)(5), 1105 Stat. 675; Sept. 23, 1996, P.L. 104-202, Title VIII, Section 808(b), 110 Stat. 2607).

The Plaintiff may clarify a distinguished honorarium, in public service is within integral aspect of leadership qualities to be held unto a venerable stature of commentary. The Plaintiff may be afforded an honorable testimony in all arenas of contracts and bonds of corporate holdings for an arrival to the epicenter of American business culture, even as the assurety bestowed upon a formal presentation of public service may be recognized within Title 28 U.S.C. Section 1737, Copy of Officer's Bond, (June 25, 1948, c. 646, 62 Stat. 947), and Title 28 U.S.C. Section 1738, State And Territorial Statutes and Judicial Proceedings; full-faith and credit (June 25, 1948, c. 646, 62 Stat. 947). Hereinafter, the Plaintiff so determines a partition in domain of guardianship to the "official status" of the public sector that may advise on a controlling source of stare decisis in claim of the Court, in Ceballos, to concert the formal statement: " The Court of Appeals determined that Ceballos memo, which recited what he thought to be governmental misconduct, was "inherently a matter of public concern." 361 F.3d, at 1174. The Court did not, however, consider whether the speech was made in Ceballos capacity' capacity as citizen. Rather, it relied on Circuit precedent rejecting the idea that a "a public employee's speech is deprived of First Amendment protection whenever those views are expressed, to government workers or others, pursuant to

an employment responsibility." Id., at 1174-1175(citing cases including Roth v. Veteran's Admin. of Gov' t of United States , 856 F. 2d 1409 (CA9 1988)." (Ceballos, 547 U.S. 410 (413) (2006).

The Plaintiff is now certified to enlist an official testimony for a jurisdictional review of applied doctrines Title 28 U.S.C. Judiciary and Judicial Procedures, on the affirmative commands, for a direct entry of tenous relationships in the admissible rules of evidentiary hearing unto all dosage profiles held, in happenstances, to the public trust of the United States of America, and the commentary of a genre of memoranda to enlist a formal insight upon the Directorship offices of the U.S.D.O.D. (Department of Defense). Furthermore, the Plaintiff so does assert that, in context of American Public Laws, the active role of contracts manager within the U.S.D.O.D. Furthermore, the Plaintiff so does assert that ,in content of American Public Laws, the active-role of contracts managers within the U.S.D.O.D. was a significant role, one in which a positive treatment of First Amendment were allocated to a decision of execution of legal writs, to enjoin a cumulative factor of escalated work schedules, under the inventory management of key objection for appointments in Title 10 U.S.C. Section 3034, Vice-General of Staff, the assignments of Title 10 U.S.C. Section 2802, Military Construction Projects, and the verification of localized sources of managerial supervision in details of a Director's jurisdiction for all entitlements to Title 31 U.S.C. Section 1307, Public building construction, under the assigned definition of statutory rules: " Amounts appropriated to construct public building remain available until completion of the work. When a building is completed remain available until completion of the work. When a building is completed and outstanding liabilities for the construction are paid, balance remaining shall revert immediately to the Treasury." (P.L. 97-258, Sept. 13, 1982, 96 Stat. 918).

The Plaintiff so does maintain an interpretative view of challenges for a

qualified presumption test, to attach the domain of stare decisis, with an insistence of claimant terminology made available from the opening statements of In Re Wilson. Hereinafter, the Plaintiff may assign interpretations of a complaint memo within the rectified sources of owed duty-status, to a "public-concern requirement", as it may be decreed from the Court opinion of Ceballos: " Having concluded that Ceballos' memo satisfied the public-concern requirement, the Court of Appeals proceeded to balance Ceballos' interest in his speech against his supervisors' interest in responding to it. See Pinkering ,Supra, at 568. The court struck balance in Ceballos' favor, noting that petitioners" failed even to suggest disruption or inefficiency in the workings of the District Attorney's Office as a result of the memo. See 361 F.3d , at 1180. The Court petitioner's actions were not objectively reasonable . See id, at 1181-82" (Ceballos, 547 U.S. 410 (416) (2006).

The Plaintiff so now follows in a command ruling of Ceballos, to ascertain a definable presumption of In Re Wilson on all facets of doctrine in precedence of the arrangement of demand, to enlist a favorable partition of claimant procedures in absolutism of legal remedies that are conscious treatment of the duties with the First Amendment Theory under a multivariable  statements of legendary reside unto an implication of the justified means, in character of "rights to petition one's government." Hereinafter, the case of Ceballos is a directive to advertent matters of dogma, in relative theory for an occasion of "equal protection  under the law", a cognizant goal of American Civil Liberties to be espoused within clause 2 of the Fourteenth Amendment , and the employed premise of the court of Ceballos, at 417: " As the Court 's decisions have noted, for many years "the unchallenged dogma was that a public employee had no right to object top conditions placed on the terms of employment-including those which restricted the exercise of constitutional rights." Connick , 461 U.S. ,at 143. That dogma has been qualified in important

respects. See id. , at 144-45. The Court has made clear that public employees do not surrender all their First Amendment rights by reason of the employment. Rather, the First Amendment protects a public employees' right, in certain circumstances, to speak as a citizen addressing matters of public concern. See, e.g. Pickerson ,supra, at 568;Connick, supra, at 147, Ranken v. McPherson, 438 U.S. 378, 384 (1987), United States v. Treasury Employees, 513 U.S. 454, 466 (1995)." ( Ceballos, 547 U.S. 410 (417) (2006).

The Plaintiff so contends for a distinguished report of Pickering v. Board of Ed. of Township High School Dist., Will City, 391 U.S. 563 (1968), as it may concern a speculation of the court's opinion, to explain the administrative rule on the doctrine known as the "public-concern approach". Herein, the petitioner may state a cognizant wherewithal should intend a positive relationship to all declared terms of formal speech, to not be encumbered by an unleashed force of retaliation within an undue means of hardship, for threats to the inset of a public voice made in tender of established aides to install an acclimation of reforms through teaching and industrial relations. Furthermore, the active imparture to a competent manor of arrived credentials within an emphatic suggestive of the "expert master witness" for an important mechanisms of industrial trade, and the onset of components in doctrines of educational laws that must ensure an adherence to the enlisted measure of negotiable tasks within the business community or labor unions in the public sector. Therefore ,the Plaintiff so admits a following excerpt from Ceballos, to affirm upon the multivariable issues still interconnected messages of the Court's decision on applied doctrines of the First Amendment and the accredited licenses of citizen's in published speech for a work-practice: "Pickering provides a useful starting point in explaining the Court's doctrine. There the relevant speech was a teacher's letter to local newspaper addressing issues

including the funding policies of his school board. 391 U.S., at 566. "The problem in any case," the court stated", is to arrive at a balance between the interests of the teacher, as a citizen, in connecting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id., at 568. The Court found the teacher's speech "neither [was] shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." Id., at 572-573(footnote omitted). Thus, the Court concluded that "the interest of the school administration in limiting teacher's opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public." Id., at 573. (Ceballos, 547 U.S. 410 (418) (2006).

The Plaintiff so now actively determines a formal inquiry of the Ceballos standard is a definite interest of emerged policy statements on the constitutional protections of the petitioner's rights, in all congratulations for well-being in public service, and the relinquishment of "hearsay rule exceptions" from an incurred topic of licensure to divest normality away from the perceptive terms of accreditation of credentials, thus, the anticipates time for an uptake of executive privilege to extend upon a claimant value in the involvement of practicums that must engage the First Amendment Theory, inclusive of a two-inquiry approach to guide on constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. See Id, at 568. If the answer is no, the employee has no First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. See Pickering, 391 U.S. at 568. This consideration reflects the importance of

the relationship between the speaker 's expressions and employment." ( IBID, 547 U.S. 410 (418) (2006).

The Plaintiff's arguments for a controlling status on all evidence of this original plead for In Re Wilson should be upgraded to a declaratory right to apply the furtherance of excessive penalties for actual and punitive damages, wherein, the critical threshold of economic loss was a jeopardy installed against the precedents of a demarcated reference of protections for all published speech of the governmental entity; the controlling status of Ceballos is also relevant to the following excerpt of quotation: "This consideration reflects the importance of the relationship between the speaker's expression and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."( IBID, 547 U.S. 410 (418) (2006).

The Plaintiff may determine a qualified test of decisions to opinions from American Law that may lead unto the favor of a "broad discretion" to "restrict speech" of employers under the obligations of governmental immunities within the "public sector" to an assessed value in stare decisis doctrine of the following cases, Metropolitan Washington Airports Authority v. Citizens For Abatement of Aircraft Noise Inc., 501 U.S. 252 (1991), Mistretta v. United States, 488 U.S. 364 (1989), Paul v. Davis, 424 U.S. 693 (1976), Korematsu v. United States, 323 U.S. 214 (1944), Schenck v. United States, 249 U.S. 47, 39 S. Ct. 247, 63 L. Ed. 470 (1919), Frohwerk v. United States, 249 U.S. 204 (1919), Debs v. United States, 249 U.S. 211 (1919), Pierce v. United States, 252 U.S. 239 (1920), and Schaefer v. United States, 251 U.S. 466 (1920), Feres v. United States, 340 U.S. 135 (1950), Yakus v. United States, 321 U.S. 414 (1943).

The Plaintiff so denotes a classified restraint on government service, in which an evidentiary finding of the in the First Amendment may concede

to a constitutional limitation, thus, the petitioner has presented a list of examples for peremptory questions of law permissible unto the affirmative requests of "a right to petition government," now, the challenge of overages of the Court, in Ceballos, are significant to the examples of a "public right" in employment: "The Court's overarching objectives, though, are evident. When a citizen enters government service, the citizen by necessity must accept certain limits on his or her freedom. See, e.g. Waters v. Churchill, 511 U.S. 661, 671 (1994) (plurality opinion) ( "[T] he government as sovereign"). Government employers, like private employments words and actions; without it, there would be little choice for the efficient provision of public services. (Cf. Connick, supra, at 143 ("[G]overnment offices could not function if every employment decision became a constitutional matter"). Public employers, moreover, often trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." ( IBID, 547 U.S. 410 (419) (2006).

The Plaintiff may represent a comparative treatment of governmental affairs within reason for interpretations of legislative models, in which a confidentiality of commercial transaction would accomplish a duty bin pursuits of defining a mediated source of "data consents" or "disclosures" versus the retractable statements of First Amendment limitation that are represented in discernment of the follows context of Perry v. Sindermann, 488 U.S. 593, 597 (1972) and Garcetti v. Ceballos: "At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen. The First Amendment limit's the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. See Perry v. Sindermann, 408 U.S. 593, 597 (1972). So long as employees are speaking as citizens about matters of public

concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. See, e.g. Connick, supra, at 147 ("our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the governments.") ( IBID, 547 U.S. 410 (419) (2006).

The Plaintiff may now stipulate a concerted forum of legal titles is established with military officers before all state laws, and the apparent commands in Title 10 U.S.C. Section 1044b. Military Powers of Attorney; requirements for recognition by States, is an effect of legal perfoma to assess all property rights encumbered to the petitioner's Fifth Amendment, in manifest terms of an executive privilege to exert a "full-faith and credit" for the duration of "bonded work" on any assigned construction premises across the nation, as it may be stated: "(a) Instruments to be given legal effect without regard to state law.-A military power of attorney-(1) is exempt from any requirement of form, substance, formality, or recording that is provided for powers of attorney under the laws of a State; and (2) shall be given the same legal affect as a power of attorney prepared and executed in accordance with the laws of the State Concerned. b). Military Power of Attorney-for purposes of this section, a military power of attorney shall contain a statement that sets forth the provisions of subsection (a)". 2). Paragraph (1) shall not be construed to make inapplicable the provisions of subsection (a) to a military power of attorney that does not includes the District of Columbia, the Commonwealth of Puerto Rico, and a possession of the United States." (Added P.L. 103-160, div. A., title V, Section 574 (a), Nov. 30, 1993, 107 Stat. 1674).

The Plaintiff may now assert that an intangible interest in the nature of trade secrets were secured, to all evaluations of petitioner's comprehension of duties, rights, cadence of knowledge, surveys, affidavits of officer, and the entitlements to "official memorandum" to

disclose of "approved work schedules", in the verification of appointment powers to Title 10 U.S.C. Section 1044b. Military Powers of Attorney, Title 10 U.S.C. Section 3034, Vice-General of Staff, Title 10 U.S.C. Section 3036, Chief Engineer of Operations, and the cognizant purpose to apply for an ownership of trade secrets under the following powers of the Taking Clause of the Fifth Amendment: "That intangible property rights protected by state laws are deserving of the protection of the Taking Clause has been implicit in the thinking of this Court: " It is conceivable that [the term 'property' in the Taking Clause] was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercise rights recognize by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the Construction given the phrase has been the latter." United States v. General Motors Corp., 323 U.S. 373, 377-378 (1945)." ( IBID, 547 U.S. 410 (420) (2006).

The Plaintiff now attest to a constitutional protection of the "Courts employee-speech jurisdiction," under the domain of the domain of the court in Garcetti v. Ceballos, and the provincial statement of clarified honors in all declarations of oath that have extended to the fullness of integrity for an assembly of judgments in the following criteria of First Amendment Rights: "The Court's employee-speech jurisprudence protects, of course, the constitutional rights of public employees. Yet the First Amendment interests at stake extend beyond the individual speaker. The Court has acknowledged the importance of promising the public's interest in rectifying the well-informed views of government employees engaging in civic discussion. Pickering again provides an instructive example. The Court characterized its holding as rejecting the attempt of school administrators to "limit teachers' opportunities to contribute to public debate." 391 U.S. , at 573. It also noted that teachers are "the

members of a community most likely to have informed and definite opinions" about school expenditures. Id., at 572. The Court's approach acknowledged the necessity for informed vibrant dialogue in a democratic society. It suggested in addition, that widespread costs may arise when dialogue is repressed." (IBID, 547 U.S. 410 (419) (2006). The Plaintiff so now may affirm a contention for the official rewards, in legal title of public office, for a behest in maintaining the arisen continuity to Title 28 U.S.C. Section 1732, Copy of Officers bond, as the professional standards of Title 10 U.S.C. Section 1044a Authority to Act Notary are to establish standards in development of the First Amendment views on "public-concerned approach" and the "Court's employee speech jurisdiction" may be verified: " a). The persons named in subsection (b) have the general powers of a notary public and of a consul of the United States in the performance of all notarial acts to be executed by any of the following: (1) Members of any of the armed forces. 2). Other persons eligible for legal assistance under the provisions of section 1044 of this title or regulations of the Department of Defense. 3).All adjudants. assistant adjudants. personnel adjudants, including reserve members of the armed forces, including reserve members when not in a duty status. 4). All other members of the  armed forces, including reserve members when not in a duty status. who are designed by regulations of the armed forces or by statute to have those powers. 5). For the performance of notarial acts at locations outside the United States. all employees of a military department or the Cast Guard who are designated by regulations of the Secretary concerned or by stature to have those powers for exercise outside the United States. C). No fee may be paid to or received by any person for the performance of a notarial act authorized in this section. (d) The signature of any such person acting as notary. together with the title of that person's offices, is prima facie evidence that the signature is prima facie evidence that the signature is genuine. that the

person holds the designated title, and that the person is authorized to perform a notarial act." (P.L. 101-510, div. A. title V. Section 551 (a)(1), Nov. 5, 1990. 104 Stat. 1566; amended P.L. 104-201, div. A. title V. Section 573. Sept. 23, 1996, 110 Sta. 2534, P.L. 107-107. div. A. title XI, Section 1101. Dec. 28, 2001. 115 Stat. 1236).

The Plaintiff may now designate an official character to speak within a guideline to the chartered discourse of licensed tenure under a developed standard of Ceballos, to incur rights from all pragmatic speech of public employees for a derived existentialism of importance to "public concern"; the following excerpt of Ceballos is an address to all credible tasks of a dual role known to the public employer for "public services" and a "government entity," as it may be stated in the case: "The large-scale disincentive to Government employees' expression also imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said"). The Court's decisions, then have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions. See, e.g., Ronkin, 483 U.S., at 384( recognizing "the dual role of public employer as a provider of public services and as a government entity operating under constraints of the First Amendment"). Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to "constitutionalize the employee grievance." Connick, 461 U.S. at 154." (IBID, 547 U.S. 410 (420) (2006).

The Plaintiff so maintains a partition of apparent-authority is most onstensibly a benchmark for the qualifications of adjudant officers, within a direct opinion to acquiesce a gain throughout an inspection of legal routes to codified information technology, for the necessary importance

of an assigned receivership for a "bondsman policy" of goverance of labor
construction work schedules. Hereinafter, the Plaintiff so may address an
ascertainable guideline for Title 10 U.S.C. Section 986. Security
Clearances: limitations in concurrence with an enabling precedent to
impart emphasis on a job qualifications of establishment to the "public-
concern approach" and the courts employee speech jurisdiction" of the
case, in Ceballos, as the estimated parameters of intelligence may insert
a proportional test: " (a) prohibition–After October 30, 2000. the
Department of Defense may not grant or renew a security clearance for a
person to whom this section applies who is described in subsection (c ),
(b) covered Persons. –This section applies to following persons: (1) An
officer or employee of the Department of Defense. (2) A member of
Army–Navy. Air Force. or Marine Corps who is on active duty or is an
active status. (3) An officer or employee of a contractor of the
Department of Defense. (c ) Persons disqualified from being granted
security clearances.–A person is described in this subsection if any of the
following applies to that person: (1) The person has been convicted in
any Court of the United States of a crime, was sentenced or imprisoned
for a term exceeding one year, and was incarcerated as a result of that
sentence for not less than one year. (2)The person is an unlawful user of,
or is addicted to, a controlled substance (as defined in section 102 of the
Controlled Substances Act (21 U.S.C. Section 802)), (3). The person is
mentally incompetent, as determined by a mental health professional,
approved by the Department of Defense. (4). The person has been
discharged or dismissed from the Armed Forces under dishonorable
conditions. (d) Waiver Authority.–In a meritorious case an exception to
the prohibition in subsection(a) may be authorized for a person described
in paragraph (1) or (4) of subsection (c ) if there are mitigating factors.
Any such waiver may be authorized only in accordance with standards
and procedures prescribed by, or under the authority of an Executive

Order or other guidance issued by the President. (e) Annual Report.-Not later than February 1 each year, the Secretary of Defense shall submit to the Committees on Armed Services of the Senate and House of Representatives a report identifying each waiver issued under subsection (d) during the preceding year with an explanation for each case of disqualifying factor in subsection (c ) that applied, and the reason for the waiver of the disqualifying factor in subsection (c ) that applied, and the reason for the waiver of the disqualification (Added P.L. 106-398, Sec. 1 [(div. A)], title X, Section 1071 (a)], Oct. 30,2000, 114 Stat. 1654, 1654A-275 amended P.L. 107-107, div. A, title I, Sec. 1048 (c ) (3), Dec. 28, 2001 , 115 Stat. 1226, P.L. 108-375, div. A. title X, Sec. 1062. Oct, 28 2004, 118 Stat. 2056).

The Plaintiff may now entry a disposition on a view of the First Amendment protections, to be expressed within a recommendation of the official decrees of the Ceballos case, on the basis of a grade to inspect the characterizations of surmised tendency to impart a radical empiricism without authorization of a defined protocol in work practice; the added emphasis on areas for constitutional restrictions of professional speech are indicated work practices; the added emphasis on areas for constitutional restrictions of professional speech are indicated, in Ceballos, according to the following preparatory statement: "The Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work. See, e.g., Givhon v. Western Line Consol. School District, 439 U.S. 410, 414 (1979). Many citizens so much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like "any member of the general public," Pickering, 391 U.S., at 573, to hold that all speech within the office is automatically exposed to restriction." (IBID, 547 U.S. 410 (421) (2006).

The Plaintiff so does elect to preside over an honorarium in Title 41 U.S.C. Section 432, Value engineering, with all compelling formulae of licensure to prescribed works of "authorized bondsman" unto the Title 10 U.S.C. Section 1044 (b) Authority to Act as a Notary, within a consistent range of all restricted areas in residency of "military jurisdiction", and the eclipse of facilitated premises upon which all occasions of additional disciplines of scientific inquiry were a happenstance for administrative overlays of master-technician, then the optimum stance of accrued period for petitioner's tenure, in a "Chief Engineer of Operations" is added to the burden on Defendant, the U.S. Government, for the designated approach to credible efforts of planning compensation schedules on grade to Section 432, as it may de determined: "(a) In general-Each executive agency, performed by qualified agency or contractor personnel, directed at improving, reliability, quality, safety, and life cycle costs." (P.L. 93-400,Section 36, as added P.L. 104-106, Div. D, Title XLIII, Section 4306(a), Feb. 10, 1996, 110 Stat. 665).

The Plaintiff may predict within certified inset of formal representations of First Amendment privileges a declared evidence of participatory writs in occupational status are to remain under an oath, such as the case is purposeful "intent" for a relationship of motive, the following excerpt of quote from Ceballos may verify: "The memo concerned the subject matter of Ceballos' employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job. See, e.g. ibid; Givhon, supra, at 714. As the Court noted in Pickering: "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allocated to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."391 U.S., at 572. The same is true of many other categories of public employees." (IBID, 547 U.S. 410 (421) (2006).

The Plaintiff may predict within a certified inset of formal representations of First Amendment privileges a declared evidence of participatory writs in occupational status are to remain under an oath, such as the case is purposeful "intent" for a relationship of motive, the following except of quote from Ceballos may verify: "The memo concerned the subject matter of Ceballos' employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job. See, e.g. ibid. ; Givhon, supra, at 714. As the Court noted in Pickering: "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allocated to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak and freely on such questions without fear of retaliatory dismissal. The same is true of many other categories of public employees." IBID, 547 U.S. 410 (421) (2006).

The Plaintiff may exhibit a categorical grade of official memorandum, in which a communication schedule designated ethical language should indicate a basis for the economic purchase of contractual fees for all adjudant labors, and the clearances of for mal procedures to coincide with an announcement of the conciliatory range of formal procedures to coincide with announcement of the contractual settlement of collections in behalf of petitioner; these facts and the more decisive elements in the eye of the economic purse of law are rendered unto a similarity, in abided treatment of constitutional norms to be inferred by the Court, in Ceballos: "The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. See Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum's pursuant to his duties as a prosecutor"). That consideration –the fact Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case–distinguishes Ceballos' case from those in which the First

Amendment purposes, and the constitution does not insulate their communications from employer discipline." (IBID, 547 U.S. 410 (421) (2006).

The Plaintiff so may advise for an official motion to proceed in line with Local Rule 66.1(e), Administration of Estate; Local Rule 83.7, Review of Orders in Administrative Agencies, Boards, Commissions and Officers,(Inclusive of Social Security Administration), to apply a corrective insertion of averments for a receipt of equitable remedies to intercede upon the antecedent model of governmental approach to "contractual payments" in which a projection of default judgment for FRCP( Federal Rules of Civil Procedure), Rule 55, Default Judgment, would suggest that a debunk statement to the arisal of "bids-contract" obligations to the Plaintiff are not to be held in a contrariwise position of economic settlement, on no basis of functional interpretation of demand, or on the apparent contractual stipulations in draft selection of briefs reports to the U.S. Army Corps of Engineer's Offices pursuant to the "bondsman" regulation of Title  10 U.S.C. Section 1044(a), and the authorization to field inspect, land survey, draft, and presume, all entailed matters of construction engineering under an advisement of "military powers of attorney that are held in subject to Title 10 Section 1044(b) Military Powers of Attorney( P.L. 103-160, div. A, title V, Sec. 574(a), Nov. 30, 1993, 107 Stat. 6674), and the authorizations of Title 41 U.S.C. Section 254(d) Examinations of Records of Contractor, under guide of the following stipulations: "(A) Agency Authority- (1) The head of an executive agency, acting through on authorized representative, is authorized to inspect the plant and audit the records of- A). a contractor performing a cost-reimbursement, incentive, time-and-materials, labor-hour, or price-redeterminable contract, or any combination of such contracts, made by that executive agency under this subchapter; and (B) a subcontractor performing any cost-reimbursement , incentive, time-and-

materials, labor-hour, or any combination of such contract, or any combination of such subcontract under a contract referred t in subparagraph (A)(2) the head of an executive agency, acting through an authorized representative, is authorized, for the purpose of evaluating the accuracy, completeness, and currency of certified or pricing data required to be subcontract, to examine all records of the contractor or subcontractor related to-(a) the proposal for the contract or subcontract; (B) the discussion conducted on the proposal; (C ) pricing of the contractor or subcontractor; or (D) performance of the contract.(June 30, 1949, c.288, title III, Sec. 304C, as-added and amended Oct. 13, 1984, P.L. 104-106, Div. (D), Title XLIII, Sec. 4321(e) (5), 110 Stat. 675; Sept. 23, 1996, P.L.104-202, Div. A, Title VIII, Sec. 808(b), 110 Stat. 2607). The Plaintiff so contends for the Local District Court of Kansas, Eighth District, to asses a direct posture of Defendant, U.S. Government, in the assessment of an erroneuos approach to the mediated terms of codifying "expertise" to an official hearing of dosage profiles of petitioner, inclusive of an array of official inter-departmental memoranda in which specifications of authorized duties were speculated to an insurgent provision of combatant tactern. Henceforth, the advisements to expertise within Army professionalism would assess in compensatory regimes of cause for the exact nature of entitlement; a duty within data receipts of forecasted schedules of formal proposal for affidavit memoranda on Title 5 U.S.C. Sections 5313, GS-Levels V or more, and Title Sections 5507, Affidavits of Officers, to convey all possible sourcing of a governmental approach to the suitable testimony of remittur of federal salary would be executed, in accordance with the auspice of constitutional demands rendered unto Title 28 U.S.C. Section 1746 , Unsworn Declarations under penalty of perjury(Added 94-550, Section 1 (a), Oct. 18, 1976, 90 Stat. 2534) and the acclaimed personage of constitutional duties to suffice in an owed prioritization of First Amendment protections for effects of

American citizens to the public workplaces; the conferences of a suggested remand, in the court of Ceballos are the figurative grade on all penalties to be assessed against the Government, as it may be stated: "Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do . It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties that might have been enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.. Cf Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 83 (1995) ("When the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes.") (IBID, 547 U.S. 410 (421) (2006).

The Plaintiff so motions to explain an equitable remedy does exist in all conditional responses of averment, as they may indicate the First Amendment is appropriately beheld to communicate the "right to petition government" within a credible image of faceted personality, which should behold in the active role to enjoin a participatory government, with the extended values of contractual obligations said in the necessary substrate of political terms, such as the petitioner now should enlist all rules to pertain unto Title 40 U.S.C. Sec. 1314, Easements, as they would qualify Plaintiff's "executive agency" in a government-bid-corporation", the acclimation of a bid-contract partnership is to be realized for the Plaintiff under the following requirements of contractual power, now obligated to Title 40 U.S.C. Section 1314, Easements: "1). Executive Agency- the term "executive agency" means an executive department or independent establishment in the executive branch of the Federal Government,

including a wholly owned government corporation. (2) Real property of
the Government -the term" real property of the Government "excludes-
(A) public land (including a minerals, vegatative, and other resources, in
the United States, including-(I)land reserved or dedicated for national
forest purposes; ii) land the Secretary of Interior administers or
supervises in accordance with the Act of August 25, 1916( 16 U.S.C.
1,2,3,4) (known as the National Park Service Organic Act); (iii). Indian
owned trust and restricted land; and (iv), land the Government acquires
primarily for fish and wildlife conservation purposes and the Secretary
administers; (B) land withdrawn from the public domain primarily under
the jurisdiction of the Secretary; and (C ) land acquired for national forest
purposes; (F) limitation on issuance of rights of way.-Rights of way over;
under, and through public lands in the National Forest System away not
be granted under this section.(P.L. 107-217,Sec, 1, August 21, 2002, 116
Stat. 1139).

The Plaintiff so motions to the local District Court of Kansas, Eighth
District, for the enactment of an legal observation of all statutory
requirements, in which the official duties of petitioner's rights are
explained positively, and with unequivocal stances in managerial protocol
of the comprehensive demand to affirm a Director's jurisdiction of
military, under the binding oath of Title 10 U.S.C. Section 2304(a), "Head
of Agency," Title 5 U.S.C. Section 6339, The Exceptions For Leave in
Heads of Department, Title 10 U.S.C. Section 3034, Adjudant of Officer in
Vice-Chief of Staff, Title 40 U.S.C. Section 11331,Responsibilities For
Federal Information Systems Standards (P.L. 107-217, Section 1, Aug. 21,
2002, 116 Stat. 1243; P.L. 107-347, Title III, Sec. 302(a), Dec. 17, 2002,
166 Stat. 2956). Hereinafter, the Plaintiff so maintains an obligatory right
to purview a relinquishment of "economic holds" placed upon layman
work schedules due to the Government's views in Department of Army v.
Blue Fox, Inc., 525 U.S. 255 (264) (1999) for any surety to take pursuit of

economic rights in laborers of dynamic interest to the contractual nomenclature of a military construction project so designated to field supervision under Title 10 U.S.C. section 1044(b) Military Power Of Attorney, and Title 10 U.S.C. Section 1044(a), Authority to Act as a Notary.

The Plaintiff so constitutes a particular review of official memoranda should be held to a discovery order, as the integral relationship of posited testimony, within a guideline of one's authorized notary, is the most causal prediction on a subject matter of relevancy; herein, the challenges of Ceballos to ascertain an intelligence clearance of key topics within a circumstance of "expert-master witness" for the austere communications of leadership profile to not be excised by any illusory criticism offered by their employees."461 U.S., at 149. The dictates of sound judgment are reinforced by the powerful network of legislative enactments-such as whistle-blower protection laws and labor codes-available to those who seek to expose wrongdoing. See, e.g., 5 U.S.C. Section 2302(b)(8); (Al. Govt. Code Ann. Section S547.8 (West 2005); (all lab Code Ann. Sec. 1102.5 (West Supp. 2006). Cases involving government attorneys implicate additional safeguards in the form of, for example, rules of conduct and constitutional obligations apart from the First Amendment. See, e.g. , Cal. Rule of Prof. Conduct 5-110 (2005) ("A member in government service shall not institute or cause to be instituted criminal charges are not supported by probable cause" ); Brady v. Maryland, 373 U.S. 83 (1963). (IBID, 547 U.S. 410 (425) (2006).

The Plaintiff so motions for a statutory overview of decided elements on the broadened scope of liability set forth within the industrial management of Title 41 U.S.C. Public Contracts, to assign a type of case postulates, in findings of a subsequent theory on the Government's approach to accepting minority's in bid-contract performances. Henceforth, the aide of lawfulness and professionalism is also the

burgeoning presumption of a casted professionalism in which a credibility test on all criteria of labor rights in the public sector have been explained to the formulary speculative of legal survey, for the following cases, Department of Army v. Blue Fox, Inc., 525 U.S. 255 (264) (1999), General Building Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 396 (1981), Adarand Const. Inc. v. Pena, 515 U.S. 200 (1995), Furnco Construction Corp. v. Waters, 438 U.S. 567,(1977), Russello v. United States, 446 U.S. 16 (1983), Runyon v. McCrary, 427 U.S. 160 (1975), and the consideration to follow in stare decisis for a decided judgment of Adarand Const. Inc. v. Pena, 515 U.S. 200 (1995).

The Plaintiff so motions for an assembly of precedence on a constitutional domain of apparent rights, in FRCP (Federal Rule of Civil Procedure), Rule 45, Subpoena, to be assigned to the "issuer of subpoena", and the categorical posture of authorized santions so imported to subsection (c ), protecting a person to a subpoena are now concerned with the leading case of Richland Security Service v. Cherttoff, 553 U.S. 571, (2008); the broadened concern with an affirmative character of enforcing a subpoena under all obligations, to surround the relevancy of evidence is now made a provincial scale of the Equal Access to Justice Act (EAJA), 5 U.S.C. Section 504(a)(1) (2006 ed.) and Title 28 U.S.C. Section 2412 (d)(1)(A) (2000ed.). In conjunction with sub-section (c ), Protecting a person subject to subpoena under Rule 45, (FRCP), the Plaintiff may now submit an imposed duty on the Defendant, U.S.Government, for the advisory status in disclosure of adminstrative rules of onus in liability status most nconferred to (ACTS) of Congressional Powers, such as the case in Chertoff, now may speak: "The question presented in this case is whether the Equal Access to Jiustice Act (EAJA), 5 U.S.C. Section 504(a)(1) (2006 ed.) and 28 U.S.C. Section 2412(d) (1)(A) (2006 ed.), allows a prevailing party in a case brought by or against the Government to recover fees for paralegal servces at  the

market rate for such servises or only at their cost to the party's attorney. The United States Court of Appeals for the Fedral circuit limited recovery to the attorney cost. 472 F. 3d 1370 (2206). We reversed." (Chertoff, 553 U.S. 571 (573) (2008).

The Plaintif so may state a claim for assignment of liablitiy status against the Defendant, U.S.Government, did arise within a guideline to the case of Chertoff on the basis of Title 10 U.S.C. Section 3034, Vice-Chief of Staff, and the afforded degree veneration to be called unto jurisdictional issues of local Rule 6.1 Timeliness, by the invoked powers of Title 10 U.S.C. Section 14508(e), Exceptions To the Retirement Lists of State Adjudants and Other Adjudants; the culminating question of In Re Wilson is affirmed by the drawn terms of jurisdictional limits in all adhesive powers of courts, to give legal tender of reproof for the duty-status of procedural due process in Title 28 U.S.C. Section 636(a), Jurisdiction, Powers, and Temporary Assignments; Title 28 U.S.C. Section 1733, Government Records and Books; Title 28 U.S.C. Section 1736, Congressional Journal Records; the FRCP(Federal Rules of Civil Procedure),Rule 44, Proving An Official Records, and Title 5 U.S.C. Section 3106, Employment of Attorneys: Restrictions, according to (P.L 89-554, Sept. 6, 1966,80 Stat. 465) and the prevailing status of Revised Statutes of Title 5 U.S.C. in sections 189, Sections 365, and Title 5 U.S.C Section 49.

The Plantiff so motions for an enforceable sanction on an examination of the Service Contract Act of 1965, 41 U.S.C. Section 3541, and the subsequent terms for reimbursement of the (EAJA) were admitted for costs of attorney's fees as follows: "Under EAJA, "[o]n agency that conducts an advesary adjudication shall award, to a previling party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or

that special circumstances make an award unjust." 5 U.S.C. Section 504 (a)(1). In addition for 523.8 hours of paralegal work on the EAJA application itself." (Chertoff, 553 U.S. 571 (573) (2008).

The Palintiff so concerns all latitude with regards to a cost recovery system to be limited for an issuance of authoritative subpoenas and the concepts of attorney's fees set in precednts to a formualted opinion on the (EAJA), as it may be cited in Cheroff, at (576): "5 U.S.C. Section 504 (a) (1). EAJA defines "fees and other expenses" as follows: "Fees and other expenses includes the reasonable expenses of expert witness, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the agency o be necessary for the preparation of the pary's case, and reasonable attorney or agent fees (Te amount of fees awarded under this section shall be based on prevailing market rates for the kind and quality of the services furnished, except that (I) no expert witnesses paid by the agency involved, and (ii) attorney or agent fees shall not be awarded in excess of $125 per hour unless the agency determines by regulation that on increases in the cost of living or a special factor,such as the limited availability of qualified attorneys or agents for the proceedings involved, justices a higher fee.)" Section 504 (b) (1)(A)." (Chertoff, 553 U.S. 571 (576–577) (2008).

The Plaintiff so moves to attach costs to assembly of financial terms,in which the specific question of prevaling market rates" are in closure to estimates for the anounced creditials of "person", in expert master witness to the use of "In Re Wilson", under all testimony for local Rule 66.1(e), Administration of Estate and local Rule 83.7 (Review of Orders of Administrative Agencies, Boards, Commissions and Officers( including of Social Security Adminsitration), to assert the constient demands of an administrative management of attorney's rights ina "Pro Hac vice", local Rule for pretrial motions, and the subsequent reports of bhackground history in ownership of sole–priopietor rules for President and CEO of the

Wilson Law Firm, P.C., Inc., located at 899103 N.W. Washington Ave. Washington D. C. 20305. Hereinafter, the Plaintiff so motions to uphold all cost expenditures for concimitant purposes of costs, travel, authoritative relationships of commitments to procure a list of office materials, and file management to which the extended relationships of construed domain for imperative values of Chertoff are now applicable, at 577: "We find the Government's fractured interpretation of the statute unpersuasive. Contrary to the Government's contention, Section 504 (b)(1)(A) does not clearly distinguish between the rates which "fees" and "other expenses" are reimbursed. Although the statute doews refer to the "reasonable cost" of any study, analysis, engineering report, toest or project", Cogress may reasonable expenses of expert witnesses," while the parenthetical charaterizes expert compensation as "fees". (Chertoff, 553 U.S. 571 (577–578) (2008).

The Plaintiff may confirm a direct entry of accessible dispensation methods that were announced, to Chertof, for the agreement of Defendant's view on Section 504 (b)(1)(A),to any reside in an implicationm opf any authorized reimbursement of "prevailing market rates", however, the Court's view onassigned costs of paralegal fees are in aim of the contextual report so identified in the following excerpt quotation for an adjusted opinion on FRCP (Federal Rules of Civil Procedure), Rule 57, Judgment and Costs, as it may be promulgated in decree of Chertoff: "Surely paralegals are more analagous to attorneys, experts, and agents, than to studies, analysis, reports, tests, and projects. Even the Government's brief, which incants the term "paralegal expenses," e.g. Brief for Respondent 4,5,6,7,8,9, 10,11,12,slips up once and refers to them as "fees", see id.,at 35("As the Court of Appeals explained,treating paralegal fees as attorney performance of legal services' under the EAJA..."). But even if we agreed that EAJA limited a prevailing party's recovery for paralegal fee to "reasonable cost", it

cerainly would not follow that the cost should be measured from the perspective of the party's attorney." (Chertoff, 553 U.S. 571 (579) (2008). The Plaintioff so motions for an accredited entittlement of equitable remedy in the dispensation of enlisted models of claimant matters under citalbe stuts f Missouri v. Jenkins, 491 U.S. 274 (1988), a determinant interest of litigant rewards in paralegal costs that were adjsusted to a foemal interpretation of amenable recovery within the penalties of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Section 3106, Exemptions for Employing Attorney's Fees,(P.L. 89–554,September 6, 1966, 80 Stat. 415), as the predictive sources of federal statutes to enact an adjudication methods for the install of petitioner's rights to jurisdictional issues that prevail, in Chertoff, at 580, adnthe Title 28 U.S.C. Section 1656, Creation of new distinction or division or transfer ofterritory; lien enforcement (June 25, 1948, c. 646, 62 Stat. 944; Nov. 6, 1978, P.L. 95–598, Title II, Section 242, 92 Stat. 2671).Hereunto, the challenges of Chertoff are inset to favor of petitioner's reputation for a gaurdianship of legal professionalism, as well as the integrated aspects of educational laws, from which a survey of judiciary rules would assist in the responsiveness of the apparent–authority that is subletted to Title 5 U.S.C. Section 3106, and the imparture of Chertoff: " In Missouri v.Jenkins, 491 U.S. 274 (1989), we consider whether litigants could recover paralegal fees under trhe Civil Right's Attorney Fees Awards Act of 1976, 42 U.S.C. Section 1988. Section 1988 prvides tht "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." We concluded that the term "attorney's fee" in Section 1988 "cannot have been meant to compensate only work performed personally by members of the bar." 491 U.S., at 285. Although separate billing for paralegals had become "increasingly widespread", id. at 286 (internalquotation marks omitted), attorney's fees had traditionally subsumed both the attorney's personal

lablor and the labor of paralegals and other individuals who contributied
to the attorney's work, see id., at 285. We were so confident that
Congress had given the term "attorney's fees" this traditional gloss that
we declared it "self-evident" that the term embraced the fees of
paralegals as well as attorneys'." (Chertoff, 553 U.S. 571 (580) (2008).
The Plaintiff so motions to follow after a "self-evident" rule tobe
prescribed by the formal interpretations of attorney fees" to include
"paralegals fees", and the resolve in a cos-ependiture to make
representation of this In Re matter, was to the administrative hearing of
Title 5 U.S.C. Section 3106, Exemptions For Employment of Attorneys
Fees (P.L. 89-554, September 6, 1966, 80 Stat. 415), an appropriate
dscussion for the petitioner to exmaine all cost of entitilement to a "self-
representation" of the "Pro Hac Vice" motion for the local District Court of
Kansas, Eight District, and the appurtenant terms of Cherthoff to disclose
on the duty to affirmaive rules of Missouri v. Jenkins, as follows: "indeed,
the Government 's view of Jenkins was rejencted by the Court just two
years after Jenkins was handed down. In West Virginia Univ. Hospitals Inc.
v. Casey, 499 U.S. 83, the petitioner sounght to recover expert witness
fees from the Commonwelath of Pennsylvannia pursuant to Section 1988.
The Petitioner looked to Jenkins for the proposition that the "broad
remedial purposes" of Section 1988 allowed the recovery of fees not
expressly authorized by statute. The Court rejected that interpretation of
Jenkins: "The issue [in Jenkins] was not, as [petitioner] contends, whether
we would permit our perception of the 'policy' of the statute to overcome
its 'plain language'. It was not remotely plain in Jenkins that the phrase
'attorney's fee' did not include charges for lae clerk and paralegal
services. Such services,like the services of 'secretaries, messengers,
librarians, janitors, and others whose labor contributes to the work
product, had traditionally been included in calculation of the lawyer's
hourly rates. Only recently had there arisen "the increaingly widespread

custom of separately billing for [such] services'. By contrast, there has never been, to our knowledge, a practice of including the cost of expert services withjin attorneys' hourly rates. There was also no record in Jenkins– as there is a legnhty record here–of statutory usage that recognizes a distinction between the charges at issue and attorney's fees." Casey, supra, at 99 (quoting 491 U.S. , at 285–286; some internal quotation marks and citations omitted)." (Chertoff, 553 U.S. 571 (582) (2008).

The Plaintiff so motions for a designated opinion of the Court, in Cherthoff, to balance on a conditional response to the Government's view of "market–based recovery" for paralegal servises by the examination of Title 5 U.S.C. Section 504(b)(1)(A), the explanation provided in accomplishment of a concurring opinion delivered from Justice Alito: "By contrast, there has never been, to our knowledge, a practice of including the cost of expert services within attorneys' hourly rates. There was also no record in Jenkins– as there is a lengthy record here– of statutory usage that recognizes a distinction between the charges at issue and attorney's fees." Casey, supra, at 99 (quoting 491 U.S., at 285–286; some internal quotation marks and citations omited)." (Chertoff, 553 U.S. 571 (582) (2008).

The Plaintiff so motions for a designted opinion of the Court, in Cherthoff, to balance on a conditional response to the Government's view of "market–based recovery" for paralegal services, by the examination of Title 5 U.S.C. Section 504 (b) (1)(A), the explanation provided in accomplishment of a concurring opinion delivered from Justice Alito: "We find the Government's policy rationale for recovery at attorney cost likewise unpersuasive. The Government argues that market–based recovery would distort litigant incentives because EAJA would cap paralegal and attorney's fees at the same rate. See 5 U.S.C. Sec. 504(b)(1)(A)( '[A] ttorney are agent fees that shall not be awarded in

excess of $125 per hour unless the agency determines by regulation at an increase in the cost living or a special factor, such as the limited availibility of qualified attorneys or agents for the proceedings involved, justifies a higher fee"). The Government observes that paralegal rates are lower than rates for attorney operating in the same market. If EAJA reimbursed both attorney operating in the same market. If EAJA reimbursed both attorney time and paralegal time at market rates, then the cap would clip more off the top of the attorney's rates than the paralegal rates. According to nthe Government, a market-based scheme would encourage litigants to shift an inefficient amount of attorney work to paralegals, since paralegal fees could be recovered at a greater percentage of their full market value." (Chertoff, 553 U.S. 571 (587) (2008).

The Plaintiff may acclaim in a final decision on the model rules cited in the Senate Report, to describe all Administrative Conferences to approach a paralegal cost, under the examination of Chertoff; the petitioner uptakes a criticism of Government's interpretation of status, at (588): "We also question the practical feasibility of the Government's interpretation of the statute. The Board in this case relied on the Internet for data on paralegal salaries in the District of Columbia, but the Government fails to explain why a law firm's cost should be limited to salary.  The benefits and perks with which a firm compensates its staff come out of the bottom line no less than salary. The Government has offered no solution to this accounting problem, and we do to believe that solutions are readily tobe found. Market practices provided by for make transperent bais for calculating a prevaling party's recovery under EAJA. It strains credulity that Congress would have abandoned this predictable, workable framework for the uncertain and complex accounting requirements that a cost-based rule would inflict on litigants, their attorneys, administrative agencies, and courts. (Chertoff, 553 U.S. 571 (589) (2008).

The Plaintiff so commends in a court rendered judgment of Richlin Security Service Co. v. Cherthoff, that an equitable relief is obtainable for all "prevailing market rates" in assessment of fees and costs most assocated with the self-reprentation of "Pro Hac Vice", and the leave of attorney requirments to be afforded to nature of this In Re matter, under Title 5 U.S.C. Section 3106,(P.L. 89554, September 6, 1966, 80 Stat. 415); the petitioner also remains in support of considerable views on liabilities incurred unto the Civil Rights Attorney Fees Awards Act of 1976, 42 U.S.C. Section 1988, and the court's interpretation of Missouri v. Jenkins, 491 U.S.274 (1989) onward to a prevailing source of financial awards to be installed with responsiveness to the concurring opinion of Chertoff. Hereinafter, the Plaintiff so concludes on a decisive request of newly iniatilized receipts of awrds findings, on the basis of a command in the opinion of Cherthoff, and the following particulars of Smith v. United States, 507 U.S. 197, 201-203(1993) are to compell interactives of "closely related statutes" to the case of "invoking" the sovereign immunity canon" for the definitions of an undermined relationship to the meaning of the statutory language. Therefore, the Plaintiff's claims in all domain of acual damages may pursuit upon a closure of demands in FRCP (Federal Rules of Civil Procedure), Rule 54, Judgment Costs, to additative the posited statements of observatory route for a claimant value in conjunction with Title 5 U.S.C. Section 3106, and the line of cases to be supported by alleged remarks of Chertoff, at 589-590: "In this case, traditional tools of statutory construction and considerations of stare decisis compel the conclusion that paralegal fees are recoverable as attorney's fees at their "prevailing markets" 5 U.S.C. Section 504 (b)(1)(A). There is no need for us to resort to the sovereign immunity canon because there is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe. For those reasons we hold that a prevailing party that satisfies EAJA's other

requirements may recover its paralegal fees from the Government at market rates. The Board's contrary decision was error, and the Federal Circuit is reversed, and this case is remanded for further proceedings consistent with this opinion. It is so ordered." (Chertoff, 553 U.S. 571 (590) (2008).

The Plaintiff so motions for a DeclaratoryJudgment of FRCP(Federal Rules of Civil Procedure), Rule 57, and all compensational rights that may be adjudicated by the case of In Re Wilson, on the contentions of Rule 67, Deposit in Court,under the nominated amount for actual damages that is held sufficiently to the adhered terms of fines for artorneys fees to be assessed against the Defendant. Hereinafter, the actual damages are a nominal rate, in concurrence with all travel expenses, costs expendtures, delays,and the restrictions of attorney representation that stem from the statutory provisions of Title 5 U.S.C. Section 3106, Exemptions For Employment of Attorneys Fees (P.L. 89–554, September 6, 1966, 80 Stat. 415), and the Civil Rights Attorney Fees Awards Act of 1976, 42 U.S.C. Section 1988, the court's interpretation of Missouri v. Jenkins, 491 U.S.274 (1989). Thereunto, the Plaintiff so demands a fine from the Defendant, U.S. Government, in conjunction with all aforementioned contentions on liability, and the enforcement of the "EAJA would cap paralegal and attorney's fees at the same rate. See 5 U.S.C. Sec. 504(b)(1)(A) ("Attorneys are agent fees that shall not be awarded in excess of $125 per hour unless the agency determines by regulation at an increase in the cost living or a special factor, such as the limited availability of qualified attorneys or agents for the proceedings involved, justifies a higher fee"); the presumed excerpt of Chertoff, 553 U.S. 571 (587) (2008). The Plaintiff now seeks $15,000.00/week for 400weeks, or total sum of 6 million dollars in a flat rate to be paid in lump-sum. Henceforth, the local District Court of Kansas, Eighth District, may reserve judgment on all fines for use of Court, in accordance with a petition for a

money judgment of a jury trial, as denoted by Section 717 of the Civil Rights Act of 1964,42 U.S.C., Title 28 U.S.C. Section 1343, Deprivation of Rights; Title 28 U.S.C. Section 1346, U.S. Government as Defendant; Title 28 U.S.C. Section 1349; 2000(e)-16(1970 ed. Supp. IV; Title 10 U.S.C. Section 3034,Vice-Chief of Staff; Title 10 U.S.C. Section 2721, Property; Title 10 U.S.C. Section 2738(a), Designated Accountable Person; Title 5 U.S.C. Section 2780, Debt Collection; Title 10 U.S.C. 3036, Chief Engineer of Army Corpse of Engineers; Title 10 U.S.C. Section 1044(a), Notary; Title 10 U.S.C. Section 1044(b), Military Powers of Attorney; Title 10 U.S.C. Section 2802, Military Construction Projects; Title 10 U.S.C. Section 2304(B)(1), Javits-Wagner-O'Day Act; Title 41 U.S.C. Section 49; Title 5 U.S.C. 5108, Annual Adjustments of Pay Increases; Title 5 U.S.C. Section 5318, Pay Scales for GS-Level V or more; Title 28 U.S.C. Section 1333, Prize, Admiralty, and Maritime cases, Civil Service Reform Act, ("CSRA"), 5 U.S.C. Section 1703 (b)(1) (2000), and the developed stage of formal requests to impugn testimony for the criminal liabilities on the basis of Title 18 U.S.C. Section 2333(e), Estoppel for the Laws of the United States, Title 18 U.S.C. 2334, Federal Jurisdiction, and Title 18 U.S.C. Section 1981, for the judicial review of Title 42 U.S.C. Section 1985. The Plaintiff may now set an amount of fines and penalties for attorney's fees in use of local District Court of Kansas, Eight District, at the causation limit of $8 million dollars, therein, a controlling standard on an effective measurement of deterence to all notices of legal tantamount in cases of supported verification of associated economic purse, for a duration of adjudication procedures that are set to the due course of civil trial. Hereinafter, the Plaintiff has clarified a pronounced terms for settlement agreements, to follow from a line of civil actions of due process of law that are desingated to formalized standards of administrative judgments on the basis of Horn v. United States Department of Army, 284 F. Supp. 1 (2003), United States v. Testan, 424

U.S. 392 (1976), U.S. v. Will, 449 U.S. 200, (1980), Gomez-Rodridguez v. Potter, 128 S. Ct 1931 (1991) (2008), Muller v. Lujan, 928 F. 2d. 207 (1991), Sullivan v. United States, 4 Cl. Ct. 70 (1983), Runyon v. McCrary, 427 U.S. 160, 168-170 (1976); Leopold v. United States Civil Serv. Commission, 450 F. Supp. 154 (1978), Service v. Dulles, 354 U.S. 363 (1957), Williams v. Metzler, 132 F.3d 973(3rd Cir. 1997), General Building Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 396 (1982), Blue Fox Inc. v. Department of Army, 505 U.S. 200 (1995), and Adarand Const. Inc. v. Pena, 515 U.S. (200), (1995), for the Comptroller General's Offices of Title 5 U.S.C. Appendix I, Section 805, to all conditions of federal liability that may be accessed under entitlements of the following terms for equitable relief: Title 5 U.S.C. Section 5551, Lump-Sum Payments; Title 5 U.S.C. 5595, The Federal Employee's Salary Act; Title 5 U.S.C. 5995, The Federal Pay Salary Act; Title 5 U.S.C. Section 5301, Policy; Title 5 U.S.C. Section 6658, The Equal Pay Act or "Back Pay"; Title 5 U.S.C. Section 6339, Additional Leave transfer programs; Title 5 U.S.C. Section 6323, Military leave; Reserve and National Guardsmen; Title 5 U.S.C. Section 6304, Annual leave accumulation; Title 5 U.S.C. Section 8102, Compensation for disability or death of employee; Title 5 U.S.C. Section 7208, Labor Management Relations; Title 5 U.S.C. Section 7303 Suitability and Security. Henceforth, the Plaintiff so motions for actual damages in all non-jury administrative services judgments, to be rendered with a Declaratory Judgment of FRCP(Federal Rules of Civil Procedure), Rule 57, under no delay for all assigned incurence of debt impinged on the Defendant, U.S. Government, for a civil penalty of negligent lack of payments to federal salary, on a dispensation of FRCP(Federal Rules of Civil Procedure), Rule 67, Money Judgments, the voluntary payment schedule of $88,300.00/hr for 43 years, the pro rata amount of $299 Billion dollars for a Veteran's of Foreign Service Award, and a set of legal terms to tender for all immediate notices of enforcement of final

judgment be rendered to the Office of U.S. Clerk of the local District Court of Kansas, Eighth District.

The Plaintiff so motions for the local District Court of Kansas, Eighth District, to convene a jury trial on Title VII of the Revised Statutes from Section 717 of the Civil Rights Act of 1964, the amended section for Title 42 U.S.C. Section 2000(e)-2, Unlawful employment practices. Hereinafter, the Plaintiff may confirm all judicial reports of American Law for a relevant case synopsis of evidentiary report to enlist a claimant value of provincial standard on the burden of presumptions in which a comport of duties to affirm a legal stage of qualifying the demeanor of flagarant violations of moral wrongdoing and the clinical state of lex loci to all interconnected facts of involuntary separation from the federal workplace are now in conjecture, to the following terms of Section 2000e-2: " (a) Employer practices-"It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment , because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his emplyment or applicants for emplyment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." (P.L. 88-352, Title VII, Sec. 703, July 2, 1964, 78 Stat. 255; P.L 92-26, Sec. 8(a), (b), Mar. 24 , 1972, 86 Stat. 109; P.L 102-166, Title I, Sections 105(a) 106,107(a), 108, Nov. 21, 1991, 105 Stat. 1074-1076.)

The Plaintiff has previously cited in averments of brief to quote of a qualified isntruction to an official filing of a jury trial case for the EEOE(Equal Employment Opportunity Enforcement), the compliance iniative that is to disclose upon named Executive Department, the

U.S.D.O.D. (Department of Defense), for a judicial review of the case in
Warren v. Department of Army, 867 F.2d. 1156 (8th Cir. 1989). Herein,
the Plaintiff may interim a consideration of classified schedules of "intent"
requirements for all applied conditions of report on civil litigation of
origin in cases on Title 42 U.S.C. Section 1983.

The Plaintiff may state a compelling source of an EEOC complaint, under
Title 42 U.S.C. Section 2000(e)-16(c), did evolve within an adjudged
formality of caprice terms to the Executive privilege were made an
assembly of prima facie terms for an admissibility standard of jury
instructions in a civil rights trial, on the regard of the involuntary status
of separation from the federal-sector that did occur abruptly in late
December 1983. Furthermore, the apparent question of describing a
burden of proof is acknowledged to as it may be defined for (1)(A): "An
unlawful employment practice based on disparate impact is established
under this subchapter only if-(I) a complaining party demonstrates that a
respondeat uses a particular employment practice that causes a disparate
impact on the basis of race, color, religion, sex, or national origin, and
the respondent fails to demonstrate that the challenged practice is job
related for the position in question and consistent with business
necessity; or (ii) the complaining party makes the demonstration
described in subparagraph (C ) with respect to an alternative employment
practice and the respondent refuses to adopt such alternative
employment practice. (B)( i) With respect to demonstrating that a
particular employment practice causes a disparate impact as described in
subparagraph (A)( I), the complaining party shall demonstrate that each
particular challenged employment practice causes a disparate impact,
expect that if the complaining party shall demonstrate to the court that
the elements of a respondent's decision-making process are not capable
of separation for analysis, the decision-making process may be analyzed
as one employment practice. (ii) If the respondent demonstrates that a

specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity. (C ) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice". (2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter."(P.L. 88-352, Title VII, Sec. 703, July 2, 1964, 78 Stat. 255; P.L 92-26, Sec. 8(a), (b), Mar. 24 , 1972, 86 Stat. 109; P.L 102-166, Title I, Sections 105(a) 106,107(a), 108, Nov. 21, 1991, 105 Stat. 1074-1076.)

 The Plaintiff may affirm a concept of timeliness is met in the obligation for filling a claim for jury trial on all facets of the Civil Rights Legislation of question in the judicial opinion of Warren v. Department of Army: is clarified on a discretionary implication of established principles of 42 U.S.C. Section 2000e-16(c), as it may be mandated: "We must resolve whether the district court erred by dismissing Warren's pro se complaint for lack of subject matter jurisdiction as a result of Warren's failure to name as defendant the Secretary of the Army. At issue in this case in this case are two requirements established by 42 U.S.C. Section 2000e-16(c). First, the section provides that a plaintiff must bring suit within thirty days of receiving notice of an agency's final action. Warren fulfilled this condition when he filed his complaint on May 29,1987."(U.S. Department of Army, 867 F.2d. 1156 (1158), (8th Cir. 1989).

The Plaintiff may also conclude on a formulae of procedural due process that is necessary to describe an intent for lawsuits on section 2000(e)-16(c), the conference to instruction of an advanced plead on an identity of confirmed questions of subject matter jurisdiction in which, the motions for In Re Wilson are descriptive of a clinical resolution of Warren v. Department of Army  may state: "An EEOC decision, "the head of the

department, agency, or unit, as appropriate, shall be the defendant." The EEOC's letter advised Warren: You are notified that if you file a civil action YOU MUST NAME THE APPROPRIATE OFFICIAL AGENCY OR DEPARTMENT HEAD AS THE DEFENDANT." (U.S. Department of Army, 867 F.2d. 1156 (1160), (8th Cir. 1989).

The Plaintiff may aslo provide an example of the following excerpt of Brown v. G.S.A., 245 U.S. 820 (1975), for a pertinent regard of all classified requests of petitioner to reserve a disposition on all interactives of Executive privilege with the Defendant, U.S. Government and the challenges to deliberate over all constitutional duties, to disclose information within context of the "Bill of Attainder Clause", Art. I, Sec. 9, of the U.S. Constitution, and the classification of documents that are within a scope of verification for the Executive Department to assemble a referrendum on the official placement of functional treatment for the F.O.I.A. (Freedom Of Information Act), Title 5 U.S.C. Section 5015(a) did suppose a cumulative period of adminstratiove guidelines for a condensed record of petitioner's accounts be entranced to computer systems for a qualified interpretation of entitlements in a previous work history of Federal Government. Henceforth, the Plaintiff may call on a charge of racial animus, to be regarded as a duty in discrimination against petitioner's rights in the alias names to Honarable Gen. William Edward Wilson, U.S. Armed Forces/U.S. Army. The Plaintiff may disclose of such a contention of discrimination is to persist on the grounds of Section 2000(e)-2, Employment agency practices: "It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for nemployment any individual on the basis of his race, color, religion, sex, or national origin." And, the Subsection (g), National Security, as follows: "Notwithstanding any other provision of this

subchapter, it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual from any position, or for an employer to discharge any individual from any position, or for an employment agency to fail or refuse any individual for employment in any position, or for a labor organization to fail or refuse to refer any individual for employment in any position, if- (1) the occupancy of such position,or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the Ulnited States or any Executive order of the President; and (2) such individual has not fulfilled or has ceased to fufill that requirement." (P.L. 88-352, Title VII, Sec. 703, July 2, 1964, 78 Stat. 255; P.L 92-26, Sec. 8(a), (b), Mar. 24 , 1972, 86 Stat. 109; P.L 102-166, Title I, Sections 105(a) 106,107(a), 108, Nov. 21, 1991, 105 Stat. 1074-1076.)

The Plaintiff may assert that a controlling standard of original plead was held in discussion of averments for Brown v. G.S.A., 245 U.S. 820 (1975), on the verified statement of facts that lead in the examine of judicial review: " The GSA rendered its final decision in March 1973. The agency's Director of Civil Rights informed Brown by letter of his conclusion that considerations of race had not entered the promotional process. The Director's letter told Brown tha tif he chose, he might carry the administrative process further by lodging an appeal with the Board of Appeals and Review of the Civil Service Commission and that, alternatively, he could file suit within 30 days in federal district court. Forty-two days later Brown filed suit in a Federal District Court. The complaint alleged jurisdiction under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U.S.C. Section 2000(e) et seq. (1970) ed.

and Supp IV), "with particular reference to Section 717"; under 28 U.S.C. Section 1331 (general federal-question jurisdition); under the Declaratory Judgment Act, 28 U.S.C. Sections 2201, 2202; and under the Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981." (G.S.A., 245 U.S. 820 (824) (1975).

The Plaintiff may introduce a contention for the grounds of Title 42 U.S.C. Section 1981, Equal Rights under the law, may be officialy stated for a duty in a civil trial as it may be mandated: "(a) Statement of equal rights-All persons within the jurisdiction of the United States hall have the same right in every State and Territory to makle and enforce contracts, to sue , be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other." The terms of subsection(b)"Make and enforce contracts" defined-for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. And the closing terms of subsection(c: Protection against impairment-"The rights protected by this selection are protected against impairment by nongovernmental discrimination and impairment under color of State law. (R.S. Section 1977; P.L. 102-166, Title I, Section 101, Nov. 21, 1991, 105 Stat. 1071).

The Plaintiff so does represent a formal presentation of a civil lawsuit on a jury trial may persist to regard a level of transactions in which the Defendant has extended a barrier to such yields for the employment verification that is necessary for the entrance into more employment agency. Therefore the plaintiff has already defined an longitudinal value of discriminatory practices that have been displayed with the adverse contact with authorities of administrative agencies of Defendant, U.S.

Government, inclusive of the G.S.A. (General Services Administration), for the particular selection of duties in statutory provisions of Section 2000(e)-16(c), sub-section(k), Burden of proof in disparate Impact cases, as it may be stated in the judicial opinion of Brown v. G.S.A. : "If administrative remedies were ineffective, judicial relief from federal employment discrimination was even more problematic before 1972. Although an action seeking to enjoin unconstitutional agency conduct would we, it was doubtful that back pay in other compensatory relief for employment discrimination was available at the time that Congress was considering the 1972 Act. For example, in Gnotta v. United States, 415 F. 2d 1271, the Court of Appeals for the Eighth Circuit had held in 1969 that there was no jurisdictional basis to support the plaintiff's suit alleging that the Corps of Engineers had discriminatorily refused to promote him. Damages for alleged discrimination were held beyond the scope of the Tucker Act, 28 U.S.C. Section 1346, since no express or implied contract was involved. 415 F. 2d, at 1278. And the plaintiff's cause of action under the Administrative Procedure Act, 5 U.S.C. Sections 701-706, and the Mandamus Act, 28 U.S.C. Section 1361, was held to be barred by sovereign immunity, since his claims for promotion would necessarily involve claims against the Treasury: "A suit against an officer of the United States is one against the United States itself' if the decree would operate against" the sovereign; Hawaii v. Gordon, 373 U.S. 57, 58....(1963) [,] or if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U.S. 731, 738,....(1947); or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act,' Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704.....(1949)." 415 F 2d, at 1277." ( G.S.A., 425 U.S. 820(825) (1975). The Plaintiff has already indicated that a civil rights violation is held to a construed end of determinate issues of Title 42 U.S.C. Section 1981,

Equal Rights under the law, may be officially stated for a duty in a civil trial as it may be mandated to a joint and several liability for a discourse of knowledge in the apparency of concerted discrimination on a continous methodology of prohibitions, in focus of the field agencies legal citation of disclosure rules on a National Security Agreement with the background dosage profiles of the Honorable Gen. William Edward Wilson, in a record of Title 42 U.S.C. 2000(e)-2, subsection (g),National Security, and the leading premise for challenging a "denial to access with the premises" would have caused a failure to employ to the field agency for a listing of citable discriminatory practices, inclusive of a denial of information from the alias names to the disclosure of the 1974 Privacy Act, and the following terms of Brown v. G.S.A.: "Thus, the Senate observed: "The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have acess to the courts. In many cases, the employee must overcome a U.S.Government defense of sovering immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt." S. Rep. No. 92- 415, p. 16 (1971). Similarly, the House Committee stated: "There is serious doubt that court review is available to the aggrieved Federal employee. Monetary restittution or back pay is not attainalbe. In promotion situations, a critical area of doscrimination, the promotion is often no longer available." H.R. Rep. Nop. 92-238, p. 25(1971). The conclusion of the committees was reiterated during floor debate. Senator Cranston, coauthor of the amendment relating to nfederal employment, asserted that it would,"[f]or the frst time, permit Federal employees to sue the Federal Government in discrimination cases..." 118 Cong. Rec. 4929 (1972). Senator Williams, sponsor and floor manager of the bill, stated that it "provides, for the first time, to my knowledge, for the right

of an individual to take his compalint to court.' Id. at 4922." ( G.S.A., 425
U.S. 820(828) (1975).

The Plaintiff may also stipulate that a grounds for a Title VII
discrimiantion case may pursuit on two more grounds of prohibitive tasks
of an alleged misconduct in federal agency, inclusive of a source of law
violation for a "racial amimus" on Title 42 U.S.C. Section 1981, and the
following context of Section 2000(e)-2, in subsection (h) Seniority or
merit system; quantity or quality of production; ability tests;
compensation bases on sex and authorized by minimun wage provisions:
"Notwithstanding any other provision of this subchapter,it shall not be an
unlawful employment practice for an employer to apply bdifferent
standards of compensation, or different terms, conditions, or privileges
of employment pursuant to a bona fide seniority or merit system,or a
system which measures earnings by quantity or quality of production or
to employees who work in different locations, provided that such
differences are not the resyult of an intention to discriminate because of
race ,color, religion, sex, or national origin, nor shall it be an unlawful
employment practice for an employer to give and to act upon the results
of any professionally developed ability test provided that such test, its
administration or action upon the results is not designed, intended or
used to discriminate because of race, color, religion, sex, or national
origin. It shall not be an unlawful employment practice under this
subchapter for any employee wages or compensation paid or to be paid
to employees of such employer if such differentation is authorized by the
provisions of section 206(d) of Title 29." (P.L. 88-352, Title VII, Sec. 703,
July 2, 1964, 78 Stat. 255; P.L 92-26, Sec. 8(a), (b), Mar. 24 , 1972, 86
Stat. 109; P.L 102-166, Title I, Sections 105(a) 106,107(a), 108, Nov. 21,
1991, 105 Stat. 1074-1076.)

The Plaintiff has stated a clarification of legislative history for federal
employees to describe a judicial remedy in pursuits of a given legal proof

of a Title VII case is explained on the occasion of the insights to formal excerpt of Brown v. G.S.A., as it may mandated: "The legislative history leaves little doubt that Congress was persuaded that federal employees who were treated discriminatorily had no effective judicial remedy. And the case law suggests that that conclusion was entirely reasonable. Whether that understanding of Congress was in some ultimate sense incorrect is not what is important in determining the legislative intent in amending the 1964 Civil Rights Act to cover federal employees. For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state law was." Tisis unambigous perception seems to indicate that the congressional intent in 1972 was to create an exclusive, pre-emptive administratiove and judicial scheme for the redress of federal emplyment discrimination. We noeed not, however, rest our decision upon this inference alone. For the structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive. Section 717 of the Civil Rights Act of 1964, 42 U.S.C., Section 2000(e)-16 (1970 ed., Supp. IV), proscribes federal employment discrimination enforcement system. Section 717(a) provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex or national origin." ( G.S.A., 425 U.S. 820 (830)(1975).

The Plaintiff may entrance a second instance of legal stage for grounds of a civil rights case, under the commands of a Seventh Amendment right to a jury trial, the petitioner nopw presupposes that all disallowances of delay in coruptive view of assinged mangerial propsectus to resonate a cognizant intent for an obedience to American Public Law was not settled in identified calendar periods; the perpetual strand of an exparte showing of cause aid in economic freezes of (O.P.M.) budgets under Title 5 U.S.C. Section 5118, General Schedules of federal payment plans for a GS-Level

15 or more classification, thus, the Plaintiff may circumscribe a platform
for a civil rights discrimination that surpassed on a collabarative
performance unto Title 42 U.S.C. Section 1982, Property Rights of
Citizens, as it may proceed: "All citizens of the United States shall have
the same right,in every State and Territory, as is enjoyed by white citizens
thereof to inheit, purchase,lease, sell, hold, and convey real and personal
property." (R.S. Section 1978).

The Plaintiff so motions for a discrimination of civil rights violations be
extended to a jury instructions in charge of prohibites to the economic
rights of petitioner's American Civil Liberties, inclusive of a Fifth
Amendment right in property that is now under a scope of legitimate
tests for a judicial review of federal statutes, to debut an enforcement of
the "Taking Clause" on property rights. Hereinafter, the Plaintiff may
contend a reside of decision on judicial review from the Court of Dixson
v. United States, 465 U.S. 482 (1983) is a consistent insight on a
demonstration of enforceable guarantees in the domain of American
Public laws, under the reside of a finding for the federal grand jury on
named defendants to a prode for "public officials" under investigation of
law violations of Title 18 U.S.C. Section 201(a), Federal Bribery Statute,
and the alleged wrongdoing with the grants of HUD (Housing and Urban
Development, a Community Development Block Grant and a Reallocation
Grant under the Housing and Community Development Act of 1974
(HCDA), 88 Stat. 633, as amended, 42 U.S.C. Section 5301-5320 (1976
ed. and Supp. v.).

The Plaintiff may attest to a controllinmg status of title 18 U.S.C. Section
201(a), to define "public officials" for the resaon of all extortions, bribes,
discriminations, and the alleged prohibitives of civil rights violations of
Section 1982, Property Rights of Citizens, as it may proceed: "According
to the Government's evidence at trial, pettioners used their positions to
extract $42, 694 in kickbacks from contractors seeking to work  on UNI's

housing rehabilitation projects. One contractor testtified how he was approached by petitioner Hinton and persuaded to pay pettioners 10 percent of each housing rehabilitation contracy that pettioners awarded him. Conbtractor explained that on 10 ocassions, he received first draw checks from UNI for 20 percent of the contract price, deposited the check at his bank, and paid half the amount of the check in cash to petitioners. A second contractor testified as to substantially the same agreement." (Dixson, 465 U.S. 482 (1983).

The Plaintiff may contend that a definition for an investigative probe of a federal grand jury is consistent with a classified subject matter for the receipt of aid from the Federal Government to any location site of decisions for a distrubution method, such as the case Dixson may detail in formal exceprt: " Under Section 201(a), the term "public official" includes "an officier or employee or person acting for or on bnehalf of the United States, or or any department, agency or branch of Governemt thereof, …in any official function, under or by authority of any such department, agency, or branch of Government." There being no basis for claiming that petitioners were officers or emplyees of the United States, the Government 's sole contention is that petitioners acted "for or on behalf of " the United States "in an official function" under the authority of HUD. Petitioners argue that they cannot be considered to nhave acted "for or on behalf of the United 'states" because neither they nor their employer UNI ever entrered into any agreement with the United States or any subdivision of the Federal Governemtnt. In advancing this position, petitoners rely primarilty bon two Second Circuit decisions holding that a New York City employee involved in the adminsitration of the federal Model Cities Program was not a public official under Section 201. Petitioners and these Second Circuit decisions rest on the premise that an individual does not work "for or on behlf of the United States …in any official function" without some formal bond with bthe United States, such

as an agency relationship, an employment contract ,or a direct contractual obligation. The Government, in repsonse, argues that term "public official " has a broader sweep, covering not only parties on privity with the United States, but also any private indiiduals responsible for administering federally funded and federally supervised programs." (Dixson, 465 U.S. 482 (490) (1983).

The Plaintiff may now argue that a faceted testimony on a calculated determinate of Section 201(a), the Federal Bribery Provisions should be provisioned under the clarifed view of statutory language, such as the character of Congress to pass laws for the prevention of frauds fron the U.S. Treasury are denoted in the Act of Feb. 26, 1853, ch. 81, Sec. 6, 10 Stat. 171, and in the current judicial opinion: "Congress passed the current federal bribery provisions, including Sec. 201(a), in 1962, as part of an effort to reformualte and rationalize all federal criminal statutes dealing with the integrity of government. At the time of the 1962 revisions, general federal bribery statutes had been in existence for more than a century. From the start, Congress drafted its bribery statutes with broad jurisdictional language, and periodically amended the provisions to ensure that the scope of federla criminal liability kept pace with the growth and diversification of the Fedral Government. Prior to 1962, in recognition of Congress' apparent desire for the federal bribery statutes to have wide application, the federal judiciary interpreted the statutes and, indeed, the phase "person acting for or on behalf of the United States" to have a broad juridisctional reach. The Phrase at issue here- "person acting for or on behalf of the United States"-was taken directly from predecessor bribery statutes." (Dixson, 465 U.S. 482 (492) (1983). The Palintiff may define a statutory language for a demarcation of finacial holdings on the private estate of In Re Wilson, for a continuum of voluntary act within a legal threshold of law violations of Title 18 U.S.C. Section 201(a), Public Official, ane the following content of Title 31 U.S.C.

Section 3301, General duties of the Secretary of the Treasury: "(a) The Secretary of the Treasury shall– (1) receive and keep public money ,(2) take receipts for money paid out by the Secretary; (3) give receipts for money deposited in the Treasury; (4) endorse warrants for receipts for money deposited in the Treasury; (5) submit the amounts of the Secretary to the Comptroller Generla every 3 months, or more often if required by the Comptroller General; and (6) submit to inspection at any time by the Comptroller General of money in the possession of the Secretary. (b) Except as provided in section 3326 of this titile, an acknowledgment for money deposited in the Treasury is not valid if the Secretary does not endorse a warrant as required by subsection (a)(4)of this Section. (P.L. 97-258, Sept. 13. 1982, 96 Stat. 948).

The Plaintiff so motions that a Defendant in the U.S.Government has an implication in the evidence of Title 18 U.S.C. Section 201(a), Public Official, for a definition of "person" to whom may reside in management of a federal agency, to a level of prescribed tasks from which an accomplice liability to an indifferent model of fraudulent dissemenations of federal monies are in conjecture with a state of civil rights violations for the classified duty of Title 31 U.S.C. Section 3302 , Custodians of money, and the causation of delay in compenstion for the Title 5 U.S.C. Section 5595, The Federal Employee's Pay Act, are now reflective of sequential terms of formulated instruction to assign federal grand jury probes in a derived element of Federal Criminal Procedure; therefore, the accurate descriptives of a presumption test for a jury instruction instruction for a civil rights trial on the case of In Re Wilson, such as the case of Dixson may predict: "Moreover, the reenactment of this language was no happenstance. Earlier versions of the 1962 statute omitted the phrase, but Department of Justice testimony that "its removal that "its removal would be undesirable" convinced Congress to retain the language . Standing alone, Congress' purposeful retention of the "acting

for or on behalf of the Government" phrase does not advance our inquiry into the scope and meaning of those words. When, however, we compare the phrase as enacted with the proposed definition of "public official" in earlier draft bills that were not enacted, we conclude that Congress could not have meant to restrict the definition, as petitioners argue, to those persons in an employment or agency realtionship with the Federal Government. Such persons were clearly covered by sucessive, rejected versions of the reform bill, which defined "public official" in pertinent part as "an officer, agent, or employee of the United States in the executive, legislative, or judicial branch of the Government, or of any agency." If Congress intended courts to restrict their reading of jurisdictional definition to persons in a formal employment or agency relationship with the Government, it would have had no reason to accede to nthe Department of Justice's urging to retain the "acting for or on behalf of language. Morever, we find the legislative history of Section 201 (a) inconsistent with the view that the words "person acting for or on behalf of the United States" were added simply to bring within the jurisdiction of the federal bribery laws those individuals tied to the Federal Government by direct contractual obligations." (Dixson, 465 U.S. 482 (494) (1983).

The Plaintiff may now enter a comprehensive overlay of Title 31 U.S.C. Section 3302, Custodians of money, for functional test of of all burdens of presumption that should release to a challenge on claimant terms of a civil rights law violation of field agencies in question the payment schedules of federal employee's, as it may be stated to the Comptroller General's Office on the formal purpose of statutory language: "(a) Except as provided by another law, an official opr agent of the United States Government having custody or possession of public money shall keep the money safe without– (1) lending the money; (2) using the money; (3) depositing the money in a bank; and ( 4) exchanging the money for other amounts. (b) except as provided in section 3718(b) of this title, an official

or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury as soon as practicable without deduction for any charge or claim. (c )(1) A person having custody or possession of public money including a disbursing official having public money not current expenditure, shall deposit the moey without delay in the Treasury or wioth a depositary by the Secretary of the Treasury under the law. Except as provided in paragraph (2), money rquired too be deposited pursuant to this subsection shall be deposited not later than third day after the custodian receives the money. The Secretary or a depositary receiving a deposit shall issue duplicate receipts for the money deposited. The original receipt is for the Secretary and the duplicate is for the custodian. (2) The Secretary of theTreasury may by regulation prescribe that a person having custody or possession of money required by this subsection to be deposited shall deposited such money during a period of time that is greater or lessor thatn the period of time secified by the second sentence of paragraph(1). (d) An oficial or agent not complying with subsection (b) of this section may be removed from office. The official or agent may be required to forfeit to the Government any part of the money held by the official or agent and to which the official or agent may be entitled. (e) An official or agent of the Government having custody or possession of public money shall keep an accurate entry of each amount of public money receive, transferred , and paid. (f) When authorized by the Secretary, an official or agent of the Government having custody or possession of public money, or performing other fiscal agent services, may be allowed necessary expenses to collect, keep, transfer, and pay out public money and to reform those services. However, money appropriated for those expenses may not be used to nemploy or pay officers and employees of the Government. (P.L. 97-258, Sept. 13, 1982, 96 Stat. 948; P.L. 97-452, Sec. 1(10), Jan. 12, 1983, 96 Stat. 2468; P.L 898-369, Title VI , Sec.

2652(b)(1), July 18, 1984, 98 Stat. 1152; P.L 103-272, Sec. 4 (f) (1) (H), July 5, 1994, 108 Stat. 1362; P.L. 103- 429, Section 7(a) (3) (A), Oct. 31, 1994, 108 Stat. 4388).

The Plaintiff may now regard a faceted level of testimony is registered for an appraisal of a command in the justifiable principles and safeguards of federal law, in a retention of accurate developments of regulations that were passed by Congress, with the intent to perceive of a custodial person with an embrace of resposibilities that are to announce a conduct in public service that is an ensurance in a professional standard to compentently disseminate all public monies brought into their possession; this may clarify a rein of Governmental oversight, yet, the Plaintiff most intricately requests a demostriation of intent measures become a fully iternalized matter of judicial opinion for an accommodation of the American republic. Hereinafter, the conclusion of a debriefed langauge of statutory provisions for an incurrent mechanism of longterm predictors of functionality in instruments of a broad language to encumber a federal trust, the case in Dixson, so may speak on Section 201(a), to a necessary requirment: " The language of Section 201 and of its predecessors, as the Court's opinion points out, is intentionally broad. But that fact merely creates the interpretative problem–it does resolve it. Congress intended to carry forward problem the pre-1962 bribery statute when it enacted Section 201, and it understood the coverage of the bribery law to be broad. Se ante, at 491-493, 495-495. Moreover, the purpose of the statute was indoubtedly to proscribe bribery of all those who carry out a fedral trust. Ante, at 496. To say that the statute is braodly aimed at all persons bearing a federal trust, however, is not to nresolve the ambiguity over what constitutes a federal trust. Indeed, the statutory language–"acting for or on behalf of the United States"–is merely a formulation of the public trust idea, and the Court concedes that the statutory language can accommodate both petitioner's and

respondent's views. Ante, at 491. The breadth of the language accordingly offers little help on defining the ambiguous coverage of the statute. The legislative history likewise provides no significant support for the Court's reading of the statute. The critical statutory language has been a part of the federal bribery statute for more more than 100 years. See ante, at 493, n. 11. Yet, as the Court's opinion indicates, Congress apparently has never specifically considered the statute's coverage of federal grant recipients. The legislative history is simply silent on the question to be answered in these cases." (Dixson, 465 U.S. 482 (502) (1983).

The Plaintiff may enter a case on the posited relationships of custodianships of public money,and the anticiptory requests of an implementation of a pervasively restrictive and overlapping model federal guarantees to the American republic are to described to the grants of plausible reassurance in accommodations of Section 1982, Property Rights of Citizens. Henceforth, the Plaintiff may submit a judicial opinion of California Bankers Assn. v. Schultz, 416 v. U.S. 21, (1973). Henceforth, the Plaintiff may predict on faceted level of federal regulatios that came into a broad perspective for activites to be held in prohibitive restraints of the defendants to a United States District Court for the Northern District of California, such as it may proceed qualified terms of findings of the Bank Secrecy Act encated by Congress on October 26, 1970: "The paintiffs below included several named individual bank customers, the Security National Bank, the California Bankers Association , and the American Civil Liberties Union (ACLU), suing on behalf of itself and itself and its various bank customer members. The Plaintiffs' principal contention in the District Court was that the Act and the regulations were violative of the Fourth's Amendment guarantee against unreasonable search seizure. The compllaints also alleged that the Act violated the First, Fifth, Ninth, Tenth, and Fourteenth Amendments. The District Court

issued a temporary restaining order enjoining the enforcement of the foreign and domestic reporting the convening provisionsof Ttile nli of the Act, and requested the convening of a three-judge court pursuant to 28 U.S.C. Sec. 2284 to entertain the myriad of constitutional challenges to the Act." (Schultz, 416 v. U.S. 21 (1973).

The Plaintiff may cite an embodiment of goals for imposed recordkeeping requirements that were imposed by regulations of Title I of Act and the regulations of Title II, 31 U.S.C. Sections 1081-1083 in following recommendations to the Secretary of the Treasury, a pettioner's view on the qualitiy of bankin secrets is now an additional count of jury instruction to Title 42 U.S.C. Section 1983: "We proceed then to consider the initial contention of the bank pplaintiffs that the recordkeeping requirements imposed by the Secretary's regulations under the authority of Title I deprive the banks of due process by imposing unreasonable burdens upon them, and by seeking to make the bakns the agents of the Governmetn in suveilance of its citizens. Such recordkeeping requirementts arescarcely a novelty. The Internal Revenue Code, for example, contains a general authorization to the Secretary of the Treasury to prescribe by regulation records to be kept by both business an individual taxpayers, 26 U.S.C. Sec. 6001, which has been implemented by the Secretary in various regulations.

The Plaintiff may acknowledge a continous set of negotiable instruments were qualified for a clinical standard on interstate and commerce, therein, a suggestive view on inspection of bank accounts and the distribution of public monies, in accordance with Title 31 U.S.C. Section 3302, Custodians of money, is designated to a judicial opinion of Schultz: "The Secretary of the Treasury, authorized by Congress, concluded that copying and retention of certain negotialbe instruments by the bank upon which they were drawn would facilitate the detection and apprehension of participants in such criminal enterprises. Congress have closed the

channels of commerce to negotiable instruments, had it thought that so
drastic a solution were warranted; it could have made the transmision of
the proceeds of any criminal activity by negotiable instruments in
interstate or foreign commerce a separate criminal offense. Had it chosen
to do so latter, under the precise authority of Darby or Shapiro, supra,it
could have require that each individual engaging in the sending of
negotialbe instruments through the channels of commerce maintain a
record of such action; the bank plaintiffs concede as much." (Schultz, 416
v. U.S. 21 (47) (1973).

The Plaintiff may set forth a culminating set of recordkeeping
requirements that are imposed on the Secretary for a demand to
investigate a clinical finding of economic delays that were classified in
supposed terns to voluntary acts of civil rights violations in known
members of the U.S. Department of Treasury, the Comptroller General's
Offices, and a forwent of many civil servants,if the illegal banking
transaction for pettioner's federal pay were noticed to any national bank
of the United States, hereinafter, the case of Schultz shall speak to crucial
element of a jury trial platform on Title 42 U.S.C. Section 1982, as it may
follow: "The bank plaintiffs also contend that the recordkeeping
requirements imposed by the Secretary pursuant to the Act undercut a
depositor's right to effectively challenge a third-party summons issued
by the Internal Revenue Service. See Reisman v. Caplin, 375 U.S. 440
(1964); Donaldson v. United States, 400 U.S. 517 (1971); Couch v. United
States, 400 U.S. 322 (1973) . Whatever wrong such a result might work
on a depositor, it works no injury on his bank. It is true that in a limited
class of cases this Court has permitted a party who suffered injury on his
bank. It is true that in a limited class of cases this Court has permitted a
party who sufferd injury as a result of the operation of a law to assert his
rights even though the sanction of the law was borne by another, Pierce
v. Society of Sisters, 268 U.S. 510( 1925), and conversely, the Court has

allowed a partty bupon whom the sanction falls to rely  on the wrong
done to a third party in obtaining relief, Barrows v. Jackson, 346 U.S. 249
(19532); Eisenstadt v. Baird, 405 U.S. 438 (1972). Whether the bank
might in other circumstances rely on an injury to its depositors,or whther,
instead, this case is governed by the general rule that one has standing
only to vindicate his own rights , e.g. , Moose Lodge v. Irvis, 407 U.S.
163, 166 (1972), need not now be decided, since in any event, the claim
is premature. Claims of depositors against the compulsion by lawful
process of bank records involving the depositors'mown transactions must
wait until such process issues." (Schultz, 416 v. U.S. 21 (53) (1973).
The Plaintiff may now assert that a contention for a jury trial, on a case of
civil rights law may be supposed to a claimant terms of purposefulness
within the intent of voluntary acts that are enacted within transaction of
law violations that make a causation of enlisted term for the duty of Title
42 U.S.C. Section 1983, Civil action for deprivation of rights, as the
statutory provision is mandated: "Every person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State or Territory
or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction htereof
to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shal be liable to the party injured in an action at
law, in suit in equity, or other prpoer proceeding for redress, except that
in any action brought against a judicial officer for an act or omission
taken in such officer's judicial capacity, injunctive relief declaratory was
unavailable. For the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia shall be considered to
be a statutue of the District of Columbia. (R.S. Sec. 1979; Pl 96-170, Sec.
1, Dec. 29, 1979, 93 Stat. 1284; P.L. 104-317, Title III, Sec. 309(c), 1996,
110 Stat. 3853).

The Plaintiff so motions for a "right to contract" in all business activities is

a founding principle of biographical review to a general requirement for all fulfilled duties of career service, and it is now regarded for an enactment of jury-trial to promulgate a contention for law violations of a civil right were purported, most luminously, in the light acumen that was demonstrated for accolades of memoirs. Henceforth, the Plaintiff may reiterate that a galvanized proposal of retialotory terms is a conducive method of repelling theme for a civil rights violation in the United States of America, according to the legal theory of controlling status for a burgeoning class of Negro constructionist workers to assist in balancing a concept of caprice militarism for an impact model of discrimination on a Chief Engineer of U.S. Army Generalship; the case of General Building Contractors Assn., Inc. v. Pennsylvania, 458 U.S. 375, 396 (1981): "Second, the 1870 Act omitted language contained in the 1866 Act, and eventually codified as Section 1982, guaranteeing property rights equivalent to those enjoyed by white citizens. Thus, "[a]lthough the 1866 Act rested only on the Thirteenth Amendment and, indeed, was enacted before the Fourteenth Amendment was formally proposed, the 1870 Act was passed pursuant to the Fourteenth, and Changes in wording may have reflected the language of the Fourteenth Amendment. Tillman v. Wheaton-Haven Recreation Assn. , 410 U.S. 431,439-440, n.11(1973). See Runyon v. McCrary, supra, at 168-170, n.8." (Pennsylvania, 458 U.S. 375, (385) (1981).

The Plaintiff so motions for a civil rights violation on the basis of Title 42 U.S.C. Section 1983, Civil action for deprivation of rights, to be most comprehensively instructed to the jury, on the basis of the gravity of business in hazardous work to which an acumen of expert master witness is most credible to announced levels of requirements for a military training of advanced combat regiment, inclusive of a promotional status to specified terms of exclusive file and rank of dosage profiles. Therefore, the ardous tasks of facilitated instruction for a communication

of devised memoranda on National Security are made a suggestive to the consistent performance of civil rights discrimination for an industrial profile on labor rights. Henceforth, the Plaintiff may instruct for a calculated level of repariations to be assigned unto a percentage of actual and punitive damages in which a treble report on the severity of occasion that gave rise to the involuntary leave of service was a legal tantamount of unconscious retaliation in a authorized miltary workplace of the undisclosed terms of location.

The Plaintiff may develop a conculsion of this portion of jury instructions with a cumulative statement from the legendary plane of thought for all broadened themes of a forseight in protectionism of civil rights, under the guidelines of the following citation from Pennsylvania: "Our holding that Section 1981 reaches only intentional discrimination virtually this conclusion. It would be anamolous to hold that Section 1981 could be violated only by intentional discrimination and then to find this requirement satisfied by proof that the individual plaintiff's did not enjoy "the same right ...to make and enforce contracts ..as is enjoyed by white citizens" and that the defendants merely failed to ensure that the plaintiff's enjoyed employment opportunities equivalent to that of whites. Such a result would be particularly inappropriate in the case of the associations, who are not engaged in the construction business, do not employ operating engineers, and consequently did not delegate to the Union any hearing functions which they otherwise would have performed themselves. Neither the District Court nor respondents identity anything in the language or legislative history of the statute to support a contrary conclusion." (Pennsylvania, 458 U.S. 375, (396–97) (1981).

The Plaintiff may enter that last statement on contentions for a civil rights violation, as the causation so does stem from a construed parpraxesis of indentified behavioral schema of unprivileved view for a major psychosis in the workplaces of the U.S. Armed Forces/ U.S. Army. Henceforth, the

Plaintiff may describe an entry of prescriptive terms of civil rights violation were announced to a law violation of Title 42 U.S.C. Section 1985, Conspiracy to interfere with civil rights, the most clinical evaluation of discriminatory episodes against the substantive due process of law in the Fifth Amendment privileges and immunities that are to be puported on a shield of Executive office. Hereinafter, the Plaintif may define an entirety of Title 42 U.S.C. Section 1985, for all galvinzed standards of designated interrim of knowledge for the legal shield of field offices in support of the Executive privilege on the display of rights to enforce a criminal prcedure, such as the goals in an affirmative record of the membership to the once heralded post of the Associate-Assistant U.S Attorney General Office.

The Plaintiff may directly reveal a key source of formulated instruction on a defintion proposal of the cauaility of intent requirements for a law violation to Title 42 U.S.C. Section 1985, Conspiracy to interfere with civil rights, as it may be mandated: "(1) Preventing officer from perorming duties-if two or more persons in any State or Territory conspire to prevent by force, intimidation, or threat any person from accepting or holding any office, trust, or place of confidence under the United States or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or irnpede him in the discharge of his official duties; 2) Obstructioning justice; intimidating party, witness, or juror-lf two or more persons in any State or Territory conspire to deter, by force, intimidating ,or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to

injure such party or witness in his person or property on account of his having so attended or testified or to influence the verdict, presentment, or indictment lawfully assented to by him, or or of his being or having been such juror; or if two or more persons conspire for the purpose of impending, hindering,obstructing, or defeating, in any manner, the due course of justice in any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; (3) Depriving persons of rights or privileges–If two or more persons in any State or Territory  conspire or to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws;or for the purpose of preventing or hindering the constituted authorities of any Statue or Territory from giving or securing to all persons within such State or Territory the equal protection of laws;or if two or more persons conspire to prevent by force, intimidating, or threat, any citizen who is lawfully entitled to vote, from giving his support nor advocacy lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States the party so injured or deprived may have an action for the recovery of damages occassioned by such injury or deprivation, against any one or more of the conspirators. (R.S. Sec. 1980).

The Plaintiff may enter a decision with regards to a formal presentment of the former 40th President of the United States of America, the case known

as Conyers v. Reagan, 578 F. Supp. 324 (1984), to direct to the local District Court of Kansas, Eighth District, the apparent reside of conflicts in a judicial review of assigned responses for a conspiracy to interfere with civil rights. Henceforth, the Plaintiff may construct a distinct relationship of a civil rights violation in apparent command for a duty to Title 10 U.S.C. Section 3034, Vice-Chief-of- Staff, and the conspired terms of rejecting the Presentment of credentials to the oath of the Oval Office. Herein, the Plaintiff was on active-duty in a field suport status of a Director of the (DOIA), Defense Intelligence Agency, until the character of further notice is rendered upon all conditons in which an Executive privilege in the former N.C.O. of N.O.R.A.D. may recognize for a discrepancy on a preponderance of culpability states, to discern upon a malfeasance of moral character in leadership. Therefore, the Plaintiff may recongize all parties to the construct of a preliminary injunction against the decisions of former 40th President Reagan: "This case was brought by eleven members of Congress, John Conyers, William Clay, George W. Crocket, Jr. Ronald v. Dellums, Mervyn M. Dymally, Don Edwards, Walter Fauntroy, Parren J. Mitchell, Gus Savage, Loius Stokes, and Theodore S. Weiss, individually and ion their capacity as members of the United States House of Representatives, against Ronald Wilson Reagan, individually and in his capacity as President of the United States, Casper W. Weinberger, individually and in hs capacity as Secretary of Defense, Goege P. Schultz, and General John W. Vessey, Jr., individually and in his capacity as Chairman, Joint Chiefs of Staff.  Plaintiffs challenge the constitutionality of the invsion of Grenada by claiming that defendants "unilaterally iniate[d] and prosecute[d] an armed invasion of America military forces against a foreign nation …" Plaintiffs' Motion for Preliminary Injunction at I. Specifically, plaintiff's assert that by odering an invasion of the Island of Grenada on October 25, 1983, the President and other defendants violated the War Power's Clause of the Constitution. The clause states

that "Congress shall have the Power ... To declare War......" U.S. Const. art I, Sec. 8, Cl. 11. For relief, plaintiffs request that this Court invoke its equitable powers and grant plaintiffs a writ of mandamus and/or an injunction directing defendants to withdraw the remainder of U.S. Armed Forces personnel from Grenada and also grant plaintiffs a declaratory judgment holding the invasion of Grenada and the continuing occupation by U.S. Armed Forces to be illegal and in violation of the United States Constitution." (Reagan, 578 F. Supp. 324(326) (1984).

The Plaintiff may hold questions on a jurist review of the Presidential Record of Ronald Reagan, with a determination on the Court of Reagan, and the classified issues that may pursuit from a constutional test for the "separation of powers", hereinafter, the petitioner's request to avoid injuries to person, authority of credentials, and the Presentment to the Oval Office are all implicated with formal judgment in Reagan, as the joeapardy to civil rights under Title 42 U.S.C. Section 1985 is most connected to the lack of sufficiency in approval disclosure of a Military clearance of public service; the case in behalf of In Re Wilson may now define a qualification of the doctrine of equitable discretion: "The doctrine equitable discretion was first outlined in Riegle v. Federal Open Market Committee, 656 F. 2d 873 (D.C. Cir. 1981), cert denied, 454 U.S. 1082 (1981). In that decision, Judge Robb, writing for the court, noted: "Where a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, this court should exercise its equitable discretion to dismiss the legislator's action ... The standard would counsel the courts to refrain from hearing cases which represent the most obvious intrusion by the judiciary into the legislative arena: challenges concerning congressional actions or inaction regarding legislation. Id at 881." (Reagan, 578 F. Supp. 324(326) (1984).

The Plaintiff so admits to a cause of further judicial proceedings on an

institution of a grant for a civil trial by jury, the facts of legal settlement
for the Executive privilege of Honorable Gen. William Edward Wilson, to
not have been defeated, hindered, injured, ethnic intimidated, or denied
an enterprise of Government on the basis of a culpability doctrine that
should be determined finally in a call of the advocacy to have "attempted
an overthrow of government", without no explanation of legal relief.
Hereinafter, the Plaintiff may decide for an internment of an
inchantonation of the most severe treatment of criminal contempt, to
assert the grounds of injunctive relief for all consents of the Senate
Ratification of a U.S. Army Generalship, the decided issue of statutory
requirements for a distinction of Executive privilege in the eminating
place of Legislative writs, as they may be announced to the Court of
Reagan on the proceeding terms:" The doctrine is desinged to prevent
those plaintiff legislators, who have collegial or in-house remedies
available to them from asserting their constitutional or legislative claims
claims in court. See Crockett v. Reagan, 720 F.2d 1355 (D.C. Cir. 1983),
Vander Jagt v. O'Neil , 699 F. 2d at 1175, United Prebyterian Church v.
Reagan, 557 F. Supp. 61, 64 (D.D.C.1982). It is also designed to prevent
potential judicial interference with the legislative process. Certainly when
plaintiff legislators can avail themselves of institutional remedies that are
afforded to Congress, the Court, under it broad equitable powers, should
decline to exercise its jurisdiction. In Riegle, the Court outlined a
standard to help courts determine whether a plaintiff legislator's suit
should be dismissed under the equitable discretion doctrine. "Dismissal
of congressional plaintiff actions [are warranted] only in cases in which (I)
the plaintiff lacks standing under the traditional tests, or (ii) the plaintiff
has standing but could get legislative redress and a similar action could
not be brought by a private plaintiff. Riegle v. Federal Open Market
Committee, 656 F. 2d at 882." (Reagan, 578 F. Supp. 324(326-327)
(1984).

The Plaintiff so motions to reside over a classification of actual remedies that are an incumbent view of the Presentment, to every Presidential Administration, and the agreements of Executive privilege to convey the duties of U.S. Senate Ratification to Title10 U.S.C. Section 3034, Vice-Chief of Staff, a distinguished prominence within all Legislative writs that should petition Courts for an injunctive remedy against the decisions of a President, therefore, the petiitioner so does proclaim that Defendant, U.S. Government is liable to the estate of Honorable Gen. Wilson Edward Wilson by the constitutional safeguards in the nature of the "powers of Appointment". Hereinafter, the Plaintiff may call on a final attestement from Reagan, to compel a duty to regard a classification of incumbent terms for a civil rights violation for Title 42 U.S.C. Section 1985, Conspiracy to Interfere with Civil Rights, a consultation to advise on recount on an equity in Legislative writs: "In this case, plaintiffs contend that the President and other named defendants violated the War powers clause of the Constitution. They argue that by violating the Constitution, defendants have usurped the powers of Congress which has the exclusive right under the Constitution to declare war. Plaintiffs further claim that there can be no adequate relief without the Court asserting jurisdiction over this matter. The Court disagrees. What is available to these plaintiffs are the institutional remedies afforded to Congress as a body; specifically, The War Powers Resolution, 50 U.S.C. Section 1541 et seq. , appropriate legislation, independent legislation or even impeachment. If plaintiffs are successful in persuading their colleagues about the wrongfulness of the President's actions, they will be provided the remedy they presently seek from this Court. If plaintiffs are unseccessful in their efforts, it would be unwise for this Court to scrutinze that determination and interference with the operations of the Congress." (Reagan, 578 F. Supp. 324 (327) (1984).

The Plaintiff may conclude on a distinguished problem of legitimate right

of the Presidential Record on the annals of the War Powers Resolution, 50 U.S.C. Section 1541 et seq., and the concerns that have arisen within a partition of the petitioner's authoritative veil for a preserved right of Executive privilege in Government to effectively proceed by a Presentment, therefore, the legitmacy of a Senate Ratification to the U.S. Army Generalship is to be accommodated in every decision of the current President, or the considerations of Impeachment hearings were given a notice for an appropriate legislation and the recourse of constitutional law; this confirmation of petitioner's standing on a civil trial for the challenges to all entitlements that are afforded to the estate of Honorable Gen William Edward Wilson are now represented by the duty status in Title 42 U.S.C. Section 1985, and the closing remarks of Reagan: "It must be noted that two of the plaintiff legislators attempted to initiate congressional action condemning the President's decision to invade Grenada. Those efforts were for naught as the House Committee on Foreign Affairs rejected both Congressmen Crockett's and Weiss' attempts to add amemdments to a House Joint Resolution, H.J. Res. 402 See Grenada War Powers: Full Compliance Reporting and Implementation, Markup of H.J. RES. 402 before House Comm. on Foreign Affairs, 98[th] Cong. 1[st] Sess. (October 27, 1983). If the Court would unnecesarily and unwisely interfere with the legislative process and raise significant separation of powers concerns. Because of this, the Court must withhold jurisdiction of this matter and exercise judicial restraint. In accordance with the above, the Court denies plaintiff's motion for injunctive relief and grant's defendants' motion to dismiss this action." (Reagan, 578 F. Supp. 324 (327) (1984).

The Plaintiff so motions to close all arguments of this brief, on the clarity of decisions to concern a stake in the Seventh Amendment Right to a jury trial for a judicial review ot Ttile 28 U.S.C. Section 1343, Deprivation of Rights, in subsection (3), to affirm contentions for a lawsuit against the

Defendant, U.S. Government. The Plaintiff may instruct to the local
District Court of Kansas, Eighth District, a dateline of Official mission
status for an insurgency of advanced combat deployment was completed
by the petitioner Honorable Gen. William Edward Wilson U.S. Armed
Forces/U.S. Army on more than 81excursions of dosage report for a
preemptive status of military occupation, at the behest of commands
from the former 39th President Jimmy Carter and the former 40th President
Ronald Reagan. Henceforth, the Plaintiff may suppose that all
determinatices of a civil rights law violation have been explained in a
listing of averments submitted to the local District Court of Kansas,
Eighth District,so the request for a standing trial on jury instructions for
Title 42 U.S.C. 2000(e)-16(c), sub-section(k), Burden of proof in
disparate Impact cases,Title 42 U.S.C. Section 1981, Title 42 U.S.C.
Section 1982, Title 42 U.S.C. Section 1983, Civil Actions for Deprivation
of Rights, and Title 42 U.S.C. Section 1985, Conspiracy to interfere with
civil rights, for an actual damages of $350TR in a 6 years and the right to
credentials in afforded principles to the weights-of-evidence, to be jury
instructed on the demand of a judgment of judicial estoppel from the
duties in Title 10 U.S.C. Section 3034, Vice-Chief of Staff, and the
presumed right for a corporate dissolution of the Named Defendant, the
Wilson Personal Holding Company, P.C., Inc. The demand for credentials
of ownership in a corporate President and sole-proprietor of the Wilson
Law Firm, Inc., N.W. Washington, D.C., asit may be spoken before a
"director" officer of the corporation in the minutes of Board meetings for
a disclosure of Executive officer.

February 22, 2011

DESIGNATION: KANSAS CITY
KS